## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## BOSTON DIVISION

| | |
|---|---|
| **BOSTON PARENT COALITION FOR ACADEMIC EXCELLENCE CORP.**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE SCHOOL COMMITTEE OF THE CITY OF BOSTON, ALEXANDRA OLIVER-DAVILA, MICHAEL O'NEIL, HARDIN COLEMAN, LORNA RIVERA, JERI ROBINSON, QUOC TRAN, ERNANI DeARAUJO, and BRENDA CASSELLIUS**<br><br><br>**Defendants.** | Civil Action No. _____ |

### VERIFIED COMPLAINT[1]

The Plaintiff, Boston Parent Coalition for Academic Excellence Corp. ("the Boston Parents"), by its undersigned counsel, brings this Complaint against the School Committee of the City of Boston, its members and Superintendent (collectively, "Defendants"), to obtain a remedy for the constitutional and statutory violations set forth herein.

### INTRODUCTION

"Distinctions between citizens solely because of their ancestry are by their very nature odious to a free people, and therefore are contrary to our traditions and hence constitutionally

---

[1] This Complaint is verified by the Declaration of Benato Cui, President of the Boston Parent Coalition for Academic Excellence. His declaration is attached hereto as the final exhibit, **Exhibit F.**

suspect." *Fisher v. University of Texas at Austin*, 570 U.S. 297, 309 (2013) (citations and quotations omitted).  In contravention of this fundamental principle of American values – and constitutional law – the Defendants have imposed upon the school children of Boston a racial and ethnic classification system for entry into its most prestigious public schools: the Boston Latin School, the Boston Latin Academy, and the John D. O'Bryant School of Mathematics and Science, known collectively as the Boston Exam Schools.

Defendants achieved this by subordinating the longstanding merit-based citywide competition to a newly-created, and wholly-irrational quota system based on *zip codes*, which have never been a unit of educational qualification, and which are being purposefully used here as a proxy for race and ethnicity (the "Zip Code Quota Plan").  By depriving some school children of educational opportunity based on their race or ethnicity, Defendants do great harm, not only to the children they seek to exclude but also to the Boston Exam Schools, which they would use as the instruments of their discrimination, to the City of Boston, and to this country's cherished principle of equal protection.

It is to vindicate these important interests – and to safeguard the educational opportunities that Defendants would impair – that the Boston Parents bring their Complaint before this Court.

## JURISDICTION AND VENUE

1.      This action arises under (a) the Fourteenth Amendment to the U. S. Constitution and 42 U.S.C. § 1983, and (b) Mass. Gen. Laws Ann. Ch. 76, § 5.

2.      This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1343, and over the state law claims under 28 U.S.C. § 1367.

3.      Venue is proper in the District of Massachusetts under 28 U.S.C. § 1391 because the events giving rise to the claims detailed in this action occurred in Massachusetts.

## THE PLAINTIFFS

4.     Plaintiff, Boston Parent Coalition for Academic Excellence Corp., is a not-for-profit organization established under the laws of Massachusetts.  As stated in its Article of Organization, the purposes of the Boston Parents include "promot[ing] merit-based admissions to Boston Exam Schools (including Boston Latin School, Boston Latin Academy and O'Bryant School of Science and Math) and [promoting] diversity in Boston high schools by enhancing K-6 education across all schools in Boston."

5.     Membership in the Boston Parents is open to students, alumni, applicants and future applicants to the Boston Exam Schools, as well as to members of their respective families, who are in agreement with the purposes and objectives of the Boston Parents and meet such other criteria as may be set by the organization's by-laws and board of directors.

6.     The Boston Parents bring this action on behalf of their members whose children are students applying for one or more of the Boston Exam Schools for the classes entering in the fall of 2021.  These students and parents include, but are not limited to, the following:

a.     **Student 1 and Member 1, her mother.**  Student 1 and Member 1 are of Asian (Chinese) ethnicity.  They reside in zip code 02111, Chinatown, one of the zip codes where applicants to the Boston Exam Schools are adversely affected by the unconstitutional Zip Code Quota Plan that is the subject of this action.  Specifically, Chinatown is expected to lose 14 of 24 seats based on the Zip Code Quota Plan – a total loss of 58% of seats.  Student 1 is a sixth-grade student and an applicant to one or more of the Boston Exam Schools for the class entering in the fall of 2021.  Student 1 meets the eligibility requirements for application to the Boston Exam Schools.  Member 1 is a member of the Boston Parents and supports Student 1's application.

b.      **Student 2 and Member 2, her mother.**   Student 2 and Member 2 are White.  They reside in zip code 02114, Beacon Hill/West End, one of the zip codes where applicants to the Boston Exam Schools are adversely affected by the unconstitutional Zip Code Quota Plan that is the subject of this action.  Specifically, Beacon Hill/West End is expected to lose 6 of 19 Boston Exam School seats based on the Zip Code Quota Plan – a total loss of 31% of seats.  Student 2 is a sixth-grade student and an applicant to one or more of the Boston Exam Schools for the class entering in the fall of 2021.  Student 2 meets the eligibility requirements for application to the Boston Exam Schools.  Member 2 is a member of the Boston Parents and supports Student 2's application.

c.      **Student 3 and Member 3, his mother.**   Student 3 and Member 3 are of Asian (Chinese) ethnicity.  They reside in zip code 02135, Brighton, one of the zip codes where applicants to the Boston Exam Schools are adversely affected by the unconstitutional Zip Code Quota Plan that is the subject of this action.  Specifically, Brighton is expected to lose 16 of 52 Boston Exam School seats based on the Zip Code Quota Plan – a total loss of 31% of seats. Student 3 is a sixth-grade student and an applicant to one or more of the Boston Exam Schools for the class entering in the fall of 2021.   Student 3 meets the eligibility requirements for application to the Boston Exam Schools.  Member 3 is a member of the Boston Parents and supports Student 3's application.

d.      **Student 4 and Member 4, his father.**   Student 4 and Member 4 are White.  They reside in zip code 02135, Brighton, one of the zip codes where applicants to the Boston Exam Schools are adversely affected by the unconstitutional Zip Code Quota Plan that is the subject of this action. Specifically, Brighton is expected to lose 16 of 52 Boston Exam School seats based on the Zip Code Quota Plan – a total loss of 31% of seats.  Student 4 is a sixth-grade

student and an applicant to one or more of the Boston Exam Schools for the class entering in the fall of 2021.  Student 4 meets the eligibility requirements for application to the Boston Exam Schools.  Member 4 is a member of the Boston Parents and supports Student 4's application.

   e. **Student 5 and Member 5, her father.**  Student 5 and Member 5 are of Asian (Chinese) ethnicity.  They reside in zip code 02132, West Roxbury, one of the zip codes where applicants to the Boston Exam Schools are adversely affected by the unconstitutional Zip Code Quota Plan that is the subject of this action.  Specifically, West Roxbury is expected to lose 57 of 133 Boston Exam School seats based on the Zip Code Quota Plan – a total loss of 43% of seats.  Student 5 is a sixth-grade student and an applicant to one or more of the Boston Exam Schools for the class entering in the fall of 2021.  Student 5 meets the eligibility requirements for application to the Boston Exam Schools.  Member 5 is a member of the Boston Parents and supports Student 5's application.

   f. **Student 6 and Member 6, his mother.**  Student 6 and Member 6 are White.  They reside in zip code 02132, West Roxbury, one of the zip codes where applicants to the Boston Exam Schools are adversely affected by the unconstitutional Zip Code Quota Plan that is the subject of this action. Specifically, West Roxbury is expected to lose 57 of 133 Boston Exam School seats based on the Zip Code Quota Plan – a total loss of 43% of seats.  Student 6 is a sixth-grade student and an applicant to one or more of the Boston Exam Schools for the class entering in the fall of 2021.  Student 6 meets the eligibility requirements for application to the Boston Exam Schools.  Member 6 is a member of the Boston Parents and supports Student 6's application.

   g. **Student 7 and Member 7, his mother.**  Student 7 and Member 7 are White.  They reside in zip code 02132, West Roxbury, one of the zip codes where applicants to

the Boston Exam Schools are adversely affected by the unconstitutional Zip Code Quota Plan that is the subject of this action.  Specifically, West Roxbury is expected to lose 57 of 133 Boston Exam School seats based on the Zip Code Quota Plan – a total loss of 43% of seats. Student 7 is a sixth-grade student and an applicant to one or more of the Boston Exam Schools for the class entering in the fall of 2021.  Student 7 meets the eligibility requirements for application to the Boston Exam Schools.  Member 7 is a member of the Boston Parents and supports Student 7's application.

h.    **Student 8 and Member 8, his father.**  Student 8 and Member 8 are of Asian (Chinese) ethnicity.  They reside in zip code 02132, West Roxbury, one of the zip codes where applicants to the Boston Exam Schools are adversely affected by the unconstitutional Zip Code Quota Plan that is the subject of this action.  Specifically, West Roxbury is expected to lose 57 of 133 Boston Exam School seats based on the Zip Code Quota Plan – a total loss of 43% of seats.  Student 8 is a sixth-grade student and an applicant to one or more of the Boston Exam Schools for the class entering in the fall of 2021.  Student 8 meets the eligibility requirements for application to the Boston Exam Schools.  Member 8is a member of the Boston Parents and supports Student 8's application.

i.    **Student 9 and Member 9, his mother.**  Student 9 and Member 9 are White.  They reside in zip code 02132, West Roxbury, one of the zip codes where applicants to the Boston Exam Schools are adversely affected by the unconstitutional Zip Code Quota Plan that is the subject of this action.  Specifically, West Roxbury is expected to lose 57 of 133 Boston Exam School seats based on the Zip Code Quota Plan – a total loss of 43% of seats. Student 9 is a sixth-grade student and an applicant to one or more of the Boston Exam Schools for the class entering in the fall of 2021. Student 9 meets the eligibility requirements for

application to the Boston Exam Schools.  Member 9 is a member of the Boston Parents and supports Student 9's application.

        j.      **Student 10 and Member 10, her mother.**  Student 10 and Member 10 are of Asian (Indian) ethnicity.  They reside in zip code 02132, West Roxbury, one of the zip codes where applicants to the Boston Exam Schools are adversely affected by the unconstitutional Zip Code Quota Plan that is the subject of this action.  Specifically, West Roxbury is expected to lose 57 of 133 Boston Exam School seats based on the Zip Code Quota Plan – a total loss of 43% of seats.  Student 10 is a sixth-grade student and an applicant to one or more of  the Boston Exam Schools for the class entering in the fall of 2021.  Student 10 meets the eligibility requirements for application to the Boston Exam Schools.  Member 10 is a member of the Boston Parents and supports Student 10's application.

        k.      **Student 11 and Member 11, her father.**  Student 11 and Member 11 are of Asian (Chinese) ethnicity.  They reside in zip code 02132, West Roxbury, one of the zip codes where applicants to the Boston Exam Schools are adversely affected by the unconstitutional Zip Code Quota Plan that is the subject of this action.  Specifically, West Roxbury is expected to lose 57 of 133 Boston Exam School seats based on the Zip Code Quota Plan – a total loss of 43% of seats.  Student 11 is a sixth-grade student and an applicant to one or more of  the Boston Exam Schools for the class entering in the fall of 2021.  Student 11 meets the eligibility requirements for application to the Boston Exam Schools.  Member 11 is a member of the Boston Parents and supports Student 11's application.

        l.      **Student 12 and Member 12, his father.**  Student 12 and Member 12 are of Asian (Chinese) ethnicity.  They reside in zip code 02132, West Roxbury, one of the zip codes where applicants to the Boston Exam Schools are adversely affected by the unconstitutional Zip

Code Quota Plan that is the subject of this action.  Specifically, West Roxbury is expected to lose 57 of 133 Boston Exam School seats based on the Zip Code Quota Plan – a total loss of 43% of seats.  Student 12 is a sixth-grade student and an applicant to one or more of  the Boston Exam Schools for the class entering in the fall of 2021.  Student 12 meets the eligibility requirements for application to the Boston Exam Schools.  Member 12 is a member of the Boston Parents and supports Student 12's application.

    m.  **Student 13 and Member 13, her mother.**  Student 13 and Member 13 are of White ethnicity.  They reside in zip code 02132, West Roxbury, one of the zip codes where applicants to the Boston Exam Schools are adversely affected by the unconstitutional Zip Code Quota Plan that is the subject of this action.  Specifically, West Roxbury is expected to lose 57 of 133 Boston Exam School seats based on the Zip Code Quota Plan – a total loss of 43% of seats.  Student 13 is a sixth-grade student and an applicant to one or more of the Boston Exam Schools for the class entering in the fall of 2021.  Student 13 meets the eligibility requirements for application to the Boston Exam Schools.  Member 13 is a member of the Boston Parents and supports Student 13's application.

    n.  **Student 14 and Member 14, his father.**  Student 14 and Member 14 are of Asian (Chinese) ethnicity.  They reside in zip code 02132, West Roxbury, one of the zip codes where applicants to the Boston Exam Schools are adversely affected by the unconstitutional Zip Code Quota Plan that is the subject of this action.  Specifically, West Roxbury is expected to lose 57 of 133 Boston Exam School seats based on the Zip Code Quota Plan – a total loss of 43% of seats.  Student 14 is a sixth-grade student and an applicant to one or more of the Boston Exam Schools for the class entering in the fall of 2021.  Student 14 meets the eligibility requirements

for application to the Boston Exam Schools.  Member 14 is a member of the Boston Parents and supports Student 14's application.

7.     The foregoing Members and Students are harmed because the Students are being required to apply through a race-based process.  This violates Students' constitutional right to be free from racial and ethnic discrimination.   The foregoing Members and Students are also harmed because, unless enjoined, the Zip Code Quota Plan will diminish the Students' chances of admission to the Boston Exam Schools.

8.     The foregoing Students – and other similarly situated students – would have standing to bring this action in their own name.  *See Regents of Univ. of Cal. v. Bakke,* 438 U.S. 265, 280-82 n. 14 (1978) (finding that an applicant was injured and had standing because the university's racially discriminatory admissions policy precluded the applicant from competing for all places in the entering class).

9.     As parents of students being subjected to an unconstitutional admissions process, the parents referenced herein as Members – and other similarly situated parents – would also have standing to bring this action in their own names.  The "primary role of the parents in the upbringing of their children is now established beyond debate."  *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972).  That role is broad enough to give parents standing to bring this action, whether in their own name and/or as next friends for their minor children.

10.     The Plaintiff, Boston Parents, has standing to bring this action on behalf of its members because: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

11.     Specifically, the Boston Parents have standing to bring this claim on behalf of their members with school-aged children who are forced to compete in an unconstitutionally race-based system.  *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 718–19 (2007) (where "group's members have children in the district's elementary, middle, and high schools" group had standing to challenge schools' "race-based program" because "being forced to compete in a race-based system that may prejudice the plaintiff" is "an injury that the members of [the group] can validly claim on behalf of their children.").

## THE DEFENDANTS

12.     Defendant School Committee of the City of Boston ("Boston School Committee") is the governing board of the Boston public schools, including the three Boston Exam Schools. The Boston School Committee is responsible for adopting the unlawful admissions policies that are at issue in this case.

13.     Defendant Alexandra Oliver-Davila is the Chairperson of the Boston School Committee and a voting member thereof.  She is sued only in her official capacity.

14.     Defendants Michael D. O'Neill, Dr. Hardin Coleman, Dr. Lorna Rivera, Jeri Robinson, Quoc Tran, and Ernani DeAraujo are the other voting members of the Boston School Committee.  Each is sued only in his or her official capacity.[2]

15.     Defendant Dr. Brenda Cassellius is the Superintendent of the Boston School Committee ("Superintendent") and, as such, has responsibility for implementing the unlawful admissions policies at issue in this case.  She is sued only in her official capacity.

---

[2]     Ernani DeAraujo was not appointed to the Boston School Committee until February 2021 and, thus, did not have a vote at the time the Zip Code Quota Plan was adopted on October 21, 2020.  He is named as a Defendant because he is a current member of the Boston School Committee, which has the authority to implement any order this Court may enter.

16.     In adopting and implementing the Zip Code Quota Plan that is the subject of this Complaint, Defendants acted under color of state law, so as to give rise to liability under 42 U.S.C. §§ 1983 and 1988.

17.     Defendants have the authority to ensure compliance with any order issued by this Court granting Plaintiff relief.

## BACKGROUND FACTS

18.     For many years, the City of Boston has been providing its best and brightest students, in grades 7 through 12, with the unsurpassed educational opportunities of three well-known public schools: the Boston Latin School, the Boston Latin Academy, and the John D. O'Bryant School of Mathematics and Science ("O'Bryant School").   The educational opportunities available at these three schools are substantially better than the educational opportunities available at typical public high schools, including but not limited to other public high schools operated by the Boston School Committee.

19.     Known as the Boston Exam Schools, these three institutions have traditionally considered an applicant's performance on a standardized entrance examination – along with the applicant's grade point average (GPA) – in determining admission.  Such an admissions process has been used for the last 20 years.  It was used as recently as a year ago for the classes entering the Boston Exam Schools in the fall of 2020, and the competition for admission in that admission cycle was uniformly conducted on a citywide basis.  There were no zip code quotas.

20.     The intense competition for entrance into these three schools is illustrated by the limited number of students that the Exam Schools are able to accommodate for the class entering the seventh-grade:  Boston Latin School: 484; Boston Latin Academy: 336; O'Bryant School:

11

205.  The total number of seats (1,025) is about *one-third* the number of students who applied for admission in the fall of 2020.[3]

### THE ZIP CODE QUOTA PLAN

21.     For the classes that will enter the Boston Exam Schools in the fall of 2021, the Boston School Committee decided not to administer an entrance examination, citing the difficulties in doing so amid the then-current state of the Covid-19 pandemic.

22.     Instead, the Boston School Committee decided that admission to the classes that will enter in the fall of 2021 will be based solely on the applicants' GPA in the fall of 2019, the last pre-Covid grading period ("Pre-Covid GPA").  *See* **Exhibit F**, Attachment 3, *Recommendations of Exam Schools Admission Criteria for School Year 2021-2022*, Exam School Admissions Working Group (October 21, 2020) ("October 21 Working Group Proposal").

23.     Under the truly extenuating circumstances presented by this pandemic, the Boston Parents do not challenge the basic idea of using GPA without the use of an examination for applicants seeking admission to the Boston Exam Schools for the fall of 2021.  They do, however, challenge the Boston School Committee's decision to implement a GPA-only admission plan in a way which – Covid or no Covid – violates equal protection.

24.     Rather than compare the applicants' GPAs in a city-wide competition, the Superintendent recommended – and the Boston School Committee adopted – an admissions program that deliberately Balkanizes the city.  Their new approach – the Zip Code Quota Plan – allocates the great majority of seats based on the zip codes in which the applicants reside, rather than on merit.

---

[3]     All numbers are approximate.

25.     The Defendants' *purpose* in recommending, adopting and implementing the Zip Code Quota Plan is to disfavor certain racial and ethnic groups (Asian and White applicants) while favoring others (Latino and African-American applicants).

26.     The *effect* of the Zip Code Quota Plan is likewise to disfavor certain racial and ethnic groups (Asian and White applicants) while favoring others (Latino and African-American applicants).

27.     Under the Zip Code Quota Plan, a small fraction (at most 20 percent) of the seats at each of the three Boston Exam Schools will be based on a citywide competition, using the applicants' Pre-Covid GPA as the basis for determining admission.

28.     The remaining 80 percent (or more) of the seats at each of the three Boston Exam Schools will be allocated by zip code, with each of Boston's 29 zip codes receiving a quota, based on each zip code's percentage of Boston's school-age children.[4]

29.     While admissions within each zip code will also be based on the applicants' Pre-Covid GPA, applicants for these zip code allocated seats will only compete against applicants in the *same* zip code.  As a result, a student with a *lower* GPA residing in one zip code will be *offered* admission, while a student with a *higher* GPA residing in another zip code will be *denied* admission.  For example, some "B" students may be offered admission while some "A" and "A+" students may be denied admission, because of the zip codes in which they reside.

30.     Moreover, where student grades are identical – and the winner must be chosen by lot – the Zip Code Quota Plan will result in some students having a better chance of selection than others, based on the different numbers of seats allocated to the various zip code pools.

---

[4]     There will also be a "zip code" and quota for students who are homeless.

31.     Boston is a diverse city.  It is home to families and children of various racial and ethnic backgrounds, including White, Asian, Latino, African-American and mixed race.  For various socio-economic, cultural, and historical reasons, students of different racial and ethnic backgrounds are not evenly distributed across Boston's zip codes.  Instead, some zip codes have a higher percentage of Asian and White students than the city at large, while other zip codes have a higher percentage of Latino and African-American students than the city at large.

32.     Zip codes are used as a basis for the U.S. Census Bureau to collect, organize and publish demographic data, including statistics about race and ethnicity.  As such, zip codes are a convenient proxy for race and ethnicity, and their use as such a proxy must be governed by the same constitutional considerations that would govern the overt use of race and ethnicity.

33.     The purpose and effect of the Zip Code Quota Plan are to use zip codes as precisely such a proxy for race and ethnicity, so as to artificially favor Latino and African-American students to the detriment of Asian and White students.  This violates the Equal Protection Clause of the Fourteenth Amendment.

34.     The unconstitutional purpose and effect of the Zip Code Quota Plan are shown by materials in the public record.  For example, the October 21 Working Group Proposal, which the Boston School Committee unanimously supported, recommended the Zip Code Quota Plan so that Boston's exam schools "better reflects the ***racial***, socioeconomic, and geographic diversity of all students (K-12) in the city of Boston."  **Exhibit F**, Attachment 3, at Slide 20 (emphasis added) (October 21 Working Group Proposal)).[5]

---

[5]     Although the October 21 Working Group Proposal also refers to "socioeconomic" diversity, this is a pretense.  For example, one of the zip codes hardest hit by the Zip Code Quota Plan, 02111 (Chinatown), has one of the lowest median family incomes in Boston.  Similarly, the reference to "geographic" diversity is another way of saying "zip code diversity," which is the

35.     **Exhibit A** (shown below) is a slide shown by Defendants (or their agents) at a public meeting of the Boston School Committee, held on October 8, 2020, where the Zip Code Quota Plan was introduced to the public.

36.     **Exhibit A:**



37.     **Exhibit A** shows that, while the racial and ethnic composition of the Boston Exam Schools is already diverse, it does not exactly match the racial and ethnic composition of the city.  The slide also shows that the purpose and effect of the Zip Code Quota Plan are to disfavor Asian and White students by decreasing their numbers at the Boston Exam Schools while favoring Latino and African-American students by increasing their numbers.

38.     **Exhibit A** also shows that, by recommending, adopting, and implementing the Zip Code Quota Plan, Defendants seek to decrease admissions to the Boston Exam Schools for

means by which Defendants seek to pursue their objective of artificially changing the racial and ethnic composition of the Boston Exam Schools.

Asian children from 21% to 16% and for White children from 39% to 32%, with corresponding increases in the admissions of Latino and African-American students.

39.     Defendants cannot justify administering this race-based process by arguing that zip codes are numerical designations, or that zip codes are facially neutral with respect to race and ethnicity, or any other similar argument.   Defendants' true purpose in recommending, adopting, and implementing the Zip Code Quota Plan (and the effect of that plan) is to discriminate against some students based on their race and ethnicity and favor other students based on their race and ethnicity.   *See, e.g., Yick Wo v. Hopkins*, 118 U.S. 356, 373-74   (1886) ("Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution.").

40.     The unconstitutionality of Defendants' conduct is further illustrated by examining **Exhibit B** (shown below), a chart prepared by the Boston School Committee or its agents. **Exhibit B** lists each Boston zip code and shows, among other things (i) the number of admissions ("invitations") to the Boston Exam Schools for the class that entered in the fall of 2020 under the traditional admissions process, and (ii) the projected number of admissions for the fall of 2021 using the Zip Code Quota Plan (including both the 20 percent citywide allocation and the 80 percent zip code allocation).

41. **Exhibit B:**



| Zip Code | Neighborhood | % of School-Aged Children | SY20-21 Actual | | Seats under Simulations |
|---|---|---|---|---|---|
| | | | # Applicants | # Invitations | Average # Invitations |
| 02108 | Beacon Hill | 0.3% | <6 | <6 | 4.0 |
| 02109 | Downtown | 0.1% | 8 | 7 | 5.7 |
| 02110 | Downtown | 0.3% | 7 | 7 | 2.7 |
| 02111 | Chinatown | 0.8% | 43 | 24 | 10.0 |
| 02113 | North End | 0.3% | 7 | 7 | 7.7 |
| 02114 | Beacon Hill/West End | 0.7% | 22 | 19 | 13.0 |
| 02115 | Fenway | 1.4% | 33 | 15 | 15.3 |
| 02116 | Back Bay | 1.3% | 44 | 27 | 19.7 |
| 02199 | Back Bay | 0.1% | <6 | <6 | 0.3 |
| 02118 | South End | 3.3% | 105 | 36 | 32.0 |
| 02119 | Roxbury | 6.1% | 136 | 27 | 56.0 |
| 02120 | Roxbury | 1.5% | 46 | 17 | 15.3 |
| 02121 | Roxbury | 8.2% | 218 | 27 | 78.0 |
| 02122 | Dorchester | 4.6% | 186 | 62 | 53.7 |
| 02124 | Dorchester | 12.4% | 335 | 84 | 123.0 |
| 02125 | Dorchester | 6.3% | 174 | 47 | 66.0 |
| 02126 | Mattapan | 6.3% | 131 | 20 | 58.0 |
| 02127 | South Boston | 4.2% | 108 | 35 | 42.3 |
| 02128 | East Boston | 9.0% | 252 | 57 | 80.7 |
| 02129 | Charlestown | 3.0% | 107 | 56 | 39.0 |
| 02130 | Jamaica Plain | 5.1% | 120 | 77 | 61.0 |
| 02131 | Roslindale | 6.5% | 180 | 94 | 69.7 |
| 02132 | West Roxbury | 4.8% | 190 | 133 | 76.0 |
| 02134 | Allston | 1.2% | 36 | 17 | 13.0 |
| 02163 | Allston | 0.1% | <6 | <6 | 0.0 |
| 02135 | Brighton | 3.7% | 97 | 52 | 35.7 |
| 02136 | Hyde Park | 7.8% | 214 | 68 | 80.3 |
| 02210 | Seaport | 0.1% | <6 | <6 | 2.7 |
| 02215 | Fenway/Kenmore | 0.4% | 14 | 8 | 4.7 |

42. **Exhibit B** shows that six Boston zip codes will lose more than ten seats at the

Boston Exam Schools under the Zip Code Quota Plan, with the losses for those zip codes

17

totaling **134 seats**.  In each of those six disfavored zip codes, census data shows that Asian and White families make up a large majority of the population.  This is shown by **Exhibit C** below.[6]

43.   **Exhibit C:**

| Zip Code | Name | Asian/White Population | 2020-21 Seats (citywide competition) | Loss of Seats under Zip Code Quota | Percentage Change |
|----------|------|------------------------|--------------------------------------|------------------------------------|-------------------|
| 02111 | Chinatown | 92 % | 24 | 14 | - 58 % |
| 02132 | West Roxbury | 89 % | 133 | 57 | - 43 % |
| 02129 | Charlestown | 87 % | 56 | 17 | - 30 % |
| 02135 | Brighton | 85 % | 52 | 16 | - 31 % |
| 02130 | Jamaica Plains | 72 % | 77 | 16 | - 21 % |
| 02131 | Roslindale | 60 % | 94 | 24 | - 26 % |

44.   **Exhibit B** also shows that seven Boston zip codes will gain more than ten seats at the Boston Exam Schools under the Zip Code Quota Plan, with the gains for those zip codes totaling **211 seats**.  In each of those seven favored zip codes, census data shows that Latino and African-American families make up a large majority of the population.  This is shown by **Exhibit E** below.[7]

---

[6]   The racial statistics shown in **Exhibit C** are drawn from data published by the U.S. Census Bureau and attached as **Exhibit D.**  All other information is copied or derived from **Exhibit A**, a chart prepared by the Boston School Committee.

[7]   The racial statistics shown in **Exhibit E** are drawn from data published by the U.S. Census Bureau and attached as **Exhibit D.**  All other information is copied or derived from **Exhibit A**, a chart prepared by the Boston School Committee or its agents.

45.   **Exhibit E:**

| Zip Code | Name | Latino/African-American Population | 2020-21 Seats (citywide competition) | Gain of Seats under Zip Code Quota | Percentage Change |
|---|---|---|---|---|---|
| 02126 | Mattapan | 99+ % | 20 | 38 | + 190 % |
| 02121 | Roxbury | 98 % | 27 | 51 | + 188 % |
| 02119 | Roxbury | 85 % | 27 | 29 | + 107 % |
| 02124 | Dorchester | 77 % | 84 | 39 | + 46 % |
| 02136 | Hyde Park | 74 % | 68 | 12 | + 18 % |
| 02128 | East Boston | 60 % | 57 | 24 | + 42 % |
| 02125 | Dorchester | 60 % | 47 | 19 | + 40 % |

46.   The charts shown in paragraphs 43 and 45 (**Exhibits C** and **E**) illustrate two additional points worthy of mention.  First, in allocating seats to zip codes, Defendants deviated widely – and deliberately – from the results of last year's citywide competition.  Second, in the zip codes that are favored by the Zip Code Quota Plan, many students were able to win admission last year in the citywide competition, *without* the assistance – and stigma – of a quota.

47.   The Zip Code Quota Plan, if not enjoined, will achieve the discriminatory objectives sought by Defendants:  It will reduce the number of Asian and White students admitted to the Boston Exam Schools in the fall of 2021 while increasing the number of Latino and African-American students.

48.   By using zip codes as a proxy for race and ethnicity through the Zip Code Quota Plan, Defendants will, unless enjoined, "establish quotas for members of certain racial groups [and] put members of those groups on separate admissions tracks," in violation of the Equal

Protection Clause of the Fourteenth Amendment.  *Grutter v. Bollinger*, 539 U.S. 306, 334 (2003) (citation omitted).

49.     By using zip codes as a proxy for race and ethnicity through the Zip Code Quota Plan, Defendants will, unless enjoined, "insulate applicants who belong to certain racial or ethnic groups from the competition for admission" in violation of the Equal Protection Clause of the Fourteenth Amendment.  *Grutter*, 539 U.S. at 334 (citation omitted),

50.     By using zip codes as a proxy for race and ethnicity through the Zip Code Quota Plan, Defendants will, unless enjoined, implement a policy of racial balancing.  Used in this sense, "racial balancing" is a policy designed "to assure within [the school's] student body some specified percentage of a particular group merely because of its race or ethnic origin."  *Grutter*, 539 U.S. at 334 (citations and quotation omitted).  Such "racial balancing" "is patently unconstitutional."  *Id.* at 329.  *Accord, Parents Involved in Cmty. Sch.*, 551 U.S. 701 (rejecting racial balancing as justification for using race in assigning students to public high schools).

## DISCRIMINATORY INTENT OF THE ZIP CODE QUOTA PLAN

51.     The discriminatory intent of the Zip Code Quota Plan is further evidenced by the conduct of certain members of the Boston School Committee during the open meeting on October 21, 2020, at which the Boston School Committee adopted the Zip Code Quota Plan. The then-Chairman of the Boston School Committee was caught on a "hot mic" mocking the names of Asian members of the community who had come to the meeting to comment on the plan.  The Chairman was later forced to resign because of those racist comments, but not until after the Boston School Committee adopted the anti-Asian Zip Code Quota Plan.

52.     Defendants' unconstitutional motivations are further illustrated by comments made by Defendant Alexandra Oliver-Davila, Vice-Chairwoman of the Boston School

Committee.  At that same meeting held on October 21, 2020, she described "Black and Latino youth" as "under-represented" and went so far to say: "It's just criminal that the percentages have not increased."  Continuing her call for racial balancing, Vice-Chairwoman Oliver-Davila declared that "all of our schools should reflect the student body that we have."

53.    Also, at that October 21 meeting, Defendant Dr. Lorna Rivera spoke in terms of racial quotas and percentages, saying: "We used to set aside 35 % of our seats for underrepresented minorities," and stating that the Zip Code Quota Plan "doesn't go far enough because white students would continue to benefit from 32 percent of the seats."

54.    While not all members of the Boston School Committee were so overt in their racial and ethnic references, no one disassociated themselves from those statements, and all voted in favor of the Zip Code Quota Plan, which is – and was presented as – a way of changing the racial and ethnic composition of the Boston Exam Schools.

55.    Unless enjoined by this Court, Defendants will implement the Zip Code Quota Plan, starting as early as late March, 2021.

56.    Plaintiff has no adequate remedy at law.

## COUNT I

### VIOLATION OF EQUAL PROTECTION CLAUSE
### U.S. CONST. AMEND. XIV

57.    Plaintiff re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58.    The Fourteenth Amendment of the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides in relevant part: "No state shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

59.     Defendants are acting "under color of state law" within the meaning of 42 U.S.C. § 1983.

60.     The Supreme Court has held that facially neutral state action violates the Equal Protection Clause when it has a disparate impact upon a racial group and was enacted with a racially discriminatory purpose.  *See Vill. Of Arlington Heights v. Metro Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977).

61.     Defendants' actions and statements demonstrate that the changes were made "at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).

62.     The Zip Code Quota Plan deliberately discriminates against Asian and White persons on the basis of race.

63.     As a result, students applying to the Boston Exam Schools, including Students 1-14, are harmed because they are now required to apply through a race-based process.

64.     The Zip Code Quota Plan violates Students 1-14's constitutional right to be free from racial and ethnic discrimination at the hands of the government.  The Zip Code Quota Plan also violates the constitutional right of Members 1-14 for their children to be free from such racial and ethnic discrimination.

<u>**COUNT II**</u>

**VIOLATION OF MASS. GEN LAWS, CH. 76, SECTION 5**

65.     Plaintiff re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66.     The laws of the Commonwealth of Massachusetts provide that "[n]o person shall be excluded from or discriminated against in admission to a public school of any town, or in

obtaining the advantages, privileges and courses of study of such public school on account of race, color, sex, gender identity, religion, national origin or sexual orientation."  Mass. Gen. Laws Ann. Ch. 76, § 5.

67.     The Zip Code Quota Plan deliberately discriminates against Asian and White persons seeking admission to the Boston Exam Schools, including Students 1-14, on the basis of race.

68.     The Zip Code Quota Plan will result in the exclusion of Asian and White persons from admission to the Boston Exam Schools on the basis of race.

69.     As such, the Zip Code Quota Plan violates Mass. Gen Laws, Ch. 76, §5.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Boston Parent Coalition for Academic Excellence Corp., prays that this Court grant the following relief:

a.     A *preliminary injunction* (i) enjoining Defendants from implementing the Zip Code Quota Plan and (ii) requiring that the competition for seats at the Boston Exam Schools, for the class entering in the fall of 2021, be conducted on a citywide basis without any use of race or ethnicity in admissions;

b.     A *permanent injunction* (i) enjoining Defendants from implementing the Zip Code Quota Plan and (ii) requiring that the competition for seats at the Boston Exam Schools, for the class entering in the fall of 2021, be conducted on a citywide basis without any use of race or ethnicity in admissions;

c.     A *permanent injunction* prohibiting Defendants from using zip codes as a factor in future admissions decisions to the Boston Exam Schools or otherwise making use of race or ethnicity in admissions;

    d.      Attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

    e.      Such other relief as this Court may deem just and proper.

Respectfully submitted:

/s/ *Callan G. Stein*
Callan G. Stein (BBO # 670569)
TROUTMAN PEPPER HAMILTON SANDERS LLP
125 High Street
Boston, MA 02110
Telephone: (617) 204-5100
callan.stein@troutman.com

William H. Hurd (Va. Bar # 16967)
Christopher W. Carlson, Jr. (Va. Bar # 93043)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1490
william.hurd@troutman.com
chris.carlson@troutman.com

(Motions for admission *pro hac vice* to be filed)

Mary Grace W. Metcalfe (N.Y. Bar #5377932)
TROUTMAN PEPPER HAMILTON SANDERS LLP
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
marygrace.metcalfe@troutman.com

(Motion for admission *pro hac vice* to be filed)

*Counsel for Plaintiff*

Dated: February 26, 2021

**<u>Certificate of Service</u>**

I, Callan G. Stein, certify that the foregoing document was filed this date via the Court's CM/ECF filing system.  A copy has been provided to counsel for the School Committee of the City of Boston, Legal Advisor, Catherine Lizotte.


*/s/ Callan G. Stein*