**EXHIBIT A**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BOSTON PARENT COALITION FOR ACADEMIC EXCELLENCE CORP., <br><br> Plaintiff, <br><br> v. <br><br> THE SCHOOL COMMITTEE OF THE CITY OF BOSTON, ALEXANDRA OLIVER-DAVILA, MICHAEL O'NEIL, HARDIN COLEMAN, LORNA RIVERA, JERI ROBINSON, QUOC TRAN, ERNANI DeARAUJO, and BRENDA CASSELLIUS, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 1:21-cv-10330-WGY |

## DECLARATION OF TANISHA M. SULLIVAN, ESQ.

1. I am the President of the NAACP – Boston Branch, and have served in that capacity since 2017.

2. I am over the age of 18 and am competent to testify. If called upon to testify in court, I would provide the same information under oath as I am providing in this declaration.

3. Established in 1912, ours was the first chartered branch of the National Association for the Advancement of Colored People (NAACP). Throughout its history, the NAACP – Boston Branch has fought to ensure that a quality education be offered to all of Boston's schoolchildren in a manner that is neither separate nor unequal. The Branch appeared before this Court as an organizational plaintiff in *Morgan v. Hennigan*, 379 F. Supp. 410 (D. Mass. 1974) (Boston's landmark school desegregation case), and continues its educational advocacy today.

4. The Branch has approximately 1000 active members, including parents with children who either have pending applications to Boston's highly selective public schools or who intend to apply in the next admissions cycle. The Branch also has members with children currently attending Boston's highly selective public schools.

5. Parents affiliated with the Branch include **NAACP Member Parent**, a Boston resident in zip code 02119 and the guardian of **M.S.**, who is currently in the 6th grade at the Nathan

Hale Elementary School in Roxbury. With a strong academic record, M.S. is eligible for admissions – and has a pending application – to the highly selective public schools. Parent 1 and M.S. are excited about the opportunity to attend a highly selective public school, and they are eager to receive an admissions decision.

6. The Branch and its members, including NAACP Member Parent, are deeply committed to diversity. We believe in the benefits that flow from diversity. All students should have an opportunity to learn with and from each other.

7. In 2016, the Branch, together with a host of civil rights organizations, filed a complaint with the U.S. Department of Justice to address racial harassment at Boston Latin School (BLS), Boston's flagship highly selective public school and the oldest public school in the country. The subsequent investigation resulted in a finding that BLS had violated Title IV of the Civil Rights Act of 1964 in failing to address the racial harassment Black students experienced there.

8. Both before and after the Title VI finding, the Branch has continuously advocated for efforts to eliminate barriers to admission – and increase diversity – at Boston's highly selective public schools. We view these matters as deeply intertwined. While Black students comprise 30% of enrollment in Boston Public Schools, they are enrolled at BLS at a rate of 7.7%, their lowest enrollment rate since school desegregation.[1] We believe that securing a critical mass of students of all races at each exam school will not only enrich the education of all attendees, but also help prevent the ostracization and harassment of any racial group.

9. To this end, the Branch has spent a good deal of the last five years engaging both the school district and the public on what the highly selective public school admissions process should look like. In 2017, we released *A Broken Mirror*, a report examining racial and neighborhood enrollment disparities in Boston's highly selective public schools, together with other civil rights organizations.[2] The report found that Black and Latinx students were underrepresented in the highly selective public schools as a whole, and particularly at BLS. For example, Latinx enrollment at BLS has been steady since the early 2000s, despite the fact that Latinx enrollment in Boston Public Schools had more than doubled in that time.

10. *A Broken Mirror* highlighted a host of disparities in access by neighborhood as well. For example, Codman Square, Hyde Park, East Boston, and Grove Hall had six times more middle school-age youth than West Roxbury, yet invited students from West Roxbury

---

[1] School and District Profiles, *Boston Latin*, Massachusetts Department of Elementary and Secondary Education (2021), https://profiles.doe.mass.edu/profiles/student.aspx?orgcode=00350560&orgtypecode=6&
[2] NAACP, Boston Branch et al., *A Broken Mirror: Exam School Admissions Fail to Reflect Boston's Diversity* (May 2017), http://lawyersforcivilrights.org/wp-content/uploads/2017/05/ABrokenMirror-ExamSchoolAdmissionsFailtoReflectBostonsDiversity.docx.pdf.

    comprised almost as many BLS seats (111) as students from these neighborhoods combined (113) among 2017-18 admittees.

11. In the report, we critiqued what was then Boston's admissions criteria for highly selective public school: 50% of a student's entrance score was drawn from their recent math and English grades, while the other 50% was based on performance on the Independent Schools Entrance Exam (ISEE).

12. We found the district's reliance on the ISEE, an exam for admittance to private schools, to be problematic.  The test was not designed around Massachusetts' educational standards nor Boston's curriculum.  As a result, many families turned to private and expensive test preparation programs to give their students the only exposure they would receive to some of the tested topics.  We felt this process was a fundamentally unfair means to measure students' merit toward highly selective public school admission.

13. We found similar problems with the district's reliance on grades, given the inability to norm the wide array of grading systems in the public, charter, private, parochial, and METCO schools and programs that serve our city's youth.

14. We concluded the report by highlighting race-neutral admissions models that could serve to increase racial, socioeconomic, and neighborhood diversity at Boston's exam schools. We drew these models from guidance released by the U.S. Departments of Justice and Education that interpreted Justice Anthony Kennedy's concurrence in *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1.*, 551 U.S. 701 (2007).

15. After releasing the report, we held a series of public forums across Boston to gather feedback and suggestions from parents, students, and interested communities on exam school admission models.  We partnered with community organizations and neighborhood associations to hold regional forums in Dorchester, Downtown Boston, Hyde Park, Mattapan, East Boston, Roxbury and Jamaica Plain.

16. Throughout the forums, we heard from families that BPS' highly selective public school admissions model created harmful and unnecessary barriers to admission.  In fact, we spoke with parents in East Boston who were actively engaged in their children's education, but had never even heard of Boston's highly selective public schools.

17. I brought these experiences to bear in serving on the Exam School Admissions Criteria Working Group that recommended the pandemic-related interim remedial admissions policy challenged in this lawsuit.  I served on this community Working Group at the request of the BPS Superintendent, and in my capacity as President of the NAACP, together with a group of Asian American, Black, Latinx, and white school administrators, parents, and advocates.  We were given a daunting task: develop an admissions policy

      recommendation that would appropriately measure students' merit amidst concurrent and overlapping public health, economic, and racial justice pandemics.

18. Faced with no practicable means for administering an entrance exam, and significant doubts about the validity of grades during a pandemic, our interim policy proposed relying on pre-pandemic grades alone. To ensure that students of all neighborhoods and backgrounds would have an opportunity to compete for those seats despite the above-referenced array of schools and grading systems, we proposed allocating 80% of those seats in proportionality to the K-12 population within each neighborhood zip code.

19. We developed the pandemic-related interim remedial admissions policy in support of Boston Public Schools' constitutional interest in promoting racial diversity within its schools. We were committed to doing so in a manner that did not consider the race of any applicant, per Justice Kennedy's concurrence in *Parents Involved*.

20. In light of the intentionally inclusive efforts of the NAACP Boston to help ensure that all children and families have equitable access to all BPS schools, I am appalled to see this policy – and my own testimony – reframed in this complaint as discriminatory.

I declare under the penalty of perjury of the United States that the foregoing is correct and executed this 2nd day of March, 2021.

_/s/ Tanisha Sullivan_

Tanisha M. Sullivan, Esq.
President
NAACP-Boston Branch