# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### BOSTON DIVISION

<table>
<tr>
<td>

**BOSTON PARENT COALITION FOR ACADEMIC EXCELLENCE CORP.,**

**Plaintiff,**

v.

**THE SCHOOL COMMITTEE OF THE CITY OF BOSTON, ALEXANDRA OLIVER-DAVILA, MICHAEL O'NEILL, HARDIN COLEMAN, LORNA RIVERA, JERI ROBINSON, QUOC TRAN, ERNANI DeARAUJO, and BRENDA CASSELLIUS,**

**Defendants**

**and**

**THE BOSTON BRANCH OF THE NAACP, THE GREATER BOSTON LATINO NETWORK, ASIAN PACIFIC ISLANDER CIVIC ACTION NETWORK, ASIAN AMERICAN RESOURCE WORKSHOP, MAIRENY PIMENTAL, and H.D.,**

**Defendants-Intervenors.**

</td>
<td>

**Civil Action No. 1:21-cv-10330-WGY**

</td>
</tr>
</table>

## MEMORANDUM IN SUPPORT OF MOTION
## PURSUANT TO FEDERAL RULE 60(b)

Callan G. Stein (BBO # 670569)
Mary Grace W. Metcalfe (N.Y. Bar #5377932)
TROUTMAN PEPPER HAMILTON SANDERS LLP
125 High Street
Boston, MA 02110
Telephone: (617) 204-5100
callan.stein@troutman.com
marygrace.metcalfe@troutman.com
Admitted *pro hac vice*

William H. Hurd (Va. Bar # 16967)
Christopher W. Carlson, Jr. (Va. Bar # 93043)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1335
william.hurd@troutman.com
chris.carlson@troutman.com
Admitted *pro hac vice*

*Counsel for Plaintiff*

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.   RELEVANT FACTUAL AND PROCEDURAL HISTORY ............................. 2

   A.   Procedural History ............................................................................... 2

   B.   Text Messages Omitted from the Record .............................................. 5, 6

III.  APPLICABLE STANDARD ........................................................................... 7

IV.   ARGUMENT .................................................................................................. 8

   A.   Relief Is Appropriate under Rule 60(b)(3) ........................................... 9

        1.   Fraud, Misrepresentation and Misconduct Are All Present ............... 9

        2.   Substantial Interference Resulted ................................................. 12

   B.   Relief Is Appropriate under Rule 60(b)(2) ........................................... 16

   C.   In the Alternative, Relief is Appropriate Under Rule 60(b)(6) ............... 20

V.    CONCLUSION ............................................................................................. 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alpine v. Friend Bros.*,
  244 Mass. 164 (1923) ......................................................................................11

*Anderson v. Cryovac, Inc.*,
  862 F.2d 910 (1st Cir. 1988), aff'd, 900 F.2d 388 (1st Cir. 1990) ................................. *passim*

*Arlington Heights. Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977)..........................................................................................18

*Brown v. Pennsylvania Railroad Co.*,
  282 F.2d 522 (3d Cir. 1960)..............................................................................16

*CASA de Maryland, Inc. v. Trump*,
  355 F. Supp. 3d 307 (D. Md. 2018) ...................................................................18

*Catskill Dev., L.L.C. v. Park Place Ent. Corp.*,
  286 F. Supp. 2d 309 (S.D.N.Y. 2003)............................................................13, 15

*Chilson v. Metro. Transit Auth.*,
  796 F.2d 69 (5th Cir. 1986) ..............................................................................19

*Com. Ins. Co., of Newark, N. J. v. Gonzalez.*,
  512 F.2d 1307 (1st Cir. 1975)............................................................................13

*Commonwealth v. S.S. Zoe Colocotroni*,
  601 F.2d 39 (1st Cir. 1979) ............................................................................7, 20

*Corcoran v. McCarthy*,
  2010 S.D. 7, 778 N.W.2d 141 ...........................................................................15

*Davila-Alvarez v. Escuela de Medicina Universidad Cent. del Caribe*,
  257 F.3d 58 (1st Cir. 2001)...............................................................................20

*Fisher v. Kadant, Inc.*,
  589 F.3d 505 (1st Cir. 2009).............................................................................8

*In re Glob. Energies, LLC*,
  763 F.3d 1341 (11th Cir. 2014) ....................................................................16, 17

*Graham by Graham v. Wyeth Lab'ys, Div. of Am. Home Prod. Corp.*,
  906 F.2d 1399 (10th Cir. 1990) ..............................................................16, 18, 19

*Hausman v. Holland Am. Line-U.S.A.*,
No. CV13-0937 BJR, 2016 WL 51273, at *5 (W.D. Wash. Jan. 5, 2016) ............................14

*Hoult v. Hoult*,
57 F.3d 1 (1st Cir. 1995) ........................................................................................................7

*Hutchins v. Cardiac Sci., Inc.*,
456 F. Supp. 2d 196 (D. Mass. 2006) ...................................................................................11

*Hutchins v. Cardiac Sci., Inc.*,
491 F. Supp. 2d 136 (D. Mass. 2007) ...................................................................................10

*Huynh v. City of Worcester*,
No. CIV.A. 08-40240-TSH, 2010 WL 3245430 (D. Mass. Aug. 17, 2010)...........................20

*Huynh v. City of Worcester*,
No. CIV.A. 08-40240-TSH, 2010 WL 5376863 (D. Mass. Dec. 20, 2010) ...........................20

*Karak v. Bursaw Oil Corp.*,
288 F.3d 15 (1st Cir. 2002) ................................................................................................8, 9

*Kettenbach v. Demoulas*,
901 F. Supp. 486 (D. Mass. 1995) ........................................................................................19

*Knightsbridge Mktg. Servs., Inc. v. Promociones Y Proyectos, S.A.*,
728 F.2d 572 (1st Cir. 1984) .................................................................................................13

*Langadinos v. Pezza Law, P.C.*,
No. MICV201200911, 2014 WL 7406008 (Mass.Super. Apr. 25, 2014) ...............................11

*LeBaron v. Massachusetts P'ship for Corr. Health*,
No. CV 17-10323-PBS, 2017 WL 3812132 (D. Mass. Aug. 31, 2017) ...................................8

*Marquis Theatre Corp. v. Condado Mini Cinema*,
846 F.2d 86 (1st Cir. 1988) ..................................................................................................13

*Mitchell v. United States*,
141 F.3d 8 (1st Cir. 1998) ........................................................................................16, 17, 18

*Nation-Wide Check Corp. v. Forest Hills Distributors, Inc.*,
692 F.2d 214 (1st Cir. 1982) .................................................................................................13

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
507 U.S. 380 (1993)..............................................................................................................20

*Rally Mfg., Inc. v. Mr. Gasket Co.*,
No. 87-1533-CIV-MISHLER, 1992 WL 211010 (S.D. Fla. June 12, 1992).........................15

*Renfroe v. Parker,*
   No. 3:18-CV-609-DPJ-LRA, 2020 WL 6329468 (S.D. Miss. Oct. 28, 2020) .......................17

*Rivera v. M/T Fossarina,*
   840 F.2d 152 (1st Cir. 1988) .....................................................................................16

*Roger Edwards, LLC v. Fiddes & Son Ltd.,*
   427 F.3d 129 (1st Cir. 2005) .................................................................................9, 10

*Rosaura Bldg. Corp. v. Municipality of Mayaguez,*
   778 F.3d 55 (1st Cir. 2015) .........................................................................................7

*Rosebud Sioux Tribe v. A & P Steel, Inc.,*
   733 F.2d 509 (8th Cir. 1984) ....................................................................................19

*Rozier v. Ford Motor Co.,*
   573 F.2d 1332 (5th Cir. 1978) ................................................................................8, 9

*Saget v. Trump,*
   345 F. Supp. 3d 287 (E.D.N.Y. 2018) .......................................................................18

*Schultz v. Butcher,*
   24 F.3d 626 (4th Cir. 1994) ......................................................................................15

*Semtek Int'l Inc. v. Info. Satellite Sys.,*
   No. CIV.A. 09-10183-RWZ, 2012 WL 831475 (D. Mass. Mar. 9, 2012) ...........................20

*Thomas v. City of New York,*
   293 F.R.D. 498 (S.D.N.Y. 2013) ...............................................................................14

*Thomas v. McAullife,*
   691 F. App'x 671 (2d Cir. 2017) ...............................................................................14

*Tiller v. Baghdady,*
   294 F.3d 277 (1st Cir.2002) ........................................................................................9

*United States v. Adcox,*
   19 F.3d 290 (7th Cir. 1994) ......................................................................................11

*United States v. Boskic,*
   545 F.3d 69 (1st Cir. 2008) .......................................................................................11

*United States v. Sheehy,*
   541 F.2d 123 (1st Cir. 1976) .....................................................................................11

*United States v. Walus,*
   616 F.2d 283 (7th Cir. 1980) ...............................................................................17, 19

iv

*Van Eperen v. Massachusetts Mut. Life Ins., Co.*,
    No. 3:14-CV-13008-MAP, 2017 WL 9249439 (D. Mass. Feb. 28, 2017) ............................11

*In re Wayne Manor, Inc.*,
    117 B.R. 12 (D. Mass. 1990) ............................................................................................11, 12

*West v. Bell Helicopter Textron, Inc.*,
    803 F.3d 56 (1st Cir. 2015) ...............................................................11, 13, 14, 15

*Wright v. Reithoffer Shows, Inc.*,
    90 Mass. App. Ct. 1112 (2016) ............................................................................................12

**Statutes**

M.G.L. 66 ..............................................................................................................................11

**Other Authorities**

Federal Rule of Civil Procedure 59(b) ....................................................................8, 16

Federal Rule of Civil Procedure 60(b) ..................................................................... *passim*

Federal Rule of Civil Procedure 60(b)(2) ................................................................. *passim*

Federal Rule of Civil Procedure 60(b)(3) ................................................................. *passim*

Federal Rule of Civil Procedure 60(b)(6) ....................................................................8, 20

Federal Rule of Civil Procedure 60(c)(1) .........................................................................8

Federal Rule of Civil Procedure 62.1(a)(3) ......................................................................7

Invoking Federal Rule of Civil Procedure 60(b)(2) and (3), the Boston Parent Coalition for Academic Excellence Corp. (the "Boston Parents") seeks relief from the judgment entered by this Court on April 15, 2021.  Because the case is now on appeal in the First Circuit, the Boston Parents request an immediate indicative ruling under Federal Rule of Civil Procedure 61.2(a).

## I.      PRELIMINARY STATEMENT

New evidence, in the form of highly relevant text messages between two members of the Boston School Committee, has recently come to light.  These text messages have long been in the possession of the City of Boston, and should be been provided to the Boston Parents in response to its public records request and should have been made a part of the agreed-upon record in this case when the Court originally considered it.  But the City, instead, concealed the messages, thereby depriving the Boston Parents and the Court of the opportunity to consider them.  The reason for the City's actions can and must be inferred from the content of the concealed evidence: the text messages show clear racial motivation and anti-White racism on the part of two School Committee members who were leading proponents of the Zip Code Quota Plan.  In fact, the content of this previously suppressed evidence is so damning that both members have now been forced to resign.

These facts are unique.  They warrant the relief sought, and they elevate the Boston Parents' request beyond that of other Rule 60 motions.  As this memorandum explains, the Boston Parents timely exercised their rights under state law to obtain copies of these and other text messages exchanged between members of the School Committee during the meeting where the Zip Code Quota Plan was adopted.  But when the School Committee responded to that request, it deliberately concealed clearly racist statements, first, by *deleting* racist portions of text messages from what it claimed was a "transcript" of text messages, and, second, by misrepresenting that it had produced

complete records when it knew that it had not.  This prejudice was further compounded when neither the City of Boston nor the individual Defendants came clean when it came time to provide this Court with an agreed-upon record.  It was only after the *Boston Globe* published leaked copies of the offensive texts that the City of Boston finally produced them to the Boston Parents, long after this Court issued its decision in this case.  That is what prompts this Motion.

These previously concealed text messages clearly reflect racial animus.  And while such animus is not necessary for the Court to invoke strict scrutiny when evaluating the Zip Code Quota Plan, evidence showing such animus makes the case for strict scrutiny all the more compelling.  Because the City concealed that evidence and deprived the Boston Parents and the Court from considering it, relief from the Court's only partially-informed judgment is warranted.  Unfortunately, the City's conduct was uncovered too late for the Court to issue relief related to the requested preliminary injunction.  But it is not too late for the other forms of relief the Boston Parents requested, including the permanent injunction barring any further use of the Zip Code Quota Plan, as well as relief specific to the families represented by the Boston Parents.

But this Motion does not seek any such ultimate relief, nor do the Boston Parents ask the Court to reverse its prior ruling.  The issue presented by this Motion is solely whether the new evidence and its withholding by the City warrant relief from the current judgment and the re-opening of the case at the District Court level.  As this Memorandum explains, the answer to both questions is a resounding yes, and the Motion should, therefore, be granted.

## II.     RELEVANT FACTUAL AND PROCEDURAL HISTORY

### A.     Procedural History

On April 15, 2021, this Court issued an Order for Judgment in this matter in favor of Defendants.  Doc. 104.  The Court based that decision on an agreed upon record that included

certain text message communications between two members of the Boston School Committee –
Vice-Chairperson Alexandra Oliver-Dávila and Member Lorna Rivera – that discussed, among
other things, racist comments that had been made by the School Committee chair at the time,
Michael Loconto.  *See* Doc. 38-71, 72.  That record, however, contained no indication that Oliver-
Dávila or Rivera had made their own racist statements because the City had not produced any such
text messages.

The Boston Parents obtained the text messages included in the record through a public
records request for "ALL electronic text messages" during the October 21st School Committee
meeting.  *See* Darragh Murphy Declaration ("Murphy Decl.") ▐▐ 8-10, <u>Exhibit 1</u>.  In response, the
City produced an eight (8) page *transcript* of responsive text messages (not the text messages
themselves).  Murphy Decl., Atts. D and E.  The City did not disclose that it had removed text
messages when preparing the transcript, nor did it indicate that it had withheld any documents.  *Id.*

Six days later, the Parties included that transcript in the Joint Agreed Statement of Facts
("ASE").  Doc. 38.  Exhibit 72 to the ASE contained transcribed text messages between Oliver-
Dávila and Rivera.  *Compare* ASE01862 *with* Murphy Decl., Att. E.  In the Agreed Statement of
Facts, the Boston Parents, the Defendants, and the Intervenors all represented that:

> The parties, by their undersigned counsel, hereby stipulate and agree to the facts set
> forth herein and to the authenticity of the documents attached hereto. To the extent
> the statements below cite to documents, the documents are true and accurate copies
> and the parties refer the Court to those documents for a more thorough discussion
> of the facts.

Doc 38 at 1. More specifically, with regard to the text messages, the Defendants[1] represented that:

> A true and accurate transcription of text messages between Boston School
> Committee Members, Vice-Chairperson Alexandra Oliver Davila and Lorna Rivera
> during the October 21, 2020 Boston School Committee meeting is attached as
> Exhibit 72.

---

[1]     Although the Intervenors objected to Paragraph 67 of the Agreed Statement of Facts, the Court correctly
treated the Defendants' text messages as part of the record before it.

*Id.* at ¶ 67.

The Boston Parents, and their counsel, relied on the production and on Defendants' representations concerning the completeness of the text messages in agreeing, on March 16, 2021, to forgo discovery in this matter and proceed solely upon the agreed upon record, as set forth in the ASE. It was on that record, and only upon that record, that the Court issued its decision.

Around the same time, the *Boston Globe* made its own public records request for text messages. Like the Boston Parents, the *Boston Globe* received a sanitized version that the City incorrectly passed off as complete. Two weeks ago, however, the *Boston Globe* published previously undisclosed, leaked copies of text messages sent between Oliver-Dávila and Rivera during the October 21st meeting. Murphy Decl., Atts. F and G. These text messages were clearly responsive to both the Boston Parents' and the *Boston Globe's* public records requests, but despite the City's repeated representations that it had produced all relevant text messages (discussed above), the text messages published in the *Boston Globe* article had been withheld. In that article, both Rivera and Oliver-Dávila claimed that they had provided those text messages to the City of Boston in October 2020. Murphy Decl., Att. F. However, the City never produced them and never disclosed that they were being withheld. *See* Murphy Decl. ¶12.

These text messages (discussed in detail below) clearly reflect Rivera's and Oliver-Dávila's own racist views, and their racially-focused motivation for supporting the Zip Code Quota Plan. As a result of the *Boston Globe* uncovering these previously concealed racist messages, both Rivera and Oliver-Dávila have now joined Mr. Loconto in resigning from the School Committee. *See* Murphy Decl. ¶21.

Following the June 7, 2021 *Boston Globe* Article, the Boston Parents called upon the City to supplement its previous, deficient production. *See* Murphy Decl. ¶13. Having been caught red-

handed, the City made a supplemental production on June 18, 2021, that, this time, included 51 individual screenshots of text messages (as opposed to transcripts of them) sent and received by Boston School Committee members.  Murphy Decl., Atts. I-1 – I-5.  All of these text messages were responsive to the Boston Parents' initial public records request, which was made *before* this Court first considered this case.

## B.     Text Messages Omitted from the Record

The City of Boston's recent production of text messages makes two things clear: (1) it withheld relevant text messages from the Boston Parents and the Court; and (2) it altered and omitted texts from the transcript it prepared to conceal clearly damaging communications between Oliver-Dávila and Rivera.  The two most egregious examples of this conduct are described below.

*First*, the City chose not to transcribe portions of the text messages that contained racist comments by Oliver-Dávila and Rivera.  A comparison of the newly produced text message screenshots and the originally produced transcript make this crystal clear:




On the left are the actual, unaltered text messages that the City just recently produced.  Murphy Decl., Att. I-2, at 15. On the right is the transcript the City produced on March 23 and presented as the complete text message string.  Murphy Decl., Att. E, at 1. The actual text message and the transcript begin identically, but in preparing the transcript the City chose to delete the critical language addressing race, namely, Rivera's comment "Wait til the white racists start yelling at us" and Oliver-Dávila's response "Whatever…they are delusional."  As shown above, the transcript produced by the City does not contain so much as an ellipsis indicating that a part (and a critical part at that) of the text message had been removed.

> *Second*, in the transcript the City prepared it likewise concealed, in its entirety, the adjacent text messages between Oliver-Dávila and Rivera.  *See* Murphy Decl., Att. I-2, at 19.  Once again, from the racially charged content of the removed text messages, it is readily apparent why the City chose to conceal them as the two members agree that they are "[s]ick of westie whites."  The terms "WR" "and "westies" refer to West Roxbury, one of the zip codes treated unfavorably by the Zip Code



Quota Plan, a point that Oliver-Dávila has publicly confirmed.  *See* Murphy Decl., Att. F ("June 7, 2021, *Boston Globe* Article").  Importantly, these concealed text messages were sent immediately before the text messages between Rivera and Oliver-Dávila that the City did include in the record.  *See* Doc. 38-72 (Agreed Exhibit 72).  Thus, the omitted messages easily could have been produced, and the decision not to produce them must have been deliberate.

6

### III.    APPLICABLE STANDARD

Upon a timely motion, "the court may relieve a party or its legal representative from a final judgment, order, or proceeding." Rule 60(b).  As the First Circuit has instructed, "when an appeal is pending from a final judgment, parties may file Rule 60(b) motions directly in the district court without seeking prior leave from us." *Commonwealth v. S.S. Zoe Colocotroni*, 601 F.2d 39, 42 (1st Cir. 1979). "The district court, being familiar with the case, is in a far better position than is an appellate court to evaluate the motion's merits quickly." *Id.* at 41.[2]

The First Circuit has specified the procedure that district courts are to use in handling such motions, stating that "[t]he district court is directed to review any such motions expeditiously, within a few days of their filing…" and that "if the district court is inclined to grant the motion, it should issue a brief memorandum so indicating. " *S.S. Zoe Colocotroni*, 601 F.2d at 42.[3] "Armed with this [indicative ruling], movant may then request [the First Circuit] to remand the action so that the district court can vacate judgment and proceed with the action accordingly." *Id.*[4]

District courts have broad discretion to set aside a judgment if a movant is able to show that it is entitled to relief under one of the six subparts of Rule 60(b).[5]  Here, relief is appropriate based on two of those subparts: (a) the introduction of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under

---

[2]    *See also Rosaura Bldg. Corp. v. Municipality of Mayaguez*, 778 F.3d 55, 64 (1st Cir. 2015) ("parties litigating before this Court should file a motion under Rule 60(b) to vacate a judgment directly with the district court, without seeking prior leave from the Court of Appeals").

[3]    *See, further, S.S. Zoe Colocotroni*, 601 F.2d at 42 n.3. ("If the district court is unable conscientiously to dispose of the motion within a few days … it should issue a brief memorandum to this effect. The memorandum should indicate that the motion is non-frivolous and not capable of being fairly decided solely on the basis of the court's initial screening and that the court will require a specified number of more days to complete its review ...").

[4]    *See also, generally,* FRCP 62.1(a)(3) (where "an appeal [] has been docketed and is pending, the court may …state either that it would grant the motion if the court of appeals remands for that purpose …").

[5]    *See Hoult v. Hoult*, 57 F.3d 1, 3 (1st Cir. 1995).

59(b)," FRCP 60(b)(2); and (b) the existence of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party," FRCP 60(b)(3).[6]

## IV.    ARGUMENT

Here, the Boston Parents are entitled to relief under Rule 60(b) because it is able to show that "that [its] motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside, [it] has the right stuff to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted." *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 19 (1st Cir. 2002).

First, the Boston Parents' motion is timely.  Motions under Rule 60(b)(2) and 60(b)(3) must be brought within one year of the entry of judgment at issue.  Because the judgment at issue was entered on April  15, 2021, a little more than two months ago, this motion is timely.[7]  Second, the circumstances described above are certainly "exceptional" and merit the requested relief under Rule 60(b)(2) and (3), as discussed below.

Third, if the judgment is set aside, the Boston Parents have evidence to mount a potentially meritorious claim.  The new evidence of racial animus by two leading members of the Boston School Committee – standing alone or in combination with all the other evidence before the Court – warrant the application of strict scrutiny, thereby making the Zip Code Quota Plan presumptively unconstitutional.  Moreover, the deliberate concealment of this evidence lends further support to the Boston Parents' position that the Zip Code Quota Plan was racially motivated.

---

[6]     Because, as discussed below, the legal standard for Rule 60(b)(3) is distinct from that for 60(b)(2), Plaintiff respectfully requests that the Court rule upon each ground separately. *See Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978); *Fisher v. Kadant, Inc.*, 589 F.3d 505, 512 (1st Cir. 2009).

[7]     *LeBaron v. Mass. P'ship for Corr. Health*, No. CV 17-10323-PBS, 2017 WL 3812132, at *2 (D. Mass. Aug. 31, 2017) ("Rule 60(c)(1) provides a one year limitation period for reasons (1), (2) and (3) of Rule 60(b) and there is no time limitation for a motion brought under Rule 60(b)(6)." (quotation marks and brackets omitted)).

Fourth, there will be no unfair prejudice.  As noted, the City of Boston concealed this evidence long enough such that the use of the Zip Code Quota Plan has progressed too far to enjoin its use for the class entering the Exam Schools in the fall of 2021.  But, other forms of requested relief remain available, including an injunction barring any further use of the Zip Code Quota Plan as well as relief specific to the families represented by the Boston Parents, including but not limited to nominal damages.  Defendants can hardly claim to be prejudiced *unfairly* when it was their own actions that created the problem now before the Court.

## A.      Relief Is Appropriate under Rule 60(b)(3)

Rule 60(b)(3) allows a court to vacate a final judgment or order based upon an adverse party's fraud, misrepresentation, or misconduct.  FRCP 60(b)(3).  Relief is warranted where, as here, "the challenged behavior must *substantially* have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed at trial."  *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 924 (1st Cir. 1988), aff'd, 900 F.2d 388 (1st Cir. 1990) (emphasis in original).

## 1.      Fraud, Misrepresentation and Misconduct Are All Present

"Rule 60(b)(3) is designed to afford protection against judgments that are unfairly obtained rather than against judgments that are factually suspect."  *Karak*, 288 F.3d at 22.[8]  This purpose is reflected in the type of fraud considered under the Rule.  In the First Circuit:

> fraud perpetrated in the course of litigation interferes with the process of adjudication, and it is this kind of litigation-related fraud that principally concerns Rule 60(b)(3)'s fraud provision. Once such fraud is proved, the judgment may be set aside merely upon the movant's showing that the fraud "substantially interfered with [the movant's] ability fully and fairly to prepare for, and proceed at, trial."

*Roger Edwards, LLC v. Fiddes & Son Ltd.*, 427 F.3d 129, 134 (1st Cir. 2005) (quoting *Tiller v. Baghdady*, 294 F.3d 277, 280 (1st Cir. 2002)).

---

[8]      *See also Rozier*, 573 F.2d at 1339   (Unlike Rule 60(b)(2), "subsection [(b)(3)] of the Rule is aimed at judgments which were unfairly obtained, not at those which are factually incorrect.").

The conduct here constitutes such a fraud.  Text messages by two School Committee Members revealing not only their racial motivation but their racial animus, were deliberately concealed.  Moreover, the concealed text messages concerned one of the races (White students) and one of the Zip Codes (West Roxbury) that would be, and was, most negatively impacted by the Zip Code Quota Plan.  Murphy Decl. Ex. I-2.  The City gave no indication that it was withholding highly relevant messages, nor did it indicate that it had altered the messages to remove references to race when it transcribed the messages.  Murphy Decl., Att. D.  *See also* Murphy Decl., Att. C.

The transcribed text messages the City produced in response to the Boston Parents' public records requests were an important part of the Agreed Statement of Facts and, thus, the closed record on which the Parties agreed this Court would base its decision.  *See* Docs. 38-1 through 38-75.  The City and Defendants forwent repeated opportunities to come clean about the concealed text messages, but instead chose, each time, to make representations they knew were false.  Indeed, in the Agreed Statement of Facts, *the participants in the concealed text messages* stipulated to the authenticity of the transcript.  Doc 38 at 1.

Providing the Boston Parents with doctored transcripts, concealing the existence of the omitted portions, and then submitting that doctored evidence to the Court is exactly the type of fraud that courts and scholars agree triggers the application of 60(b)(3).[9]  The requirements of fraud under Rule 60(b)(3) are met here.[10]

---

[9]    *See Roger Edwards*, 427 F.3d at 134 (highlighting "forged evidentiary documents" as "paradigmatic").

[10]    *See, e.g., Hutchins v. Cardiac Sci., Inc.*, 491 F. Supp. 2d 136, 138 (D. Mass. 2007) ("When it later came to light that Cardiac Science had knowingly concealed [relevant information] and repeatedly misrepresented itself … the court became concerned its earlier ruling lacked an adequate foundation and, upon reconsideration, vacated it" under Rule 60(b)(3)).

In addition (or in the alternative) to constituting *fraud*, such conduct likewise satisfies the standard for a *misrepresentation* under Rule 60(b)(3).  In responding to the public records requests, the City was required to disclose if any information was withheld.  M.G.L. 66 s. 10(b)(iv).  It made no such disclosure.  Murphy Decl., Atts. C and D.  In stark contrast, when the City finally and appropriately produced the original text messages on June 18, 2021, the City admitted that "[b]ased upon request for all texts messages associated with the" Boston Parents' public records request, "the City has determined that it will provide additional text messages."  Murphy Decl. ¶15; Murphy Decl., Atts. H.  "[T]he failure to disclose known facts when there was a duty" to do so qualifies as a misrepresentation.  *Alpine v. Friend Bros.*, 244 Mass. 164, 167 (1923).

The individual Defendants who participated in the concealed text message conversations misrepresented that the documents at issue were "true and accurate."  A transcription cannot be "true and accurate" when it is incomplete, and certifying a document is "true and accurate" when it is incomplete is a false statement.[11]  Relief is appropriate under Rule 60(b)(3).[12]

Finally, the Boston Parents are entitled to the relief, even if the Court were to find the *misconduct* here to be entirely inadvertent.  The First Circuit's definition of misconduct under Rule

---

[11]    *See, U.S. v. Boskic*, 545 F.3d 69, 87 (1st Cir. 2008) ("our precedent establishes that a jury can properly find that the defendant made a false statement by swearing that the incomplete answers to questions on a form are truthful even if the defendant does not also swear that the responses to the questions on the form are complete") (collecting cases); *U.S. v. Adcox*, 19 F.3d 290, 292 n1 (7th Cir. 1994) ("when it failed to include [] crucial" details, transcript was not "true and accurate transcription"); *Langadinos v. Pezza Law, P.C.*, No. MICV201200911, 2014 WL 7406008, at *4 (Mass.Super. Apr. 25, 2014) (obligation "to maintain true and accurate records" not met where "incomplete"); *U.S. v. Sheehy*, 541 F.2d 123, 125 (1st Cir. 1976) ("Although appellant certified that the information in the financial statement was 'true and accurate' there were substantial misstatements" in that it omitted items); *Van Eperen v. Mass. Mut. Life Ins., Co.,* No. 3:14-CV-13008-MAP, 2017 WL 9249439, at *4 (D. Mass. Feb. 28, 2017) (statement not "true and accurate" where incomplete).

[12]    *See, e.g., In re Wayne Manor, Inc.*, 117 B.R. 12, 14 (D. Mass. 1990) (upholding vacation of final order because "the Bankruptcy judge was not clearly erroneous in finding that the plaintiff was guilty of 'something approaching deceit'" where plaintiff had misrepresented amount owed); *Hutchins v. Cardiac Sci., Inc.*, 456 F. Supp. 2d 196, 202–03 (D. Mass. 2006) (reconsidering and denying summary judgment under Rule 60(b)(3) where "misrepresentation appears conceded" and the "repeated and knowingly false assertion … was at the core of" the operative pleadings).

60(b)(3) is "an expansive concept," and it "'does not demand proof of nefarious intent or purpose as a prerequisite to redress,' and the term 'can cover even accidental omissions.'" *West v. Bell Helicopter Textron, Inc.,* 803 F.3d 56, 67 (1st Cir. 2015) (quoting *Anderson*, 862 F.2d at 923 (courts are required "to take an expansive view of 'misconduct'" under Rule 60(b)(3) as a narrow interpretation "would be pleonastic, because 'fraud' and 'misrepresentation' would likely subsume it")). Consequently, "[a]ccidents—at least avoidable ones—should not be immune from the reach of the rule." *Anderson*, 862 F.2d at 923.[13]

To be sure, the conduct here does not appear to have been inadvertent; to be so would require repeated, improbable accidents and oversight. For example, the transcription occasionally stopped mid-text message, omitted clearly racially motivated commentary, and then resumed only after the conversation returned to innocuous topics. But, at least for now, the Court need not examine or determine whether anyone acted intentionally or not, especially given that counsel for Defendants has not, despite repeated requests, provided any explanation for the concealment of these text messages. Even if there is some innocent explanation for the concealment of the text messages, the fact remains that they were concealed from the Boston Parents and the Court and, thus, the standard for misconduct under Rule 60(b)(3) is met.[14]

## 2.    Substantial Interference Resulted

To decide this motion, the Court also need not determine whether the withheld information would ultimately change the outcome of the case. To succeed under Rule 60(b)(3), the Boston

---

[13]    *See also Wright v. Reithoffer Shows, Inc.*, 90 Mass. App. Ct. 1112 (2016) ("the First Circuit has explicitly relied on the discussion of misconduct in *Anderson,* and held that misconduct is a concept elastic enough to cover ineptitude leading to omissions which deprive a litigant of a fair trial.").

[14]    *See, e.g.*, *Anderson*, 862 F.2d at 923 ("it takes scant imagination to conjure up discovery responses which, though made in good faith, are so ineptly researched or lackadaisical that they deny the opposing party a fair trial"); *Wayne Manor*, 117 B.R. at 14 ("The Bankruptcy judge needed to find no more than 'misconduct' within the meaning of Rule 60(b)(3) in order to reconsider his earlier order.")

Parents need only demonstrate that the fraud, misrepresentation, or misconduct at issue impacted their ability, fully and fairly, to prepare and present their case.  *West*, 803 F.3d at 67.[15]  The First Circuit has explained:

> Under a substantial interference rule as we envision it, a party still need not prove that the concealed material would likely have turned the tide at trial. Substantial impairment may exist, for example, if a party shows that the concealment precluded inquiry into a plausible theory of liability, denied it access to evidence that could well have been probative on an important issue, or closed off a potentially fruitful avenue of direct or cross examination.  Substantial interference may also be established by presumption or inference.

*Anderson*, 862 F.2d at 925  (internal citations omitted).

The Boston Parents satisfy that standard here.  "The failure or refusal to produce a relevant document, or the destruction of it, is evidence *from which alone* its contents may be inferred to be unfavorable to the possessor."  *Marquis Theatre Corp. v. Condado Mini Cinema*, 846 F.2d 86, 89 (1st Cir. 1988) (internal citations and quotation marks omitted).[16]  Put simply:

> When the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party which has prevented production did so out of the well-founded fear that the contents would harm him.

*Nation-Wide Check Corp. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 217 (1st Cir. 1982).

Under Rule 60(b)(3), where, as here, documents or information are "deliberately suppressed, [their] absence can be presumed to have inhibited the unearthing of further admissible evidence adverse to the withholder, that is, to have substantially interfered with the aggrieved

---

[15]     *See, also, Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 286 F. Supp. 2d 309, 319 (S.D.N.Y. 2003) ("plaintiffs need not show that the outcome of the lawsuit would have been different if the missing evidence had been produced earlier. They need only show that the withheld evidence would have been a valuable tool for obtaining meaningful discovery into some theory of liability").

[16]     *See also Knightsbridge Mktg. Servs., Inc. v. Promociones Y Proyectos,* S.A., 728 F.2d 572, 575 (1st Cir. 1984) (same); *Com. Ins. Co., of Newark, N. J. v. Gonzalez.*, 512 F.2d 1307, 1314 (1st Cir. 1975) ("It is elementary that if a party has evidence, here, allegedly, a document, in its control and fails to produce it, an inference may be warranted that the document would have been unfavorable.").

party's trial preparation." *Anderson*, 862 F.2d at 925 (collecting cases).  Here, there is no question

the City and several of Defendants knew about the highly relevant, yet omitted text messages.

Indeed, it had to have been someone (or multiple people) that made the decisions to: (1) identify

those text messages which expressed racial animus and directly linked the Zip Codes at issue to

racial demographics, (2) remove the text of those messages from those that were transcribed, and

(3) then misrepresent the nature of the production.  On this foundation, a presumption of substantial

interference must apply.[17]

Even putting this presumption aside, the City's decision to withhold the text messages

substantially interfered with the Boston Parents' ability to prepare for and proceed with their case

fully and fairly.  To so establish, the Boston Parents "may demonstrate 'that the concealment

precluded inquiry into a plausible theory of liability, denied it access to evidence that could well

have been probative on an important issue, or closed off a potentially fruitful avenue of direct or

cross examination.'" *West*, 803 F.3d at 67 (quoting *Anderson*, 862 F.2d at 925).  Here, the Boston

Parents agreed to proceed solely on the agreed-upon record (and, critically, to forgo discovery) in

full reliance on the representations accompanying the City's public records production and those

made in connection with the preparation and submission of the Agreed Statement.  Had the City

been truthful and disclosed that it had withheld these text messages, the Boston Parents never

would have agreed to proceed on what we now know is an *incomplete* record.  And, had the City

provided the Boston Parents with the missing text messages – along with whatever else may have

---

[17]      *See, e.g., West*, 803 F.3d at 69 (vacating and remanding in light of "the judge's failure to draw a presumption of substantial interference" where "the defendants culpably withheld their knowledge"); *Hausman v. Holland Am. Line-U.S.A.*, No. CV13-0937 BJR, 2016 WL 51273, at \*5 (W.D. Wash. Jan. 5, 2016) (where "[a]pproximately one-third of the emails contain one or more words that should have triggered their production" "Defendants are entitled to the presumption that the destruction/suppression of the emails substantially interfered with their trial preparation" (citing *Anderson*, 862 F.2d at 924 and *West*, 803 F.3d at 67); *Thomas v. City of New York*, 293 F.R.D. 498, 505 (S.D.N.Y. 2013), aff'd sub nom. *Thomas v. McAullife*, 691 F. App'x 671 (2d Cir. 2017) (where individual "remained quiet despite his ongoing duty to disclose documents", the "misconduct relating to the [information] was intentional").

been withheld – they surely would have incorporated them into the briefing and argument, especially given the racial character and animus reflected in the concealed messages.  Thus, the incomplete production and withholding of the text messages substantially interfered with the Boston Parents' ability to prepare and present their case fully and fairly.[18]

To be clear, the Boston Parents do not suggest at this time that counsel for Defendants participated in either the decision to conceal the text messages or to doctor the transcripts that it then certified were "true and accurate" when submitted as evidence.  Undersigned has requested from the Defendants' counsel an explanation for how it came to be that the text messages were withheld and a false transcript produced.  Because no such explanation has been provided to date, the Boston Parents have not drawn any conclusions beyond the fact that critical evidence was improperly concealed.  Undersigned has also requested information about what other relevant documents the City may have withheld.  Again, no answer has yet been given.  This is all to say that, given what we know transpired and given what we do not yet know about the why, how, and degree of what transpired, additional fact-finding is likely to be necessary to establish the extent of the misconduct and to ensure the Boston Parents are able to fully and fairly prepare their case.[19]

---

[18]      *See, e.g., Anderson*, 862 F.2d at 930 (remanding denial of 60(b)(3) motion where "the transcript contains nothing which shows that plaintiffs were put on notice to call opposing counsel at the outset or forgo their testimony"); *Catskill Dev.*, 286 F. Supp. 2d at 319 ("Had plaintiffs' counsel possessed the tapes, they would have been fodder for cross examining the participants in the conversations"); *Corcoran v. McCarthy*, 2010 S.D. 7, ¶ 27, 778 N.W.2d 141, 152 ("the failure to disclose substantially interfered with McCarthy's ability to respond to Corcoran's final argument" (relying on *Anderson*)); *Hernandez v. Results Staffing*, Inc., 907 F.3d 354, 365 (5th Cir. 2018) ("the misrepresentations … as well as the failure to disclose medical records responsive to RSI's discovery requests, presumably 'inhibited the unearthing' of evidence adverse to Hernandez and 'substantially interfered' with defense counsel's preparation" (quoting *Anderson*, 862 F.2d at 925)); *Rally Mfg., Inc. v. Mr. Gasket Co.*, No. 87-1533-CIV-MISHLER, 1992 WL 211010, at *5 (S.D. Fla. June 12, 1992) ("deliberate failure to reveal [information] interfered with defendants' ability to fully and fairly present its case. Painter would not have centered Gasket's defense around [evidence at issue] if he knew of the [withheld information]." (citing *Anderson*)).

[19]      *West*, 803 F.3d at 70 (where documents were withheld, directing "the district judge to determine whether additional documents are responsive" as well); *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) (granting 60(b)(3) motion and reopening discovery); *Catskill Dev.*, 286 F.Supp.2d at 320 (same).

**B.      Relief Is Appropriate under Rule 60(b)(2)**

Rule 60(b)(2), in turn, provides relief in light of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." FRCP 60(b)(2). Because a Rule 59(b) motion "must be filed no later than 28 days after the entry of judgment" and because the newly discovered evidence was only revealed by the Boston Globe's article more than two months after the entry of judgment, Rule 60(b)(2) applies. *Compare* FRCP 59(b) with Murphy Decl., Atts. F and G.

In such cases, "'newly discovered evidence' normally refers to 'evidence of facts in existence at the time of trial of which the aggrieved party was excusably ignorant.'" *Rivera v. M/T Fossarina*, 840 F.2d 152, 156 (1st Cir. 1988) (quoting *Brown v. Pennsylvania Railroad Co.*, 282 F.2d 522, 526–27 (3d Cir. 1960)). Thus, in the First Circuit, a movant will succeed on a motion under Rule 60(b)(2) where it is shown that

> (1) The evidence has been discovered since the trial;
> (2) The evidence could not by due diligence have been discovered earlier by the movant;
> (3) The evidence is not merely cumulative or impeaching; and
> (4) The evidence is of such nature that it would probably change the result if a new trial is granted.

*Mitchell v. United States*, 141 F.3d 8, 18 (1st Cir. 1998) (internal brackets omitted).[20]

There can be no disagreement that the first two prongs are met here. First, as noted, both the Boston Parents and the general public were made aware of the withheld text messages more than two months after judgment in this case when the Boston Globe first revealed their existence.[21]

---

[20]      While a probable change in result is part of the Rule 60(b)(2) analysis, it is not part of the analysis under Rule 60(b)(3), where "an adverse party's fraud, misrepresentation, or misconduct" is present. *See supra* at VI.A.1.

[21]      *See, e.g., Graham by Graham v. Wyeth Lab'ys, Div. of Am. Home Prod. Corp.*, 906 F.2d 1399, 1417 (10th Cir. 1990) (no "dispute that the evidence was newly discovered, i.e., that [it] did not come to light until after the Graham trial had concluded"); *In re Glob. Energies, LLC*, 763 F.3d 1341, 1348 (11th Cir. 2014) (first prong satisfied where "Wortley discovered the [messages] well after the bankruptcy court denied with prejudice his motion to dismiss the bankruptcy petition").

Second, the Boston Parents exercised ample due diligence by sending two separate public records requests specifically seeking such communications.  Murphy Decl., Atts. C and D.  The actual text messages were not produced and their content was transcribed so as to omit the discussion of race and specific Zip Codes.[22]  *Id.*

Thus, the only questions the Court needs to decide are: (1) whether the text messages are "merely cumulative or impeaching"; and (2) whether they are "of such nature that [they] would probably change the result" had they been before the Court.  *Mitchell*, 141 F.3d at 18.

As to the first question, the answer is "No, the evidence is not cumulative or impeaching." At the heart of the Boston Parents' case is the claim that the Zip Code Quota Plan was enacted to engage in constitutionally impermissible racial balancing by using an admissions process designed to decrease the number of White and Asian students admitted to the Exam Schools.  *See* Doc. 62. Where available, the Boston Parents relied upon statements made by the Committee Members referencing the racial motivations behind the Zip Code Quota Plan, such as their statements at both the October 8th and October 21st open meetings, their presentations and publications, and their contributions at closed meetings as reflected by the meeting minutes.[23]

Although the Boston Parents believe that a showing of racial animus, in the sense of animosity toward a particular race, is not necessary to invoke strict scrutiny, the presence of such animus creates a more compelling case and, indeed, can be an independent basis for using that

---

[22]     *See, e.g., Glob. Energies*, 763 F.3d at 1348 (second prong satisfied where "Wortley did exercise due diligence in trying to discover the messages and had asked for precisely those types of emails in his initial document request", responding party "did not produce them", and thus "Wortley did not know the messages existed"); *Renfroe v. Parker*, No. 3:18-CV-609-DPJ-LRA, 2020 WL 6329468, at *2 (S.D. Miss. Oct. 28, 2020) ("because Plaintiff exercised reasonable diligence to obtain that evidence, it may be considered under Rule 60(b)(2)"); *United States v. Walus*, 616 F.2d 283, 303–04 (7th Cir. 1980) (holding due diligence satisfied by efforts to obtain evidence and noting "[t]he due diligence requirement of Rule 60(b)(2) is circumscribed by a rule of reason").

[23]     Docs. 38-1; 38-2; 38-3; 38-5; 38-7; 38-18; 38-65; 38-68.  *See also* Doc. 62 at 3-13.

highly-demanding standard.[24]  Although the record shows some anti-Asian animus in connection with the mocking comments of Loconto (Doc. 62 at 7-8), the attribution of such animus to Oliver-Dávila and Rivera was indirect (and not convincing to the Court).  And, there was no evidence in the record of anti-White racial animus.  Now that has changed.

The newly disclosed text messages from Oliver-Dávila and Rivera – both leading proponents of the Zip Code Quota Plan – clearly show racial animus, which is presumably why the messages were covered up, and why Oliver-Dávila and Rivera both resigned when those messages came to light.  Accordingly, the newly discovered evidence is not for purposes of impeachment.  Nor can it be considered cumulative, as it provides evidence of actual animus on the part of two Committee Members for whom such proof was not previously available.[25]

As to the second question, the answer is "yes," these text messages are exactly the sort of evidence that "would probably change the result" had they been before the Court.  *Mitchell*, 141 F.3d at 18.  Defendants, in their opposition, sought to distance the Zip Code Quota Plan from the evidence of actual animus on the record, arguing that Loconto's comments were separate from the enactment of the Plan, claiming there were no such comments regarding White members of the community, and implying that his mockery was an isolated incident.  *See* Doc. 76 at 15-16.  The Court, in turn, explicitly relied on this reasoning in its Order.  *See* Doc. 104 at 45 ("These were racist comments directed at the City's Asian American community.  This Court takes them seriously but finds no persuasive evidence that any other voting member had such animus.  This is conclusive.").

---

[24]    *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977); *CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 325–26 (D. Md. 2018); *Saget v. Trump*, 345 F. Supp. 3d 287, 303 (E.D.N.Y. 2018).

[25]    *See, e.g., Glob. Energies,* 763 F.3d at 1349 ("Third, far from being cumulative or impeaching, the [withheld communications] were direct evidence of the plan and intent of" actors); *Graham*, 906 F.2d at 1417 ("The third prong of the test (that the evidence must not be merely cumulative or impeaching) appears to us, (as it must have appeared to the district court) to have been satisfied because of the gravity" of the evidence).

These new text messages change this evidentiary landscape.  Three of the seven voting Committee Members – 43% of the Committee – are now on the record with statements of actual animus towards the two racial groups negatively impacted by the Zip Code Quota Plan.  And those three Committee Members have all resigned over their comments.  Actual racial animus among members of the Committee was far more prevalent than the Defendants initially represented to both the Boston Parents and the Court. *Compare* Murphy Decl., Att. I-2, at 15, 20 *with* Doc. 76 at 15-16.

Moreover, the actual animus evidenced by these text messages is directly linked to the enactment of the Zip Code Quota Plan.  Murphy Decl., Att. I-2, at 15, 20.  Exchanged during the public meeting, shortly before they voted to enact the Plan, these texts reveal not only racial animus, but racial animus connected to the Zip Code in which they knew primarily members of that race resided.  *Id.*  This rebuts Defendants' argument that the racial animus held by the Committee Members was unrelated to their actions or the Zip Code Quota Plan itself.  Doc. 76 at 15-16.

Where, as here, the newly discovered evidence would undermine or rebut the opposing party's position, it is considered to meet the fourth prong.[26]  Newly discovered evidence similarly meets the fourth prong where, as here, it provides support for the movant's argument.[27]  All four prongs, therefore, are met and relief is appropriate under Rule 60(b)(3).

---

[26]    *See, e.g., Walus*, 616 F.2d at 302   ("Because this new evidence destroys the Government's basis for impeaching the defendant's alibi evidence … we have concluded that the denial of the defendant's motion to vacate the judgment would work an intolerable injustice."); *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 516 (8th Cir. 1984) (where new evidence "flatly contradicts" prior position, "[t]he entire complexion of the case has been changed" and the newly discovered evidence is "material evidence in this case").

[27]    *See Chilson v. Metro. Transit Auth.*, 796 F.2d 69, 72 (5th Cir. 1986) (where audit revealed evidence supporting argument for alternative motive for official action, "the evidence revealed by an internal audit could be the material and relevant evidence which would raise the real possibility of producing a different result at the trial"); *Graham*, 906 F.2d at 1417   ("The fourth prong of the test (that the evidence must be material) was satisfied because [the evidence] focused on one of the most significant aspects of [plaintiff]'s claim"). *See also Kettenbach v. Demoulas*,

**C.      In the Alternative, Relief is Appropriate Under Rule 60(b)(6)**

To the extent that this Court determines that relief is not appropriate under Rule 60(b)(2) or 60(b)(3), the Boston Parents request that relief be granted under Rule 60(b)(6).[28]  Rule 60(b)(6) allows a court to "relieve a party or its legal representative from a final judgment" for "any other reason that justifies relief", including "whenever appropriate to accomplish justice."  FRCP 60(b)(6); *Semtek Int'l Inc. v. Info. Satellite Sys.*, 2012 WL 831475, at *6 (D. Mass. Mar. 9, 2012) (internal quotation marks omitted).[29]  In order "to justify relief under Rule 60(b)(6), 'a party must show extraordinary circumstances suggesting that the party is faultless in the delay.'"  *Davila-Alvarez v. Escuela de Medicina Universidad Cent. del Caribe*, 257 F.3d 58, 67 (1st Cir. 2001) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 at 393 (1993)).

The facts discussed throughout this Memorandum qualify as "extraordinary circumstances."  This is exactly the sort of case where revisiting the final judgment is necessary to serve the purposes of justice.[30]  Should the Court determine that relief is not appropriate under Rule 60(b)(2) or 60(b)(3), the Boston Parents request that it be granted under 60(b)(6).

## V.      CONCLUSION

Consistent with *Commonwealth v. S.S. Zoe Colocotroni*, 601 F.2d 39, 42 (1st Cir. 1979), the Court should issue a "brief memorandum" indicating that it is "inclined to grant the motion."

---

901 F. Supp. 486, 494 (D. Mass. 1995) (analyzing *Rosebud Sioux* and *Chilson* and finding them "persuasive and entirely consistent with First Circuit case law").

[28]      *See, e.g., Huynh v. City of Worcester*, No. CIV.A. 08-40240-TSH, 2010 WL 5376863, at *2 (D. Mass. Dec. 20, 2010) (noting "[t]he fact that Defendants relied primarily on Rule 60(b)(3) does not constitute a waiver of their secondary argument" which "invoked Rule 60(b)(6)").

[29]      *See also Huynh v. City of Worcester,* No. CIV.A. 08-40240-TSH, 2010 WL 3245430, at *2 (D. Mass. Aug. 17, 2010) (analyzing "Rule 60(b)(6), which by its broad language, seemingly allows a court unfettered discretion to reopen a case for any reason that justifies relief.").

[30]      *See, e.g., Huynh*, 2010 WL 3245430, at *4 (finding that conduct that "violated the public policy" "justifies granting relief under Rule 60(b)(6)"); *Semtek* 2012 WL 831475, at *7 ("Here defendant raises a number of substantial factual challenges to plaintiff's contentions … all weighing in favor of vacature" under Rule 60(b)(6)).

Upon remand of the case from the First Circuit, the Court should grant the motion, vacating the April 15, 2021 judgment and conducting further proceedings herein.

Dated: June 22, 2021

Respectfully submitted:

_____/s/ Callan G. Stein_____
Callan G. Stein (BBO # 670569)
TROUTMAN PEPPER HAMILTON SANDERS LLP
125 High Street
Boston, MA 02110
Telephone: (617) 204-5100
callan.stein@troutman.com

William H. Hurd (Va. Bar # 16967) (*pro hac vice*)
Christopher W. Carlson, Jr. (Va. Bar # 93043) (*pro hac vice*)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1490
william.hurd@troutman.com
chris.carlson@troutman.com

Mary Grace W. Metcalfe (N.Y. Bar #5377932) (*pro hac vice*)
TROUTMAN PEPPER HAMILTON SANDERS LLP
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
marygrace.metcalfe@troutman.com (*pro hac vice*)

*Counsel for Plaintiff*

21

## **Certificate of Service**

I, Callan G. Stein, certify that the foregoing document was filed this date via the Court's

CM/ECF filing system and will be sent electronically to the registered participants in this action.


_____ */s/ Callan G. Stein*_____