UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOSTON PARENT COALITION FOR ACADEMIC EXCELLENCE CORP., <br><br> Plaintiff, <br><br> v. <br><br> THE SCHOOL COMMITTEE OF THE CITY OF BOSTON, ALEXANDRA OLIVER-DAVILA, MICHAEL O'NEILL, HARDIN COLEMAN, LORNA RIVERA, JERI ROBINSON, QUOC TRAN, ERNANI DeARAUJO, and BRENDA CASSELLIUS, <br><br> Defendants, <br><br> THE BOSTON BRANCH OF THE NAACP, THE GREATER BOSTON LATINO NETWORK, ASIAN PACIFIC ISLANDER CIVIC ACTION NETWORK, ASIAN AMERICAN RESOURCE WORKSHOP, MAIRENY PIMENTEL, and H.D., <br><br> Defendants-Intervenors | Civil Action No. 1:21-cv-10330-WGY |

## INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION PURSUANT TO RULE 60(b)

Doreen M. Rachal (BBO # 667837)
Drew A. Domina (BBO# 703375)
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, Massachusetts 02109
Tel: (617) 223-0300
drachal@sidley.com
ddomina@sidley.com

Susan M. Finegan (BBO # 559156)
Mathilda S. McGee-Tubb (BBO # 687434)
Jason Burrell (BBO # 705180)
Laura Martin (BBO # 705617)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
Tel: (617) 542-6000
smfinegan@mintz.com
msmcgee-tubb@mintz.com
jlburrell@mintz.com
lemartin@mintz.com

Bethany Li (BBO # 673383)
Alex Milvae (BBO # 705668)
Jodie Ng, Law Student Intern
Henry Zhu, Law Student Intern
GREATER BOSTON LEGAL SERVICES
197 Friend Street
Boston, Massachusetts 02114
Tel: (617) 371-1234
bli@gbls.org
amilvae@gbls.org

Lauren Sampson (BBO # 704319)
Janelle Dempsey (BBO # 699379)
Oren Sellstrom (BBO # 569045)
LAWYERS FOR CIVIL RIGHTS
61 Batterymarch Street, Fifth Floor
Boston, MA 02110
Tel: (617) 988-0609
lsampson@lawyersforcivilrights.org
jdempsey@lawyersforcivilrights.org
osellstrom@lawyersforcivilrights.org

*Counsel for Defendants-Intervenors*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

1. There Is No Basis For Relief From Judgment Under General Principles Applicable To All Rule 60(b) Motions. ................................................................................................... 2

2. There Is No Basis For Relief From Judgment Under Rule 60(b)(2). ................................. 7

3. There Is No Basis For Relief From Judgment Under Rule 60(b)(3). ................................. 8

4. The Court Can Investigate And Sanction The Alleged Misconduct Without Granting Relief From Judgment. ................................................................................................. 10

CONCLUSION .................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page(s)**

*Anderson v. Cryovac, Inc.*,
    862 F.2d 910 (1st Cir. 1988)........................................................................................2, 8, 9

*Barth v. City of Peabody*,
    2019 U.S.Dist.LEXIS 231428 (D.Mass. July 24, 2019)......................................................10, 11

*Boston Parent Coalition v. Boston School Committee, et al.*,
    996 F.3d 37 (1st Cir. Apr. 28, 2021)..................................................................................3, 6

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991)...........................................................................................................10

*Cooter & Gell v. Hartmax Corp.*,
    496 U.S. 384 (1990).........................................................................................................11

*Gonzalez-Pina v. Guillermo Rodriguez*,
    407 F.3d 425 (1st Cir. 2005)...............................................................................................7

*Karak v. Bursaw Oil Corp.*,
    288 F.3d 15 (1st Cir. 2002)..............................................................................................2, 8

*Lancaster v. Indep. Sch. Dist. No. 5*,
    149 F.3d 1228 (10th Cir. 1998) .........................................................................................11

*Lewis v. Ascension Parish Sch. Bd.*,
    806 F.3d 344 (5th Cir. 2015) .............................................................................................4

*McGuire v. Acufex Microsurgical, Inc.*,
    175 F.R.D. 149 (D.Mass. 1997)........................................................................................10

*Mitchell v. United States*,
    141 F.3d 8 (1st Cir. 1998).................................................................................................7

*Moron-Barradas v. Dept't of Educ.*,
    488 F.3d 472 (1st Cir. 2007)..............................................................................................7

*Rosebud Sioux Tribe v. A & P Steel, Inc.*,
    733 F.2d 509 (8th Cir. 1984) .............................................................................................8

*U.S. Steel v. M. DeMatteo Const. Co.*,
    315 F.3d 43 (1st Cir. 2002)................................................................................................7

*United States v. Hurley*,
    63 F.3d 1 (1st Cir. 1995)...................................................................................10

*United States v. Walus*,
    616 F.2d 283 (7th Cir. 1980) ............................................................................7, 8

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977)............................................................................................4

**Other Authorities**

Fed. R. Civ. P. 60(b)(2)...........................................................................................7

Fed. R. Civ. P. 60(b)(3)...........................................................................................8

**INTRODUCTION**

The Intervenor-Defendants submit this memorandum in opposition to the Plaintiff's Motion Pursuant to Rule 60(b). ECF No. 112.[1] The motion asserts that certain Defendants omitted portions of text messages from transcripts produced by the City of Boston in response to a public records request. ECF No. 113-1, Declaration of Darragh Murphy, ¶¶5-20. None of the Intervenor-Defendants was included on the relevant messages, none was involved with creating the transcript produced by the City or with responding to the public records request, and none of them had any knowledge of the misconduct described in the motion before it was reported in the press. *Id.* The Plaintiff nevertheless asks the Court for relief from a decision that benefited *both* the School Committee Defendants and the Intervenor-Defendants.

This is a misbegotten request. Even if the alleged omissions were the result of misconduct, about which issue the Intervenor-Defendants have no knowledge, it would not give the Court reason to grant relief from judgment. The "newly discovered evidence" is not legally significant: its addition to the record could neither change the outcome nor lead to the discovery of evidence that *might* be dispositive, and its omission therefore did not substantially interfere with the Plaintiff's ability to prepare and present its case on the first go-round.

---

[1] The Intervenor-Defendants are the NAACP – Boston Branch, the Greater Boston Latino Network, Asian Pacific Islander Civic Action Network, Asian American Resource Workshop, Maireny Pimentel, and H.D. (now a rising seventh-grade student in the Boston public school system). ECF No. 21. The Court granted the Intervenor-Defendants leave to intervene on March 3, 2021. ECF No. 27. The original Defendants ("the School Committee Defendants") are the School Committee of the City of Boston and several of its members or former members, including former Vice Chairperson Alexandra Oliver-Davila and former member Lorna Rivera, who sent and received the text messages at issue, and who resigned shortly after they came to light. The Court should note that the case caption has not been formally amended to reflect their resignations and replacement.

The Court must of course take seriously any plausible allegation of misconduct in proceedings before it. But it has the ability to investigate these allegations without granting relief from judgment and, even if it determines that the Plaintiff's accusations have merit (a question that, again, the Intervenor-Defendants are in no position to answer), Rule 60(b) relief would be excessive and unnecessary. In matters such as these, "[t]here is not always the need to ditch the baby with the bathwater." *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 924 n.11 (1st Cir. 1988). The Court has inherent power to supervise the integrity of its processes, and to issue the sanctions it deems justified to punish and deter any litigation misconduct; it retains jurisdiction to do so even while an appeal of the judgment is pending.

### 1.    There Is No Basis For Relief From Judgment Under General Principles Applicable To All Rule 60(b) Motions.

"[R]elief under Rule 60(b) is extraordinary in nature," and "motions invoking that rule should be granted sparingly." *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 19 (1st Cir. 2002). A party who asks for such extraordinary relief must show that "exceptional circumstances exist"—"at a bare minimum," the movant must demonstrate that, "if the judgment is set aside, he [or she] has the right stuff to mount a potentially meritorious claim or defense...." *Id.*

The Plaintiff's Rule 60(b) motion does not achieve this bare minimum. The judgment from which it seeks relief rested on two findings: (1) "that the Coalition failed to demonstrate that the Plan had a disparate racial impact," ECF No. 104 at 43, and (2) flowing from that conclusion, "that the Plan was not motivated by an invidious discriminatory purpose." *Id.* at 46. If the judgment were set aside and the record re-opened to permit introduction of the additional text messages, the Plaintiff would still lack the "right stuff" to obtain the relief it sought because the extra evidence is irrelevant to the Court's first finding and could have at most a negligible bearing on the second.

2

**Disparate Impact.** When it looked at the evidence of disparate racial impact, the Court found that the Plaintiff had "not met its burden of proof" because it had "failed to proffer any expert testimony or statistical analysis of the Plan," and could not "even demonstrate the final demographic effects of the Plan." ECF No. 104 at 42; *see also Boston Parent Coalition v. Boston School Committee, et al.*, 996 F.3d 37, 46 (1st Cir. Apr. 28, 2021) (a "party claiming a disparate impact generally does not even get to first base" without a showing that the alleged numerical decreases are "statistically significant"). In fact, even if the Plaintiff's "numbers did represent the Plan's effect in its final form," its disparate-impact argument would still be "unavailing," as the demographics of Boston's highly selective public schools under the old plan "were a disjunctive consequence year to year—there was no guarantee that any White or Asian student would even be admitted." It was simply "erroneous" to "use a variable consequence as the baseline upon which all future plans must comport…." ECF No. 104 at 42-43; *see also Boston Parent Coalition*, 996 F.3d at 46  ("plaintiff offers no analysis or argument for why these particular comparators, rather than a plan based on random selection, are apt for purposes of determining adverse impact").

The outcome will not change even if the Court grants relief from judgment and reconsiders its disparate-impact finding in light of an augmented record. The additional text messages will not cure the evidentiary omissions and methodological errors that this Court and the First Circuit have already identified in the Plaintiff's disparate-impact presentation. Whatever those text messages might or might not say about the subjective intent of two of the seven School Committee members who voted on the Interim Plan for 2021-2022, they have no bearing on the objective impact of that Plan—decisions under the Interim Plan have already gone out to all students. The text messages are equally irrelevant to the Court's consideration of the impact of

any future plan—which neither Dr. Rivera nor Ms. Oliver-Davila will vote on—that might use "zip codes as a factor in admissions decisions to the Boston Exam Schools." ECF No. 1, Complaint at 23 (seeking permanent injunctive relief); Plaintiff's Memorandum ISO Motion Pursuant to Rule 60(b), ECF No. 113 at 2.

**Discriminatory Purpose.** Since the disparate-impact finding will not change, neither will the outcome of the lawsuit, and the Rule 60(b) analysis could end with that observation. *See Lewis v. Ascension Parish Sch. Bd.*, 806 F.3d 344, 358 (5th Cir. 2015) (where court could "resolve … Lewis's equal protection theory on the discriminatory-effect finding," it "need not address … Lewis's proffered evidence of discriminatory purpose").

In any event, the additional text messages will not resuscitate the Plaintiff's failed effort to show a discriminatory purpose. As the Court recognized in its Order for Judgment, whether the Interim Plan was motivated by an invidious discriminatory purpose "'demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'" ECF No. 104 at 43, quoting *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). The "totality of the relevant facts," *id.*, quoting *Washington v. Davis*, 426 U.S. 229, 242 (1976), may have several facets, and "contemporary statements by members of the decisionmaking body" is only one of them. *Village of Arlington Heights*, 429 U.S. at 268. The court should also look at "[t]he historical background of the decision," and such aspects of the legislative record as "the specific sequence of events leading up to the challenged decision," and whether the decision-makers departed "from the normal procedural sequence…." *Id.* at 267.

The Court performed a comprehensive analysis here, based on an extensive and detailed record of *stipulated* facts, and found that "the Plan was not motivated by an invidious discriminatory purpose." ECF No. 104 at 46. The "degree of any disproportionate racial effect"

4

did "not demonstrate discriminatory animus," and neither the School Committee nor the Working Group that actually developed the Plan had deviated from normal procedures. *Id.* at 44. Although the Plaintiff had pointed to several contemporary statements made by members of the School Committee, most of them "evidence[d] diversity," and not discrimination, "as a motivating factor." *Id.* at 45. The only contemporary statement that even allegedly reflected racial animus, made by Michael Loconto, the then-Chairman of the Committee, was insufficient to show discriminatory purpose, not least because it could have reflected the bias of only one member of the seven-person Committee, who immediately resigned when his statements came to light. *Id.*[2]

In that context, the additional text messages could barely move the needle toward a finding of discriminatory purpose for the adoption of the Interim Plan. The new evidence will have no bearing on the Court's findings about the procedural history of the Plan, and no bearing on its findings about "the degree of any disproportionate racial effect…." *Id.* at 44. To be sure, the texts would add a couple of "contemporary statements" by two members of the School Committee, but when viewed against the totality of the relevant facts, their potential impact on the Court's finding would be negligible. The Plaintiff itself has repeatedly emphasized that

---

[2]     The Plaintiff alleged that Mr. Loconto's comments reflected bias against Asian Americans and the Court assumed the accuracy of this characterization. *Id.* ("These were racist comments directed at the city's Asian American community"). The Intervenor-Defendants disagree in part. They interpret Mr. Loconto's statements to express potential bias against African Americans, in addition to members of the Asian American community. But this issue need not delay the Court's decision on this matter; its conclusion about the legal insignificance of the comments is valid either way, and equally applicable to the statements attributed to Dr. Rivera and Ms. Oliver-Davila.

personal racial hostility is not the touchstone of the inquiry.[3] Rather, as the First Circuit put it

when it denied the Plaintiff's motion for an emergency stay:

> Ultimately, the role of motive needs to be assessed within the context of the means
> employed and the results achieved. Here, officials expressed a variety of concerns
> regarding how best to award seats in the Exam Schools. But the means they chose
> were race-neutral and apt. And the result on its face manifested no starkly disparate
> impact concerning which plaintiff can complain. To find such conduct subject to
> strict scrutiny would render any school admissions criteria subject to strict scrutiny
> if anyone involved in designing it happened to think that its effect in reducing the
> underrepresentation of a group was a good effect. Plaintiff cites no case so holding.

*Boston Parent Coalition*, 996 F.3d 37 at 50.[4]

The text messages could, moreover, amount to even the proverbial "squeak in a

thunderstorm" only with respect to the Interim Plan, which Ms. Oliver-Davila and Dr. Rivera

voted on. However, as the Plaintiff itself acknowledges, it is "too late for the Court to issue relief

related to the requested preliminary injunction" against implementing the Interim Plan, and the

focus of the motion at hand is therefore the Plaintiff's request for a "permanent injunction

barring any further use of the Zip Code Quota Plan…." ECF No. 113 at 2. But if the School

Committee someday uses zip codes in making future admissions decisions, Mrs. Oliver-Davila

and Dr. Rivera will have nothing to do with it, and their past, individual motives—whatever they

might have been—will not inform the Committee's future, collective actions. Both resigned from

---

[3]     *See, e.g.*, ECF No. 94 at 20 ("Plaintiff need not plead harmful stereotype or animus for
strict scrutiny to apply"); ECF No. 97 at 5 ("Plaintiff need not establish racial animus in the
sense of hostility toward or disrespect for another race in order for strict scrutiny to apply"); ECF
No. 104 at 41, citing Tr. Status Conference 23:2-5 ("We don't have to show racial animus").
[4]     This is especially true when the person accused of animus is not the sole decision-maker.
As the Court noted when it considered the statements attributed to Michael Loconto, he was only
one of seven voting members. ECF No. 104 at 45. Even if the additional text messages
conclusively proved that Ms. Oliver-Davila and Dr. Rivera were motivated by a discriminatory
purpose, they would say nothing about the motivations of the remaining four Committee
members, whose votes alone were sufficient to adopt the Interim Plan.

the Committee last month, before the adoption or even the presentation of a new, permanent admissions policy. ECF No. 113-1 at ¶21.

## 2.      There Is No Basis For Relief From Judgment Under Rule 60(b)(2).

The principles discussed in Section 1 apply directly to Rule 60(b)(2) and preclude relief from judgment on grounds that the omitted material constitutes "newly discovered evidence." ECF No. 113 at 16. The Plaintiff acknowledges that a party who moves for relief under Rule 60(b)(2) must show that the new evidence "is of such a nature that it would probably change the result if a new trial is granted," *id.*, quoting *Mitchell v. United States*, 141 F.3d 8, 18 (1st Cir. 1998). Applied here, this standard precludes relief from judgment under Rule 60(b)(2) because, for reasons already stated, the new evidence could not possibly—much less "probably"—alter the outcome of this lawsuit.

The Plaintiff argues that the probable-change standard is satisfied if "the newly discovered evidence would undermine or rebut the opposing party's position…." ECF No. 113 at 19. That, however, is not the law in the First Circuit, as stated in *Mitchell* more than 20 years ago and restated repeatedly thereafter. *See, e.g., Moron-Barradas v. Dept't of Educ.*, 488 F.3d 472, 482 (1st Cir. 2007); *Gonzalez-Pina v. Guillermo Rodriguez*, 407 F.3d 425, 433 (1st Cir. 2005); *U.S. Steel v. M. DeMatteo Const. Co.*, 315 F.3d 43, 52 (1st Cir. 2002). Indeed, even in the out-of-circuit cases cited by the Plaintiff, the courts granted relief on the basis of evidence that did considerably more than just "undermine or rebut the opposing party's position." ECF No. 113 at 19, n. 26. In *United States v. Walus*, 616 F.2d 283 (7th Cir. 1980), the judgment at issue revoked the defendant's citizenship on grounds of his alleged membership in the Gestapo during the Nazi occupation of Poland. Crediting the testimony of Polish witnesses, the district court declined to accept the defendant's alibi that he was working on farms in Germany at the relevant times. The defendant sought relief from the denaturalization judgment on the basis of newly-discovered

evidence, including German residence documents and six European witnesses. The Seventh Circuit granted relief from judgment because the "new evidence destroys the Government's basis for impeaching the defendant's alibi evidence…." *Id.* at 302. In *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509 (8th Cir. 1984), judgment for the defendant was supported in large part by the testimony of one Richard Lone Dog, which had "flatly contradicted the allegations contained in the Tribe's complaint." *Id*. at 514. The newly-discovered evidence showed that Lone Dog later admitted, under oath to a grand jury, that his trial testimony was perjured. *Id*. at 515. Relief from judgment was justified, therefore, because the new evidence discredited one of the defendant's principal witnesses, shed "an entirely different light on the circumstantial evidence," lent "greater weight to the Tribe's allegations," and thus changed "the entire complexion of the case…." *Id*. at 516. The "newly discovered evidence" in this case has no such dramatic or consequential effect.

### 3.      There Is No Basis For Relief From Judgment Under Rule 60(b)(3).

The Plaintiff also seeks relief from judgment under Fed. R. Civ. P. 60(b)(3), which applies when a judgment has been obtained by "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party…." The analysis here is somewhat different, but the outcome is the same.

Like any other Rule 60(b) request, motions under Rule 60(b)(3) should be granted sparingly and only under exceptional circumstances that favor extraordinary relief. *Karak*, 288 F.3d at 19. Rule 60(b)(3) requires the movant to show misconduct by clear and convincing evidence, and then to demonstrate that the misconduct "*substantially* … interfered with the aggrieved party's ability fully and fairly to prepare for and proceed at trial." *Anderson*, 862 F.2d at 924 (emphasis in original). To show substantial interference, the movant must either establish the omitted material's "likely worth as trial evidence" or elucidate "its value as a tool for

obtaining meaningful discovery." *Id.* at 926. The guiding principle is that relief should not be granted where "retrial would needlessly squander judicial resources." *Id.* at 924.

A presumption of prejudice may arise "[i]n the case of intentional misconduct, as where concealment was knowing and purposeful…." *Id.* at 925. The presumption is rebuttable, however, through a showing "that the withheld information was in fact inconsequential," and this "threshold becomes easier to climb where the documents at issue have been withheld but not destroyed." *Id.* at 925-26. "In such situations, the documents themselves may constitute clear and convincing proof that no prejudice inured." *Id.* at 926.

Because they played no role in the creation or production of the documents at issue, the Intervenor-Defendants can take no position on the School Committee Defendants' state of mind. But no matter. If the omissions were justifiable, then no "misconduct" occurred. If they were accidental, then the Plaintiff has failed to carry its burden of proving substantial interference. And even if the omissions were deliberate, the presumption of prejudice is rebutted by the text messages themselves, which—for reasons already stated—show that the omitted statements were "inconsequential" in the most fundamental sense, and that a retrial held solely to permit their introduction would "needlessly squander judicial resources." *Id.* at 924.

There is, moreover, no plausible scenario in which the omitted text messages would have "value as a tool for obtaining meaningful discovery." *Id.* at 926. The Court can note that the Plaintiff declined to take discovery, including but not limited to depositions of the School Committee's members or former members, and in particular took no discovery into the issue of "racial animus" even though it was aware of the allegedly-racist statements made by Mr. Loconto, the former Chair of the School Committee.

Just like Mr. Loconto's statements, the omitted text messages stand and speak for themselves. Just as the Court determined with respect to Mr. Loconto's statements, the text messages, in and of themselves, are inconsequential to the outcome of the case. And, just as the Plaintiff apparently determined that Mr. Loconto's statements had no value as a discovery tool, the same is true of the statements in the omitted text messages. Even if the Plaintiff now claims them as a springboard for additional discovery, it would not be *meaningful discovery*, for the reasons already stated in this memorandum.

### 4. The Court Can Investigate And Sanction The Alleged Misconduct Without Granting Relief From Judgment.

The Intervenor-Defendants appreciate that relief from judgment may not be the only issue raised by the Plaintiff's accusations of misconduct. Such accusations implicate the integrity of the judicial process, and the Intervenor-Defendants expect the Court to take such matters seriously.

The Court can act on its concerns, however, without granting relief from judgment or otherwise impeding the progress of the pending appeal. It has the inherent power "to determine first if there was misconduct, and second, if appropriate, to sanction the defendant." *McGuire v. Acufex Microsurgical, Inc.*, 175 F.R.D. 149, 153 (D.Mass. 1997); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (federal courts have inherent powers to sanction misconduct independent of their powers to sanction pursuant to the procedural rules). And, although "a notice of appeal divests the lower court of jurisdiction over those matters on appeal," *Barth v. City of Peabody*, 2019 U.S.Dist.LEXIS 231428, at *5 (D.Mass. July 24, 2019) (citation omitted), this rule deprives the District Court only "of its control over those aspects of the case involved in the appeal." *Id.*; *see also United States v. Hurley*, 63 F.3d 1, 23 (1st Cir. 1995) ("[T]he district court retains authority to decide matters not inconsistent with the pendency of the appeal."). In

particular, the Court retains jurisdiction over "collateral matters," including requests for sanctions arising out of litigation misconduct. *Barth,* 2019 U.S.Dist.LEXIS 231428, at *6-7; *see also Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 395 (1990) (district court retained jurisdiction to impose Rule 11 sanctions after lawsuit was voluntarily dismissed because "[i]t is well-established that a federal court may consider collateral issues [even] after an action is no longer pending"); *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir. 1998) (ruling the district court has jurisdiction to grant a Rule 37 motion for attorney fees after notice of appeal).

## CONCLUSION

The Intervenor-Defendants respectfully request that the Court deny the Plaintiff's motion pursuant to Rule 60(b).

11

Respectfully submitted,

NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE
BOSTON BRANCH AND OTHER
INTERVENORS

By their attorneys,

/s/ *Doreen M. Rachal*
Doreen M. Rachal (BBO # 667837)
Drew A. Domina (BBO# 703375)
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, Massachusetts 02109
Tel: (617) 223-0300
drachal@sidley.com
ddomina@sidley.com

/s/ *Susan M. Finegan*
Susan M. Finegan (BBO # 559156)
Mathilda S. McGee-Tubb (BBO # 687434)
Jason Burrell (BBO # 705180)
Laura Martin (BBO # 705617)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
Tel: (617) 542-6000
smfinegan@mintz.com
msmcgee-tubb@mintz.com
jlburrell@mintz.com
lemartin@mintz.com

/s/ *Bethany Li*
Bethany Li (BBO # 673383)
Alex Milvae (BBO # 705668)
Jodie Ng, Law Student Intern
Henry Zhu, Law Student Intern
GREATER BOSTON LEGAL SERVICES
197 Friend Street
Boston, Massachusetts 02114
Tel: (617) 371-1234
bli@gbls.org
amilvae@gbls.org

/s/ *Lauren Sampson*
Lauren Sampson (BBO # 704319)
Oren Sellstrom (BBO # 569045)
LAWYERS FOR CIVIL RIGHTS
61 Batterymarch Street, Fifth Floor
Boston, MA 02110
Tel: (617) 988-0609
lsampson@lawyersforcivilrights.org
osellstrom@lawyersforcivilrights.org

Dated: July 6, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants identified on the Notice of Electronic Filing, and

paper copies will be sent to those indicated as non-registered participants on July 6, 2021.

/s/ *Doreen M. Rachal*
Doreen M. Rachal