UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOSTON PARENT COALITION FOR ACADEMIC EXCELLENCE CORP., ) ) ) | |
| Plaintiff, ) ) | |
| v. ) | Civil Action No. 1:21-cv-10330-WGY |
| SCHOOL COMMITTEE OF THE CITY OF BOSTON, ALEXANDRA OLIVER-DAVILA, MICHAEL O'NEIL, HARDIN COLEMAN, LORNA RIVERA, JERI ROBINSON, QUOC TRAN, ERNANI DeARAUJO, and BRENDA CASSELLIUS, ) ) ) ) ) ) ) ) | |
| Defendants, ) ) | |
| THE BOSTON BRANCH OF THE NAACP, THE GREATER BOSTON LATINO NETWORK, ASIAN PACIFIC ISLANDER CIVIC ACTION NETWORK, ASIAN AMERICAN RESOURCE WORKSHOP, MAIRENY PIMENTAL, and H.D., ) ) ) ) ) ) ) | |
| Defendants-Intervenors. ) ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION PURSUANT TO FEDERAL RULE 60(b)**

Defendants School Committee of the City of Boston, School Committee members

Alexandra Oliver-Dávila, Michael O'Neil, Hardin Coleman, Lorna Rivera, Jeri Robinson, Quoc

Tran, and Ernani DeAraujo and Superintendent of Boston Public Schools Brenda Cassellius

(collectively "Boston Public Schools" or "BPS"), hereby oppose the Fed. R. Civ. P. 60(b) motion

("Motion") of Plaintiff Boston Parent Coalition For Academic Excellence Corp. ("Coalition").

## I.      PRELIMINARY STATEMENT.

On June 22, 2021, the Coalition moved under Fed. R. Civ. P. 60(b) to reopen the Judgment entered by this Court in <u>Boston Parent Coalition for Academic Excellence, Corp. v. The School Committee of the City of Boston,</u> No. 21-CV-10330-WGY, 2021 WL 1422827 (D. Mass. Apr. 15, 2021), and which is now pending on appeal before the First Circuit. <u>See</u> No. 21-1303. The Coalition asserts that BPS had a legal obligation to disclose certain text messages between members of the Boston School Committee and that its failure to do so requires that the judgment be reopened. BPS opposes the Motion on the grounds that there has been no violation that triggers the application of Rule 60(b), as it had no legal obligation to produce or provide the text messages to the Coalition and there was no direct or indirect cover up of those text messages. Further, those text messages do not provide a basis for any change of this Court's decision as required by Rule 60(b).

## II.     STATEMENT OF PROCEEDINGS AND FACTS.

### A.      Public Record Requests and Responses.

#### 1.      Boston Globe.

On October 21-22, 2020, the School Committee discussed and adopted the Working Group's 2021-2022 Admission Plan ("Interim Plan").[1] On November 17, 2020, the <u>Boston Globe</u> made a request for text messages "related to BPS issues that were sent and received by each Boston School Committee members during their meeting that began on October 21 and ended on October 22." Affidavit of Catherine Lizotte ("Lizotte Aff.") (Exh. A hereto) at ¶ 3 and Att. A. As School Committee members do not possess publicly-issued phones, upon receipt of a public records request from the <u>Boston Globe</u>, BPS collected text messages from the personal

---

[1] The School Committee meeting lasted into the early morning of October 22, 2021.

cell phones of School Committee members and undertook to separate personal messages from those related to the member's official capacity or matters under the committee's purview. Lizotte Aff. at Att. A. In consultation with the then Corporation Counsel Eugene O'Flaherty, First Assistant Corporation Counsel for Government Services Henry C. Luthin, and the Director of Public Records Shawn A. Williams, a final determination was made concerning what records were responsive to the <u>Boston Globe's</u> request and the form of their disclosure. <u>Id</u>. at ¶ 6; Affidavit of Henry Luthin ("Luthin Aff.") (Exh. B hereto) at ¶¶ 2-4. Due to difficulty in reading some of the screen shot images, BPS decided to provide a type written version of the text messages. <u>Id</u>. Further, to assist with the readability of the text messages, BPS transcribed the text messages that were determined to be "made" or "received" in the School Committee member's official capacity under the Massachusetts Public Records Law, M.G.L. c. 4, § 7(26) and c. 66, § 10. Then BPS transmitted 8 pages of transcribed text messages to the <u>Boston Globe</u>. Lizotte Aff. at Atts. U and C.

Following the <u>Boston Globe</u>'s publication of some screen shots of texts that had not been transcribed, BPS, through Shawn Williams, Boston's Director of Public Records and Records Access Officer, sent to the <u>Globe</u>, as well as all others who had requested text messages, all of the screen shots of the text messages that had been collected. Affidavit of Shawn A. Williams ("Williams Aff.") (Exh. C hereto) at ¶ 17 and Att. 1.

### 2.    Darragh Murphy.

On November 19, 2020, BPS received six separate public record requests from Darragh Murphy, a Boston resident from Dorchester.[2] Lizotte Aff. at ¶¶ 7-12 and Att. D-1. BPS

---

[2] In Boston's tracking system for public records requests, each request is assigned a number. When there are documents responsive to a request, those documents are provided electronically through a Google drive.

responded to all six of the requests on January 13, 2021 under cover of a single correspondence. Id. at ¶ 13 and Att. J.

One of Murphy's requests (Request #R001023-111920) sought:

[c]opies of all electronic communications, including emails, text messages, voicemails, social media messages, tweets, etc, to and from Superintendent Cassellius, her staff and/or assistants, and all members of the Boston School Committee, and all members of the Exam School Working Group regarding the Exam School Working Group, including electronic attachments to all electronic communications.

Lizotte Aff. at ¶ 9 and Att. F. On January 13, 2021, BPS provided approximately 213 pages of email correspondence and related documents responsive to Murphy's request for electronic communications regarding the Exam School Working Group. Id. at ¶ 13 and Att. J. See also Affidavit of Darrah Murphy in Support of Parent Coalition ("Murphy Aff.") at ¶¶ 5-7 and Att. C. The response did not include any text messages. Id. at ¶ 7.

Subsequently, Murphy made a request on February 12, 2021, for information regarding the Exam School applicant pool for the 2021/2022 school year. On February 23, 2021, Murphy made a further request seeking:

-Copies of ALL electronic text messages, instant messages, and any other form of electronic communication sent and/or received, including any and all "group" messages sent and/or received by more than one of the following listed individuals, during the School Committee meeting scheduled for October 21, 2020, from the time the meeting started on 10/21/2020 until it was officially adjourned on Thursday, October 22, 2020, between and among each and all of the following: Superintendent Brenda Cassellius SC Chair Michael Loconto SC Members: Lorna Rivera Jeri Robinson Michael O'Neil Alexandra Oliver-Davila Hardin LK Coleman Quoc Tran.

-List of students who currently comprise the applicant pool for incoming school year 2021/2022 for the three exam schools (Boston Latin School, Boston Latin Academy, John D O'Bryant School), de-identified and sorted by GPA.

-All of the Grade Point Averages sorted by Zip Code of the students, de-identified, who currently comprise the applicant pool for incoming school year 2021/2022 for the three exam schools (Boston Latin School, Boston Latin Academy, John D O'Bryant School). Please provide the list by zip code. For example:
Zip Code 02122: List all the GPA's of the de-identified students currently comprising the

applicant pool who reside in Zip Code 02122.
Zip Code 02126: List all the GPA's of the de-identified students currently comprising the applicant pool who reside in Zip Code 02126.
And so on until every Zip Code in the City of Boston is included in the response, including Zip Codes for which there are no applicants in the pool and Zip Codes in which there are fewer than 10.

-Written transcript of the entire School Comm meeting held on October 21, 2020

Lizotte Aff. at ¶ 14 and Att. K. See also Murphy Aff. at ¶ 8 and Att. D. BPS responded to the bulk of Murphy's request on March 22, 2021. Lizotte Aff. at ¶ 17 and Att. O. However, in response, to the portion of Murphy's request seeking text messages, the BPS responded on March 9, 2021, by providing the document containing transcribed text messages previously provided to the Boston Globe. Id. at ¶ 16 and Att. M.

As a requester of text messages related to the October 21-22 meeting, on June 18, 2021, Murphy was provided with copies of all the screen shots of text messages after portions thereof had been published in the Boston Globe. Williams Aff. at ¶ 17 and Att. 1.

### 3.     The Coalition.

On November 20, 2020, the Coalition – the eventual Plaintiff in this case – made an extensive request for documents itemized in a four-page appendix covering fifteen (15) separate requests for information or data sets regarding the October 21, 2020 exam school admission presentation to the Boston School Committee. Lizotte Aff. at ¶19 and Att. P. A response was provided on January 13, 2021. Id. at ¶ 17 and Att. Q.

Subsequently, on February 12, 2021, the Coalition requested "the total number of applicants sorted by zip code for the current Fall 2021 Boston Exam Schools Admission cycle." Lizotte Aff. at 20 and Att. R. A response was provided on March 22, 2021. Id. at ¶ 20 and Att. S.

The Coalition made a further request for information on June 23, 2021, and the response is currently pending. Id. at ¶ 21 and Att. T.

As the Coalition had never requested text messages made and received during the October 21-22, 2020 School Committee meeting, it was not provided with the screen shots provided to the Globe, Murphy and others. Lizotte Aff. at ¶ 22.

### B.    The Coalition and Darragh Murphy.

Until raised by counsel for the Coalition, Cal Stein, Esq., in a June 16, 2021 email to the undersigned, neither BPS nor its attorneys were aware that there was any relationship between Murphy and the Coalition. It was not until receipt of her affidavit in support of the Coalition's Motion that BPS and its counsel was even aware that Murphy was a "member" of the Coalition.

Following service of the Complaint in this case, BPS through its counsel sought to determine whether the Coalition would have standing to bring this action. Therefore, Thomas Costello, an attorney with the undersigned law firm, obtained copies of the Articles of Organization, an Amendment to the original Articles, and a Business Entity Summary from the Massachusetts Secretary of the Commonwealth's website. Affidavit of Thomas Costello ("Costello Aff.") (Exh. D hereto) at ¶¶ 4-5 and Att. A. Officers of the Coalition are listed in the Articles and referred to in the Amendment. None of these documents mention Darragh Murphy.

### C.    Procedural Facts.

On February 26, 2021, the Complaint in this case was filed. At the scheduling hearing on March 3, 2021, the following exchange occurred:

> Mr. Hurd: Judge, there is one. So I'm presuming that – that given our good-faith efforts in all parts…of everybody concerned, to reach a case-stated solution by the 15th, that launching discovery at this point would not be something the Court would want us to do?
>
> The Court: That's correct.

Mr. Hurd: I will make a point, your Honor, …no problem with that. I would make the point that if we are unable to reach agreement on some facts that may be critical to the Court's decision, that some expedited discovery may be needed come the morning of the 16th.

The Court: …I'll hear you on that. I will tell you, where you want equitable relief and where the School Committee will have delayed – respectfully, and I appreciate it, for so long as it can, …if we're going to have a trial, I don't know how much discovery is necessary, I think maybe just getting witnesses in here and getting them to testify is what we need….

Transcript of Zoom Hearing March 3, 2021 at 20. Thus, the Court issued an order directing that

the parties work together to reach a stipulation of facts and "no discovery prior to the March 15,

2021 hearing." ECF No. 27.

As directed by the Court, the parties worked to agree on the facts for inclusion in an

Agreed Statement of Facts. In the introduction, the parties agreed that:

[t]o the extent the statements below cite to documents, the documents are true and accurate copies and the parties refer the Court to those documents for a more thorough discussion of the facts.

ECF 38 at 1.

In addition, the Coalition and BPS agreed to include the following:

67. A true and accurate transcription of text messages between Boston School Committee members, Vice-Chairperson Alexandra Oliver Davila and Lorna Rivera during the October 21, 2020 Boston School Committee meeting is attached as Document 72. **[Intervenors object to this Paragraph.]**

68. A true and accurate transcription of text messages between Boston School Committee Member, Vice-Chairperson, Alexandra Oliver-Davila and Superintendent Brenda Cassellius during the October 21, 2020 Boston School Committee meeting is attached as Document 73.[3/] **[Intervenors object to this Paragraph.]**

ECF 38 at ¶¶ 67-68.

---

[3/] The inclusion of these provisions had been previously proposed by the Coalition in an earlier draft of the Agreed Statement of Facts.

Following briefs and oral argument, the Court issued its decision on April 15, 2021. 2021 WL 1422827 (D. Mass. 2021). This Court denied the Coalition's request for preliminary injunction and entered judgment in BPS's (and Intervenor Defendants') favor. Among other things, this Court upheld the constitutionality of the Interim Plan after finding a "rational basis" review applied, rather than the "strict scrutiny" argued by the Coalition. Id. at *10-14. As part of its decision, the Court found that Coalition had failed to establish that the Interim Plan had a disparate impact and an invidious discriminatory purpose. Id. at *14-16.

On April 28, 2021, the First Circuit denied the Coalition's motion for injunction pending appeal, essentially adopting this Court's reasoning in determining that the Coalition had failed to demonstrate the substantial likelihood of success on the merits of its claim. See Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos., 996 F.3d 37 (1st Cir. 2021).[4]

## III.    ARGUMENT.

### A.    BPS Responded To The Public Records Requests In Accordance With The Massachusetts Public Records Law.

The Coalition conflates the Massachusetts public records statute and the discovery rules of the Federal Rules of Civil Procedure. Public records requests and responses are governed by a statutory scheme separate and apart from the rules of this Court. See M.G.L. c. 4, § 7(26) and c. 66 §10 ("Public Records Law"). Indeed, the Coalition's Motion rests entirely upon the unfounded assumption that BPS must have been aware of the relationship between the Coalition and Murphy and therefore purposefully withheld from the Coalition the text messages at issue in this case.

BPS's public records responses were reasonable and at no time appealed by the requestors. For those aggrieved by a public entities' response to a request, the proper means of

---

[4] Additional facts will be discussed in the Argument section below.

redress is not here; rather, it is to the Supervisor of Public Records or the Superior Court. <u>See</u> M.G.L. c. 66, § 10(a).

A "public record" is a record "made or received by" a public employee acting in his or her capacity as a public employee, or, as in the instant matter, as a member of a school committee. M.G.L. c. 4, § 7(26). This includes "all books, papers…or other documentary materials or data, regardless of physical form or characteristic." <u>Id.</u> "Other documentary materials or data" encompasses public records that are a product of advances in technology, such as electronic mail, social media, and text messages. <u>See</u> Richard T. Holland, <u>To Tweet or Not to Tweet? Social Media, Public Records, and the Open Meeting Law</u>, Vol. 28, No. 4, Municipal Advocate, 22 (2018).

Further, public records may exist outside the direct custody or control of a public entity. Supervisor of Public Records Bulletin 03-96, Application of the Public Records Law to Electronic Records Access, https://www.sec.state.ma.us/arc/arcrmu/rmubul/bul396.htm (last visited: July 5, 2021) ("the availability of information in the custody of Massachusetts governmental entities is dependent upon the substance of the information, rather than the form in which it is maintained"). In other words, "access to a record pursuant to the Public Records Law rests on the content of the record" and whether it relates to public business. William Francis Galvin, <u>A Guide to the Massachusetts Public Records Law</u>, p. 9 (202), https://www.sec.state.ma.us/pre/prepdf/guide.pdf (last visited: July 5, 2021); <u>see also</u> <u>Guide for Members of Public Boards and Commissions</u>, Massachusetts office of the Inspector General, p. 11 (2017), https://www.mass.gov/doc/guide-for-members-of-public-boards-and-commissions/download (last visited: July 5, 2021).

On November 17, 2020, BPS received its first request for text messages "related to BPS issues that were sent and received by each Boston School Committee members during their meeting that began on October 21 and ended on October 22" from the <u>Boston Globe</u>. Lizotte Aff. at ¶ 3. Whereas Boston School Committee members do not have BPS-issued mobile phones, BPS requested members submit copies or "screenshots" of their text messages for that time period to the Records Access Officer. Then, BPS reviewed the screen shots and determined that, due to legibility issues, the best course was to provide a transcript of messages to the <u>Boston Globe</u>. Lizotte Aff. at ¶ 4-15.

BPS conducted a review of each message to determine whether its content pertained to the members' public role. Lizotte Aff. Exh. X. Messages that were personal in nature were not included. <u>Id</u>. For example, messages about "westie whites" and "eating kit kats" were not included because BPS believed those comments were not made in the member's public capacity. <u>Id</u>.; Murphy Aff. at Att. H.

Ultimately, a transcript was provided with ellipses (i.e., "*******") indicating where conversations about public business had stopped and started. BPS described its process in a cover letter to the <u>Boston Globe</u>, stating "While no portions of texts were redacted based on statutory exemptions to the public records law, BPS did omit portions deemed not 'related to BPS issues.'" Lizotte Aff. Exh. 1. BPS considered its response completed and the <u>Boston Globe</u> did not appeal it. M.G.L. c. 66, § 10(a).

After the <u>Boston Globe</u> published on the matter, Murphy made several requests to BPS for public records. Lizotte Aff. at Atts. 2 to 7. Murphy did not identify herself as a member of or affiliated with the Coalition. BPS responded to these requests, including notice of the requestors' rights to appeal. <u>Id</u>. at Att. 9, 10. The responses were not appealed. <u>See</u> M.G.L. c. 66, § 10(a).

Murphy made an additional request for text messages again on February 23, 2021.[5/] Lizotte Aff. at Att. 12. On March 9, 2021, BPS responded to Murphy's request with the same document that was previously provided to the <u>Boston Globe</u>. <u>Id</u>. at Att. 14. BPS did not conduct any additional analysis of the text messages because it had already reviewed the them and made the determination regarding the School Committee members' public functions. Lizotte Aff. ¶ 16. BPS inadvertently did not attach the same cover letter that it did to the Boston Globe response, it still included a right of appeal. <u>Id</u>. Murphy did not appeal this response.

The Coalition's Motion improperly suggests that it made the public records requests at issue or that BPS had knowledge of Murphy's involvement with the Coalition. In the Coalition's Preliminary Statement, it states that the text messages "should [have] been provided to the Boston Parents in response to its public records requests."[6/] Coalition's Memo at 1. However, the Coalition itself never made a request for text messages. Lizotte Aff. at ¶ 22. Information from the Secretary of State's Office available to BPS at the time of the Coalition's filing did not list Murphy as a member or officer of the Coalition. Costello Aff. at ¶¶ 4-5 and Att. A. Furthermore, Murphy made her requests in her individual capacity with no apparent association to the Coalition.  Lizotte Aff. at Atts. 2 to 7. Nevertheless, the Coalition continues to represent throughout its Motion that it was the requestor of text messages.

Now, Murphy now takes issue with the sufficiency of BPS's response. In her affidavit, Murphy details that BPS's responses did not include actual copies of the requested messages – a detail that would have been immediately evident upon receiving BPS's response. <u>See</u> Murphy Aff. at ¶ 20. Murphy also recognizes that "instead of producing [the text messages], the City of

---

[5/] The Coalition did not file its lawsuit until February 26, 2021.  At that time, BPS remained unaware of Murphy's affiliation with the Coalition.

[6/] The Coalition refers to itself as "Boston Parents" in its Motion.

Boston used an ellipsis," which suggests that the transcript was not complete. Id. However, rather than seeking clarification or exercising her right to appeal BPS' response at the time, the Coalition now brings Murphy's grievances to this Court for redress rather than Murphy appealing them to the Supervisor of Public Records or Massachusetts Superior Court. M.G.L. c. 66, § 10A.

Now, in this Court, the Coalition challenges the sufficiency of BPS's responses to Murphy's public records requests. In her affidavit, Murphy details that BPS's responses did not include actual copies of the requested messages – a detail that would have been immediately evident upon receiving BPS's response. See Murphy Aff. at ¶ 20. Murphy also recognizes that "instead of producing [the text messages], the City of Boston used an ellipsis," which suggests that the transcript was not complete. Id. However, rather than seeking clarification or exercising her right to appeal BPS' response at the time, the Coalition now brings Murphy's grievances to this Court for redress rather than before the Supervisor of Public Records or Massachusetts Superior Court. M.G.L. c. 66, § 10A.

**B.     The Coalition Fails To Prove Fraud, Misrepresentation, Or Substantial Interference.**

The Coalition's argument is divorced from this case's procedural history and mischaracterizes BPS's conduct. The transcript submitted to the Court as part of the agreed upon record was an excerpt created and provided by the Coalition for inclusion in the Joint Agreed Statement of Facts. The Coalition and BPS represented to the Court that the except was:

> A true and accurate transcription of text messages between Boston School Committee Members, Vice-Chairperson Alexandra Oliver Davila and Lorna Rivera during the October 21, 2020 Boston School Committee meeting.

ECF No. 37 at ¶ 67.

12

At no point did BPS represent that the excerpt was a complete transcription of all text messages between school committee members. Similarly, the Coalition never made such an assertion which would have led into inquiry by BPS' counsel.[7/]

Under Rule 60(b)(3), a Court may relieve a movant from a final judgment if it proves by clear and convincing evidence that fraud, misrepresentation, or misconduct by an opposing party substantially interfered with its ability to prepare for and present its case fully and fairly. See FRCP 60(b)(3); See also Anderson v. Cryovac, Inc., 862 F.2d 910, 923 (1st Cir. 1988); Karak v. Bursaw Oil Corp., 288 F.3d 15, 21 (1st Cir. 2002). Courts have not yet provided a useful definition of "fraud on the court." Roger Edwards, LLC v. Fiddes & Son LTD., 427 F.3d 129, 133 (1st Cir. 2005). Even "perjury…alone has never been sufficient." Id., quoting Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2870, at 419-20 (1995). Nevertheless, "[t]he actor's intent "is not immaterial" in assessing conduct under Rule 60(b)(3). Anderson, 862 F.2d at 925.

Regarding nondisclosure, the First Circuit has explained that "[it] comes in different shapes and sizes: it may be accidental or inadvertent, or considerably more blameworthy (though still short of fraud or outright misrepresentation)" and not all forms of "nondisclosure" require a judgment be reversed. Id. None of the cases cited by the Coalition relate to public records requests and a party's obligations in a case with a similar procedural posture as here. In Anderson, the evidence at issue – interrogatories and exculpatory documents – were the subject of pretrial discovery. 862 F.3d 910 (remanded); see also Anderson v. Beatrice Foods Co., 127 F.R.D. 1 (D. Mass. 1989). In Karak, the Court considered competing affidavits. 862 F.2d 21 (motion still denied). In Roger Edwards, LLC v. Fiddes & Son LTD, the Court considered a Rule

_____

[7/] Indeed, when the Coalition's counsel raised questions during the development of the Joint Agreed Statement of Facts undersigned counsel attempted to obtain answers.

60(b)(3) motion that occurred "after extensive discovery." 427 F.3d 129 (1st Cir. 2005) (motion still denied). In Rozier, the movant alleged failure to fully comply with a discovery order and accurately answer interrogatories. 573 F.2d 1332 (motion still denied).

### 1.   The Coalition has failed to show that BPS committed fraud, misrepresentation, or misconduct.

At the initial hearing, the Court ordered that no discovery would be allowed and urged the parties to work together to supply the Court with an agreed-upon record. The Coalition had thousands of pages of documents that it wished to offer into evidence, including an excerpt of the text message transcription. Clearly, the document offered by the Coalition was not a full and complete transcript; rather, it was an excerpt of the document provided to Darragh Murphy and the Globe, containing a specific conversation between two School Committee members.

The Coalition did not proffer any details about the document that would warrant additional inquiry. BPS did not know the exact source of the document; nor did the Coalition make any representations about it. However, BPS was aware that the City of Boston had responded to public records requests for School Committee communications. Lizotte Aff. at ¶ 3. A review of the Coalition's document showed a transcript of a discrete conversation between two School Committee members. ECF Nos. 38-72 and 38-73.

The facts are void of fraud, misrepresentation, and misconduct. BPS attested that only the exhibit was a "true and accurate transcription of text messages," which it certainly was. BPS did not attest to it being a complete transcript of all the text messages between the two School Committee members in both their personal and public capacities under the Public Record Law. The Coalition's argument hinges upon this fact, which they have failed to prove. As such, the Motion should be denied.

**2.     The Coalition fails to prove that BPS substantially interfered with its ability to prepare for and present its case fully and fairly.**

Nevertheless, even if the Court were to find that fraud, misrepresentation, or misconduct occurred, the Coalition fails to prove that they were prevented from fully and fairly preparing or presenting their case. The text messages at issue have no effect on the Coalition's theory of the case. Evidence that is "cumulative, insignificant, or of marginal relevance," as is the case here, would "needlessly squander judicial resources." Anderson, 862 F.2d 924. Unlike many cases where the evidence at issue has been destroyed, here the Court has the messages themselves to consider. Anderson, 862 F.2d at 926.

Comparing the Coalition's Motion to previous briefing, the text messages would merely be cumulative and have no effect on the Coalition's theory of liability. The Coalition seeks to utilize the text messages to support their argument for the application of strict scrutiny - an argument that they already fully briefed and the Court considered. The Coalition's leading argument was that "Defendant's Racially Discriminatory Purposes Motivate the Zip Code Quota Plan" and fully briefed the application of a strict scrutiny analysis. ECF No. 63 at 3-8.

As the Coalition acknowledges, the text messages at issue relate solely to its subsidiary argument about racial animus – that is, it was unable to show that the Interim Plan and its impact evidenced purposeful discrimination. Here, the Coalition alleges that evidence of racial animus by School Committee members does.

Before this Court, the Coalition focused on Chairperson Loconto's apparent mocking of Asian names at the October 21, 2020 School Committee meeting and Committee members Oliver-Dávila and Rivera's text message exchange about it. While the Court found that Loconto statements were "racist," the fact that an additional message exchange add similarly inappropriate statements does not establish that the non-disclosure of the texts substantially

15

interfered with the Coalition's ability to prepare for and present its case. The "new evidence" is cumulative and has no effect on the Coalition's theory of the case.

### C.      The Coalition Fails To Prove The Existence Of Newly Discovered Evidence That, With Reasonable Diligence, Could Not Have Been Discovered In Time To Move For A New Trial.

The Coalition also seeks the Court's relief under Rule 60(b)(2). Under this rule, a court may relieve a party from a final judgment upon finding that newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Fed. R. Civ. P. 59(b). See Fed. R. Civ. P. 60(b)(2). To obtain such relief, the movant must prove specifically:

1)      the evidence has been discovered since the trial;

2)      the evidence could not by due diligence have been discovered earlier by the movant;

3)      the evidence is not merely cumulative or impeaching; and

4)      the evidence is of such a nature that it would probably change the result were a new trial to be granted.

Mitchell v. United States, 141 F.3d 8, 18 (1st Cir.1998). The Coalition fails to meet its burden with regard to newly discovered evidence.

### 1.      The Coalition fails to prove that the evidence is not merely cumulative or impeaching.

The newly discovered evidence – text messages – is merely cumulative in nature as the Coalition repeatedly pointed to alleged racial animus in its prior briefing. Under the Mitchell framework, the movant must prove that the evidence is not merely cumulative or impeaching in nature in order to prevail. See 141 F.3d at 18. The Coalition points toward the two text messages of Olivera-Davila and Rivera as evidencing the whole committee's racial animus; however, the

16

Coalition had already assigned a racial animus toward these two members and the committee. Compare Kettenbach v. Demoulas, 901 F. Supp. 486, 597 (D. Mass. 1995) (where newly discovered evidenced offered an "entirely different theory of the case than offered at trial.").

The Court fully explored the issue of alleged animus, specifically including that of Rivera and Oliver-Dávila. The Coalition briefed and the Court considered multiple statements of Rivera during working groups. See ECF No. 3 at 5-6. The Coalition briefed and the Court considered the statements of Oliver-Dávila during working groups. Id. at 6. The Coalition already argued and the Court considered that Rivera and Olivera-Davila expressed racial animus in their text messages.

The Court's ruling appropriately concerned the constitutionality of the Committee's actions as a whole – not the alleged animus of individual members. The Coalition already argued and the Court considered statements that the Coalition believed to be "the smoking gun of an overtly discriminatory statement" several times over. ECF No. 63 at 17. Therefore, the two new text messages upon which the Coalition's Motion hinges are merely cumulative.

### 2. Plaintiff fails to prove the evidence would cause a change in result at a new trial.

The Coalition's Motion should be denied because even were the new evidence considered at a new trial its underlying claim still fails. As discussed, the Coalition must prove "the evidence is of such a nature that it would probably change the result were a new trial to be granted." Mitchell, 141 F.3d at 18.

As argued above, the "newly discovered evidence" relates solely to the subsidiary argument about racial animus – that is, unable to show that the Interim Plan and its impact evidenced purposeful discrimination, the Coalition alleged that evidence of racial animus by School Committee members met their burden. Before this Court, the Coalition focused on

Chairperson Loconto's apparent mocking of Asian names at the October 21, 2020 School Committee meeting and Committee members Oliver-Dávila and Rivera's text message exchange about it.

　　With respect to Loconto, the Court found "no persuasive evidence that any other voting member had such animus" (Decision at 45) and that that the Oliver-Dávila and Rivera messages "do not evidence an invidious discriminatory purpose" because they "evidence concern about the remarks and speculation about the backlash from the comments [but] do not demonstrate that the members of the School Committee supported the Chairperson's racist mocking." <u>Id</u>.

　　Presumably, the Coalition would have made similar arguments with respect to the newly disclosed messages. However, while wholly inappropriate and evincing extremely poor judgment, these messages simply do not show that the Interim Plan was motivated by racial animus. First, Rivera's comment – "Wait til the white racists start yelling [a]t us" – merely expresses her personal belief that white people she considers racist would attempt to confront the Committee and challenge the Interim Plan on racial grounds. Oliver-Dávila's response – "Whatever…they are delusional" – is equally innocuous. To claim that White racists are "delusional" is not a controversial stand with which any right-thinking person would take issue.

　　While more problematic, Rivera's related comment – that she is "[s]ick of westie whites" – offers more of the same. Rivera's evident frustration with this particular group's insistence that its privileged status be maintained is, if not politically correct, at least explainable. It certainly does not rise to the level of an affirmative showing of some malicious racial animus on the part of Rivera specifically, or the School Committee generally, in implementing the Interim Plan.

　　Finally, even could these unfortunate messages be viewed in the starkly nefarious way the Coalition urges, they still would not change the Court's underlying ruling. Just like with

Loconto's statements, there is no evidence that any other Committee members agreed with or supported these views. Without proof that the new messages would change the Court's ruling, the Coalition's Motion should be denied.

### D.     The Coalition Fails To Prove Any Other Reason That Justifies Relief.

Under Rule 60(b)(6), a party may obtain relief from judgment for "any other reason that justifies relief." The Coalition fails to prove any such reason and merely rely upon their arguments for relief under Rule 60(b)(2) and (3) when requesting such relief.

Relief from judgement is an extraordinary circumstance. Because the Coalition does not meet their burden under Rule 60(b)(2) and (3), its claims must fail. Compare Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1317 (2000). "[S]ubpart (6) is properly invoked only where there are extraordinary circumstances, where the judgment may work an extreme and undue hardship and where the asserted ground for relief are not recognized in clauses (1)-(5) of the Rule." Gonzalez v. Gannet Satellite Info. Network, Inc., 90 F.Supp. 329, 331 (N.D.N.Y. 1995), aff'd, 101 F.3d 109 (2d Cir. 1996) (quotations and citations omitted).

The Coalition asserts no extraordinary circumstances; therefore, BPS respectfully requests that the Motion be denied.

### IV.    CONCLUSION.

For all of the foregoing reasons, the Court should deny the Coalition's Motion.

Respectfully submitted,

SCHOOL COMMITTEE OF THE CITY OF
BOSTON, ALEXANDRA OLIVER-DAVILA,
MICHAEL O'NEIL, HARDIN COLEMAN,
LORNA RIVERA, JERI ROBINSON, QUOC
TRAN, ERNANI DeARAUJO and BRENDA
CASSELLIUS,

By their attorneys,


/s/*Kay H. Hodge*
Kay H. Hodge (BBO # 236560)
    khodge@scmllp.com
John M. Simon (BBO #645557)
    jsimon@scmllp.com
Stoneman, Chandler & Miller LLP
99 High Street
Boston, MA 02110
(617) 542-6789

Catherine A. Lizotte (BBO #666468)
    catherine.lizotte@cityofboston.gov
Legal Advisor
Boston Public Schools
2300 Washington Street
Boston, MA 02119
(617) 635-9250

Dated: July 6, 2021


<u>Certificate of Service</u>

    I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and that paper copies will be sent by first class mail, postage prepaid, to those indicated as non-
registered participants on July 6, 2021.


/s/*Kay H. Hodge*
Kay H. Hodge