UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BOSTON PARENT COALITION FOR ACADEMIC EXCELLENCE CORP.,<br><br>Plaintiff,<br><br>v.<br><br>THE SCHOOL COMMITTEE OF THE CITY OF BOSTON, ALEXANDRA OLIVER-DAVILA, MICHAEL O'NEILL, HARDIN COLEMAN, LORNA RIVERA, JERI ROBINSON, QUOC TRAN, ERNANI DeARAUJO, and BRENDA CASSELLIUS,<br><br>Defendants,<br><br>THE BOSTON BRANCH OF THE NAACP, THE GREATER BOSTON LATINO NETWORK, ASIAN PACIFIC ISLANDER CIVIC ACTION NETWORK, ASIAN AMERICAN RESOURCE WORKSHOP, MAIRENY PIMENTEL, and H.D.,<br><br>Intervenor-Defendants | Civil Action No. 1:21-cv-10330-WGY |

## INTERVENOR-DEFENDANTS' BRIEF
## FOLLOWING JULY 9, 2021 RULE 60(b) HEARING

Doreen M. Rachal (BBO # 667837)
Drew A. Domina (BBO# 703375)
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, Massachusetts 02109
Tel: (617) 223-0300
drachal@sidley.com
ddomina@sidley.com

Susan M. Finegan (BBO # 559156)
Mathilda S. McGee-Tubb (BBO # 687434)
Jason Burrell (BBO # 705180)
Laura Martin (BBO # 705617)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
Tel: (617) 542-6000
smfinegan@mintz.com
msmcgee-tubb@mintz.com
jlburrell@mintz.com
lemartin@mintz.com

Bethany Li (BBO # 673383)
GREATER BOSTON LEGAL SERVICES
197 Friend Street
Boston, Massachusetts 02114
Tel: (617) 371-1234
bli@gbls.org

Lauren Sampson (BBO # 704319)
Oren Sellstrom (BBO # 569045)
LAWYERS FOR CIVIL RIGHTS
61 Batterymarch Street, Fifth Floor
Boston, MA 02110
Tel: (617) 988-0609
lsampson@lawyersforcivilrights.org
osellstrom@lawyersforcivilrights.org

*Counsel for Intervenor-Defendants*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT.......................................................................................................................5

   I.   The Court Should Deny Plaintiff's Rule 60(b) Motion, Or, In the Alternative, Inform the First Circuit That the Motion Raises A Substantive Issue and Should Be Remanded for Limited Re-Opening. ........................................................................................ 5

       A.    If the Court Were to Deny Plaintiff's Rule 60(b) Motion, No Indicative Ruling Would Be Necessary.......................................................................................5

       B.    Alternatively, The Court Could Issue an Indicative Ruling, Informing the First Circuit That If Jurisdiction Were Restored, The Court Would Re-Open the Case for Limited Purposes. ........................................................................................9

   II.  Lawyers Have an Ethical Duty to Correct False Statements of Material Fact or Law Made to the Tribunal After Knowledge of Its Falsity Comes to Light................................... 10

CONCLUSION...................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Am. Civil Liberties Union of Ma. v. U.S. Conference of Catholic Bishops*,
  705 F.3d 44 (1st Cir. 2013)............................................................................................7, 8

*Am. Humanist Ass'n., Inc. v. Douglas Cty. School Dist. RE-1*,
  328 F.Supp.3d 1203 (D. Col. 2018)...................................................................................9

*In re Angwafo*,
  899 N.E.2d 778 (Mass. 2009) ..........................................................................................10

*Arkansas Teacher Ret. Sys. v. State St. Bank & Tr. Co.*,
  No. 11-10230, 2020 WL 949885 (D. Mass. Feb. 27, 2020) .............................................11, 12

*Bautista v. Star Cruises*,
  696 F. Supp. 2d 1274 (S.D. Fla. 2010) .............................................................................10

*Anderson ex rel. Dowd v. City of Boston*,
  375 F.3d 71 (1st Cir. 2004)...........................................................................................7, 8, 9

*Genesis Healthcare Corp. v. Symczk*,
  569 U.S. 66 (2013).............................................................................................................7

*Holden v. Blevins*,
  837 A.2d 1053 (Md. Ct. Spec. App. 2003) .......................................................................11

*Jenkins v. City of Taunton*,
  2018 WL 326462 (D. Mass. Jan. 8, 2018) ..........................................................................6

*LFoundry Rousset, SAS v. Atmel Corp.*,
  690 F. App'x. 748 (2d Cir. 2017) .......................................................................................5

*Long v. State*,
  297 A.2d 299 (Md. Ct. Spec. App. 1972).........................................................................11

*New England Regional Council of Carpenters v. Kinton*,
  284 F.3d 9 (1st Cir. 2002).................................................................................................8

*O'Connor v. Washburn Univ.*,
  416 F.3d 1216 (10th Cir. 2005) .........................................................................................8

*In re Pharmaceutical Industry Adverage Wholesale Price Litig.*,
  230 F.R.D. 61 (D.Mass. 2005)..........................................................................................9

*Sierra Glass & Mirror v. Viking Indus., Inc.*,
   808 P.2d 512 (Nev. 1991) ................................................................................................11

*St. Pierre v. U.S.*,
   319 U.S. 41 (1943) .............................................................................................................7

*Texas v. Lesage*,
   528 U.S. 18 (1999) (per curiam) ......................................................................................9

*Warth v. Seldin*,
   422 U.S. 490 (1975) ..........................................................................................................8

**Other Authorities**

BPS Welcome Services, "Exam Schools Admissions Criteria Working Group
   Simulations Overview," Boston Public Schools (2021),
   https://www.bostonpublicschools.org/Page/8513 ..............................................................7

City of Boston in School Committee, *Boston Public Schools Exam Schools
   Admissions Policy*, at 1 (Jul. 14, 2021) .......................................................................3, 4

Fed. R. App. P. 12.1(a) .............................................................................................................5, 6

Fed. R. Civ. P. 25(d) ....................................................................................................................3

Rule 60(b) ............................................................................................................................ *passim*

Fed. R. Civ. P. 62.1 ...................................................................................................................5, 6

Felicia Gans, *Walsha Appoints Ernani DeAraujo to Boston School Committee,
   filling seat left open by Loconto resignation,* The Boston Globe (February 9,
   2021), https://www.bostonglobe.com/2021/02/09/metro/walsh-appoints-
   ernani-dearaujo-boston-school-committee-filling-seat-left-open-by-loconto-
   resignation/..........................................................................................................................3

Mass. R. Prof. C.  3.3 ...................................................................................................................11

Max Larkin,  *Janey Appoints Two Latina Members to Boston School Committee*,
   WBUR (July 22, 2021), https://www.wbur.org/news/2021/07/22/janey-
   school-committee-appointments .........................................................................................3

Max Larkin, *Second Boston School Committee Member Resigns Following
   Leaked Text Messages*, WBUR (June 8, 2021),
   https://www.wbur.org/edify/2021/06/08/second-resignation-boston-school-
   committee..............................................................................................................................3

**INTRODUCTION**

The Intervenor-Defendants submit this brief pursuant to the Court's order issued on July 9, 2021. ECF No. 121.[1]  At the hearing, the Court directed the parties to submit additional briefing addressing the following: 1) whether the Court should provide an indicative ruling to the First Circuit, identifying how the Court would proceed if subject matter jurisdiction were restored; 2) whether Plaintiff has standing to pursue the case further; and 3) what factors should guide the Court in analyzing the obligations of Defendants' attorneys to disclose omitted text messages to the Court.

For the reasons set forth in the Intervenor-Defendants' previous brief, ECF No. 117, which is incorporated herein, Plaintiff has not met its burden to justify the extraordinary remedy of Rule 60(b) relief. Although the allegations surrounding Defendants' failure to disclose the text messages at issue are deeply serious, the texts themselves do not alter the conclusions the Court reached in its now-withdrawn opinion.  As a result, the Rule 60(b) motion should be denied.  In the alternative, the Court could issue an indicative ruling, stating that Plaintiff's Motion raises a substantive issue and informing the First Circuit that, should jurisdiction be restored to this Court, the Court would grant Plaintiff's Rule 60(b) motion and re-open the case for limited purposes only: 1) to accept any evidence that was improperly withheld, and 2) to address justiciability issues in light of the current posture of the case.

As the Court noted at the July 9, 2021 hearing, recent developments appear to have rendered the case moot. Specifically, on July 14, 2021 the Boston School Committee—now

---

[1]   The Intervenor-Defendants are the NAACP – Boston Branch, the Greater Boston Latino Network, Asian Pacific Islander Civic Action Network, Asian American Resource Workshop, Maireny Pimentel, and H.D. (now a rising seventh-grade student in the Boston public school system). ECF No. 21. The Court granted the Intervenor-Defendants leave to intervene on March 3, 2021. ECF No. 27.

without former members Michael Loconto, Lorna Rivera and Alexandra Oliver-Dávila—unanimously voted to approve a new admissions policy for the highly selective public schools that does not utilize zip codes in any way.  This plan will remain in place for at least the next five years. Even apart from the fact that Plaintiff has failed to provide adequate legal or factual support for its position that the prior use of zip codes was unconstitutional, the School Committee's decision not to use zip codes for future admissions decisions renders the Plaintiff's request for permanent injunctive relief moot.

Finally, as to the issue of Defendants' attorneys' ethical obligations, Intervenor-Defendants set forth relevant guiding principles below.  However, even if the Court were to find that Defendants' attorneys acted improperly, that determination need not and should not disturb the Court's ultimate ruling on the critically important constitutional issues presented by this case.  The Court has the means to discipline Defendants' attorneys, if the Court finds that to be appropriate, without interfering with a just result on the merits.  Like the Court, Intervenor-Defendants want the decision in this matter to be reached as the result of a fair process.  For the reasons set forth below, Intervenor-Defendants believe that can be accomplished in this case – in a way that appropriately recognizes and accounts for all of the relevant evidence, the conduct of Defendants' attorneys, and guiding legal principles.

**SUPPLEMENTAL FACTUAL BACKGROUND**

As referenced above, none of the individuals who made racially insensitive comments—Michael Loconto, Lorna Rivera, and Alexandra Oliver-Dávila—are current members of the Boston School Committee or current Defendants in this case.[2]  Further, after the resignations, the Boston

---

[2] Michael Loconto resigned as Chairperson of the School Committee on Friday, October 22, 2020. ECF No. 38, at ¶ 5.  Lorna Rivera resigned as a member of the School Committee on Friday, June 4, 2021, and Alexandra Oliver-Davila resigned as Chairperson on Tuesday, June 8,

School Committee meeting unanimously adopted a new admission policy ("New Policy") for its highly selective public schools on July 14, 2021. Exhibit A, City of Boston in School Committee, *Boston Public Schools Exam Schools Admissions Policy*, at 1 (Jul. 14, 2021).  The New Policy, which remains in place for at least the next five years, is being implemented in two phases. Ex. A, at 2, 4.  Phase One only applies for the 2022-2023 academic year. *Id*. at 2.  Students must meet two requirements to apply during this phase: 1) the student must have a GPA of B or higher in Math, Science, and Social Studies, and 2) a representative from the student's school/district must attest that the student is performing at "grade level based on the Massachusetts Curriculum Standards." *Id*.  During Phase One, students will not be required to take a standardized test. *Id*.

Students eligible to apply will receive a composite score between 1 and 100. *Id*.  This composite score will be determined solely based on the student's GPA, but additional points are available to certain students based on specified socio-economic indicators. *Id*.  Students who are experiencing homelessness, who are in the care of the Department of Children and Families, or who live in "public housing that is federally or state funded and owned by the Boston Housing Authority" will have 15 points added to their composite score. *Id*.   A student's composite score

---

2021. Max Larkin, *Second Boston School Committee Member Resigns Following Leaked Text Messages*, WBUR (June 8, 2021), https://www.wbur.org/edify/2021/06/08/second-resignation-boston-school-committee. All were originally sued in their official capacity and thus are no longer Defendants, *see* Fed. R. Civ. P. 25(d), although the case caption has not yet been formally amended to reflect their resignations and replacements.  Ernani DeAraujo was appointed to the Committee on February 9, 2021, replacing former Chairperson Loconto. Felicia Gans, *Walsha Appoints Ernani DeAraujo to Boston School Committee, filling seat left open by Loconto resignation,* The Boston Globe (February 9, 2021), https://www.bostonglobe.com/2021/02/09/metro/walsh-appoints-ernani-dearaujo-boston-school-committee-filling-seat-left-open-by-loconto-resignation/. Rafaela Polanco Garcia and Lorena Lopera were appointed to the Committee, replacing former members Rivera and Oliver-Dávila, on July 22, 2021. Max Larkin,  *Janey Appoints Two Latina Members to Boston School Committee*, WBUR (July 22, 2021), https://www.wbur.org/news/2021/07/22/janey-school-committee-appointments.

3

will be increased by 10 points if the student attends a school that "has, on average over the past five years, an enrollment of 40% or more economically disadvantaged students, as defined by the Department of Elementary and Secondary Education." *Id*. However, a student cannot receive composite score increases from both categories. *Id*. at 3.

Phase Two, which applies to entry starting in the 2023-2024 school year and every year for the duration of the policy thereafter, keeps the same two general eligibility requirements but also requires students to take a standardized test. *Id*. Accordingly, during Phase Two, the student's GPA will account for 70% of the composite score, and the student's standardized test score will account for the other 30%. *Id*. The same policy for adding additional points to a student's composite score will be in effect during Phase Two. *Id*.

Importantly, zip codes are not used in any manner in Phase One or Phase Two. Rather, during both phases, admission invitations will be extended "evenly across eight tiers of census tracts." *Id*. Census tracts will be grouped into eight tiers based on the following criteria: "percentage of persons below poverty, percent of households not occupied by the owner, percent of families headed by a single parent, percent of households where English is not the primary language spoken, and educational attainment." *Id*. at 4. Moreover, "[t]iers will be of relative equal size based on the number of school-aged children in grades 5-8, according to the 5-year average from the American Community Survey." *Id*.

Ten rounds of invitations will occur, each of which will fill 10% of each tier's allotted spots. *Id*. The tier with the lowest socioeconomic rating will go first in each round followed by tiers in order of lowest to highest socioeconomic rating. *Id*. "Invitations . . . will be awarded based on students' preferences." *Id*.

**ARGUMENT**

I.     **The Court Should Deny Plaintiff's Rule 60(b) Motion, Or, In the Alternative, Inform the First Circuit That the Motion Raises A Substantive Issue and Should Be Remanded for Limited Re-Opening.**

At the July 9, 2021 hearing, the Court requested further briefing from the parties as to whether the Court should provide an indicative ruling to the First Circuit, indicating how the Court would proceed were subject matter jurisdiction restored to it.   For the reasons set forth in Intervenor-Defendants' Opposition to Plaintiff's Rule 60(b) Motion, ECF No. 117, Plaintiff's Rule 60(b) Motion should be denied, and thus no indicative ruling need issue from this Court.

In the alternative, the Court could issue an indicative ruling stating that it believes that Plaintiff's Rule 60(b) motion "raises a substantive issue."  Fed. R. Civ. P. 62.1; *see* Fed. R. App. P. 12.1(a).  The indicative ruling could further state that, should a remand be granted, the Court would re-open the case for the limited purpose of accepting and considering: 1) any evidence that was improperly withheld; and 2) any evidence that bears on issues of standing and mootness, in light of current conditions.  With a complete and up-to-date factual record, the Court could then issue an amended opinion addressing standing, mootness, and, if the matter were found to be still justiciable, the merits.

A.   **If the Court Were to Deny Plaintiff's Rule 60(b) Motion, No Indicative Ruling Would Be Necessary.**

"A motion brought pursuant to [Rule] 62.1 is a procedural device that allows a district court to inform the parties [and the circuit court] how it would rule on the merits of certain motions after an appeal has been filed and the district court has been divested of jurisdiction." *LFoundry Rousset, SAS v. Atmel Corp.*, 690 F. App'x. 748, 750 (2d Cir. 2017).  If a "timely motion is made for relief that the court lacks authority to grant," a district court has several options: 1) "defer considering the motion"; 2) "deny the motion"; or 3) "state either that it would grant the motion if the court of

appeals remands for that purpose or that the motion raises a substantive issue." Fed. R. Civ. P. 62.1; *see* Fed. R. App. P. 12.1(a).  Here, Plaintiff requests that this Court make an "indicative ruling" under Rule 62.1(a)(3) that it would grant Plaintiff's Rule 60(b) motion on a limited remand, based upon the newly-discovered evidence. *Jenkins v. City of Taunton*, 2018 WL 326462 at *4 (D. Mass. Jan. 8, 2018).

For the reasons set forth in Intervenor-Defendants' prior brief, ECF No. 117, Plaintiff's Rule 60(b) motion should be denied, such that the Court need not issue an indicative ruling.[3]  As discussed above, even since the prior briefing on this subject, additional developments further support denial of the Motion: specifically, the Boston School Committee has now unanimously approved a permanent admissions policy that does not consider a student's zip code, race, or ethnicity at any stage.  Instead, the New Policy is very similar to a model Plaintiff applauded in its earlier briefing on the merits—it "divides census tracts into [] tiers" based on "non-racial" factors, such as percentage of persons below poverty and percent of households not occupied by the owner, and then distributes invitations in ten rounds with 10% of available seats within each tier distributed in a round, with the tier with the lowest socioeconomic score going first in each round. Pl's. Post-Hearing Br., ECF No. 97, at 15.

In its Complaint, Plaintiff requests injunctive relief to prohibit Defendants from implementing the Zip Code Component of the Interim Plan as well as "from using zip codes as a factor in future admissions decisions to the Boston Exam Schools or otherwise making use of race

---

[3] As discussed in detail in that brief, ECF No.117, the text messages do not alter the Court's central holdings: that the Interim Plan was a race-neutral mechanism for enhancing socioeconomic, geographic, and racial diversity in Boston's highly selective public schools; that the Plan did not contain explicit racial classifications as it was not applied in a discriminatory manner and was not motivated by an invidious discriminatory purpose; that the Plan survives rational basis review; and that any future Plans would be formulated and voted on without School Committee members who made racially insensitive remarks.

or ethnicity in admissions." ECF No. 1. However, as a result of the intervening events described above, it appears that if the Court were to reopen the case, it would be deciding a "moot question[]" or providing an "advisory opinion[] which cannot affect the rights of the litigants in the case before it." *St. Pierre v. U.S.*, 319 U.S. 41, 42 (1943); *Genesis Healthcare Corp. v. Symczk*, 569 U.S. 66, 72 (2013) ("If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot.") (quotation omitted). This case does not fall within the "voluntary cessation" exception to mootness, as the doctrine does not apply when a defendant ends the challenged activity "because of reasons unrelated to the litigation." *Am. Civil Liberties Union of Ma. v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 55 (1st Cir. 2013) (quotation omitted). Here, the challenged conduct ended "because of an event that was scheduled before the initiation of the litigation"—the natural end of the lifespan of the Interim Plan—and was "not brought about or hastened by any action of the defendant." *Id*. Indeed, as the name suggests, the Interim Plan was always intended to be a temporary solution to the exigencies of the unique, pandemic influenced 2020-2021 academic year. BPS Welcome Services, "Exam Schools Admissions Criteria Working Group Simulations Overview," Boston Public Schools (2021), https://www.bostonpublicschools.org/Page/8513 (noting that in fall 2020, the Working Group "recommended that they continue convening to advise on permanent efforts to expand the applicant pool, making use of the new NWEA test and other factors.").

In this respect, the case is now procedurally similar to *Anderson ex rel. Dowd v. City of Boston*, 375 F.3d 71 (1st Cir. 2004), in which the First Circuit upheld the district court's denial of the requested prohibitory injunction. The *Anderson* Court reasoned that, where the School Committee had "voluntarily abandoned" the unconstitutional use of race in all student assignment

systems and maintained only a legally sound "commitment to diversity," the plaintiffs could not show any reasonable expectation that the challenged conduct would resume following dismissal. *Id*. at 93. This conclusion was unaltered by the "ample evidence" that, as in 2021, the School Committee intended to "continue to monitor relevant school demographics and [would] consider modifying the current assignment system to meet all of their stated goals, including diversity." *Id*.

Here, where the controversy has been mooted "through the normal course of events rather than through the unilateral action of the defendant," *Am. Civil Liberties Union of Ma.*, 705 F.3d at 55 (*quoting O'Connor v. Washburn Univ.*, 416 F.3d 1216, 1222 (10th Cir. 2005)), and the New Policy will be in place for at least five years, there is "no reasonable expectation of recurrence" and the voluntary cessation exception does not apply. *Id*. at 56 (holding voluntary cessation exception did not apply where challenged grant terms would not recur for at least three years and stating that, under circumstances of the case, "we think it wise to avoid an adjudication addressed to a policy that no longer applies.") (quotation omitted). At this juncture then, given the unanimous vote on the New Policy, Plaintiff can receive neither the preliminary nor permanent injunctive relief it requested, as "it would be pointless…to enjoin the enforcement of a [policy] that is no longer in effect." *New England Regional Council of Carpenters v. Kinton*, 284 F.3d 9, 18 (1st Cir. 2002).

Plaintiff is, therefore, left with only its requested remedy of nominal damages. However, Plaintiff has provided no caselaw to suggest that, contrary to a significant body of federal law, it can retain associational standing where the only available remedy is retrospective nominal damages. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 515-16 (1975) (holding association had no standing to sue on behalf of membership when seeking monetary relief for their injury, as standing depends "in substantial measure on the nature of the relief sought"; in a proper case, if "the

association seeks a declaration, injunction, or *some other form of prospective relief*, it can reasonably be supposed that the remedy, if granted, will inure to the benefits of those members of the association actually injured.") (emphasis added); *In re Pharmaceutical Industry Adverage Wholesale Price Litig.*, 230 F.R.D. 61, 79 (D.Mass. 2005) ("Generally speaking, associations do not have standing to seek monetary damages for injuries to their members."); *Am. Humanist Ass'n., Inc. v. Douglas Cty. School Dist. RE-1*, 328 F.Supp.3d 1203, 1214 (D. Col. 2018) (holding that where association's injured member was "not entitled to prospective relief" and the member's remedies, including nominal damages, were "retrospective in nature only," association lacked standing). Moreover, now that admissions decisions have been made for the 2021-22 school year, it is not clear that any of Plaintiff's members actually suffered any harm (*i.e.*, that they would have been admitted into the highly selective public schools but for the Zip Code Component of the Interim Plan) basis. *See Anderson*, 375 F.3d at 94-95 (holding, where eight individual plaintiffs provided no citation to support their contention that they would have received different school assignments had race not been a factor and where BPS demonstrated students were not denied seats at their preferred school because of race, that there was "no deprivation of constitutional rights at all," such that nominal damages could not be imposed) *(citing Texas v. Lesage*, 528 U.S. 18, 21 (1999) (per curiam)).

For all of these reasons, Plaintiff's Rule 60(b) Motion should be denied, thereby obviating the need for an indicative ruling.

### B. Alternatively, The Court Could Issue an Indicative Ruling, Informing the First Circuit That If Jurisdiction Were Restored, The Court Would Re-Open the Case for Limited Purposes.

Alternatively, the Court could issue an indicative ruling, stating that Plaintiff's Motion raises a substantive issue and informing the First Circuit that, should jurisdiction be restored to this Court, the Court would grant Plaintiff's Rule 60(b) motion and re-open the case for limited

purposes only. Specifically, Plaintiff would be allowed to introduce any wrongfully withheld evidence, and all parties would be allowed to introduce evidence relevant to issues of standing and mootness. Discovery limited to these discrete issues could be allowed, in the Court's discretion. Intervenor-Defendants believe this approach would balance the seriousness of Defendants' alleged conduct against the rest of the factual record, the controlling constitutional precedent, and the Boston School Committee's enactment of an entirely new admissions policy for the highly selective public schools.

A limited remand would permit the Court to eventually amend its withdrawn opinion to include a ruling on Plaintiff's Rule 60(b) motion. In so doing, the Court could incorporate the newly-discovered facts as well as more recent factual developments concerning the New Policy, thereby rendering the opinion complete and accurate in all respects.

## II.    Lawyers Have an Ethical Duty to Correct False Statements of Material Fact or Law Made to the Tribunal After Knowledge of Its Falsity Comes to Light.

Attorneys are duty bound to correct "false statement[s] of material fact or law previously made to the tribunal by the lawyer." Mass. R. Prof. C. 3.3(a)(1). Material facts have a "reasonable and natural tendency to influence a judge's determination…" *In re Angwafo*, 899 N.E.2d 778, 784-85 (Mass. 2009). An attorney's duty of candor to the tribunal is an invaluable tool to prevent injustice that likely will result if the Court relies upon inaccurate and/or incomplete information. *See Bautista v. Star Cruises*, 696 F. Supp. 2d 1274, 1281 (S.D. Fla. 2010) ("[T]he duty of candor is an integral part of ensuring that our system of justice functions properly because first and foremost an attorney is an officer of the court, an institution whose purpose is to seek the truth in order to do justice."). At base, an attorney is expected to be a zealous advocate while also satisfying the duty of being an officer of the Court. *See* Mass. R. Prof. C. 3.3 cmt. 2. ("A lawyer . . . has an obligation to present the client's case with persuasive force. Performance of that duty

10

while maintaining confidences of the client, however, is qualified by the advocate's duty of candor to the tribunal.")

This duty of candor continues until the end of the proceeding and includes appellate proceedings. *See Mass*. R. Prof. C. 3.3(c); *accord Holden v. Blevins*, 837 A.2d 1053 (Md. Ct. Spec. App. 2003) ("We also hold that, for purposes of [Rule 3.3], a 'proceeding' has not concluded until the appeal rights of every party to that proceeding 'have been exhausted, including the right to petition ... for *certiorari.*'") *(*quoting *Long v. State,* 297 A.2d 299, 301 n. 4 (Md. Ct. Spec. App. 1972)). An attorney's duty to correct false statements, including material facts, extends to representations that a document is complete while, in fact, information has been omitted. *Sierra Glass & Mirror v. Viking Indus., Inc.*, 808 P.2d 512, 516 (Nev. 1991) ("[I]f an attorney represents that he or she is proffering an entire document, omitting pertinent portions of that document is a blatant fraud.").

Moreover, failing to disclose newly revealed material information can constitute a breach of the duty of candor. *See* Mass R. Prof. C. 3.3 cmt. 3 ("There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation."). For instance, a relatively recent decision in this district held that an attorney violated his duty of candor when he did not inform the Court that his previously submitted declaration contained false statements of fact. *Arkansas Teacher Ret. Sys. v. State St. Bank & Tr. Co.*, No. 11-10230, 2020 WL 949885, at *36 (D. Mass. Feb. 27, 2020). The attorney, attempting to secure attorney's fees in a class action suit, submitted a declaration that included the amount of time his firm spent on the case and each employee's hourly rate. *Id*. at *32. However, the attorney submitted the declaration, which was prepared by other counsel, without reading it. *Id*. at *34. After the court awarded $75,000,000 in fees, the *Boston Globe* published an article detailing significant inaccuracies with counsel's fee

11

calculations. *Id*. at \*35. Accordingly, the attorney reviewed his declaration and found that, in fact, it contained falsities. *Id*. at \*36. Nevertheless, the attorney did not alert the Court that his declaration was false and did nothing to correct the record. *Id*. The Court, relying on Mass. R. Prof. C. 3.3(a)(1), found that the attorney's failure to correct his previously made statements violated the duty of candor. *Id*. The Court ordered the clerk to submit its memorandum and order, incorporating the finding that counsel violated its duty of candor, to the Massachusetts Board of Bar Overseers to take appropriate action as necessary. *Id*. at \*58.

As discussed in the Intervenor-Defendants' previous brief, ECF No. 117, the Court must take seriously any plausible allegation of misconduct in proceedings before it. But it has the ability to investigate these allegations without granting relief from judgment and, even if it determines that misconduct has occurred, to conclude that Rule 60(b) relief would be excessive and unnecessary. The Court has inherent power to supervise the integrity of its processes, and to issue the sanctions it deems justified to punish and deter any litigation misconduct; it retains jurisdiction to do so even while an appeal of the judgment is pending.

## CONCLUSION

For the foregoing reasons, Intervenor-Defendants respectfully request that the Court deny Plaintiff's Rule 60(b) motion or, in the alternative, issue an indicative ruling to the First Circuit stating the motion raises a substantive issue and requesting a limited remand.

Respectfully submitted,

NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE
BOSTON BRANCH AND OTHER
INTERVENORS

By their attorneys,

/s/ *Doreen M. Rachal*
Doreen M. Rachal (BBO # 667837)
Drew A. Domina (BBO# 703375)
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, Massachusetts 02109
Tel: (617) 223-0300
drachal@sidley.com
ddomina@sidley.com

/s/ *Susan M. Finegan*
Susan M. Finegan (BBO # 559156)
Mathilda S. McGee-Tubb (BBO # 687434)
Jason Burrell (BBO # 705180)
Laura Martin (BBO # 705617)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
Tel: (617) 542-6000
smfinegan@mintz.com
msmcgee-tubb@mintz.com
jlburrell@mintz.com
lemartin@mintz.com

/s/ *Bethany Li*
Bethany Li (BBO # 673383)
GREATER BOSTON LEGAL SERVICES
197 Friend Street
Boston, Massachusetts 02114
Tel: (617) 371-1234
bli@gbls.org

/s/ *Lauren Sampson*
Lauren Sampson (BBO # 704319)
Oren Sellstrom (BBO # 569045)
LAWYERS FOR CIVIL RIGHTS
61 Batterymarch Street, Fifth Floor
Boston, MA 02110
Tel: (617) 988-0609
lsampson@lawyersforcivilrights.org
osellstrom@lawyersforcivilrights.org

Dated: August 9, 2021

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants on August 9, 2021.

/s/ *Doreen M. Rachal*
Doreen M. Rachal