UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOSTON PARENT COALITION FOR ACADEMIC EXCELLENCE CORP., <br><br> Plaintiff, <br><br> v. <br><br> THE SCHOOL COMMITTEE OF THE CITY OF BOSTON, ALEXANDRA OLIVER-DAVILA, MICHAEL O'NEILL, HARDIN COLEMAN, LORNA RIVERA, JERI ROBINSON, QUOC TRAN, ERNANI DeARAUJO, and BRENDA CASSELLIUS, <br><br> Defendants, <br><br> and <br><br> COUNSEL FOR THE BOSTON BRANCH OF THE NAACP, GREATER BOSTON LATINO NETWORK, ASIAN PACIFIC ISLANDER CIVIC ACTION NETWORK, ASIAN AMERICAN RESOURCE WORKSHOP, MAIRENY PIMENTEL, and H.D, <br><br> Intervenors. | Civil Action No. 1:21-cv-10330-WGY |

## MEMORANDUM OF LAW ON BEHALF OF CITY OF BOSTON ATTORNEYS CATHERINE LIZOTTE AND HENRY C. LUTHIN

In response to the Court's order of July 9, 2021 (Dkt. No. 121), and at the request of the

City of Boston Law Department, this Memorandum of Law is submitted on behalf of Boston

Public Schools Legal Advisor Catherine Lizotte and Corporation Counsel Henry C. Luthin[1].

---

[1] Former Corporation Counsel Eugene O'Flaherty is no longer a city employee and it is therefore not appropriate for counsel for city employees to file a brief on his behalf. He has submitted an affidavit in response to this Court's directives on July 9, 2021, which is attached hereto.

## BACKGROUND

This Memorandum and its incorporated affidavits and exhibits is provided in partial response to the Court's orders made during its hearing on July 9, 2021. (*Id*.). In that hearing, prompted in the first instance by the plaintiff's Rule 60(b) motion, the Court reminded the parties that they had submitted for the trial record a transcript of selected texts sent during a School Committee Meeting held on October 21-22, 2020 between then Boston School Committee members Lorna Rivera and Alexandra Oliver Davila (Joint Agreed Statement of Facts, Dkt. No. 37, ¶ 67 and Exh. 72), and that, although the Court "thought that what was served up to me was the complete interaction that was material to this lawsuit . . . as a matter of existential fact it's not." (Tr. 7/9/2021 at 15). The Court ordered that "the opinion entered in this case is withdrawn on the ground that the Court is satisfied that it is factually inaccurate in certain material respects." (*Id*. at 23-24).

The Court directed that the parties "brief…the conduct of the attorneys here, both the in-house attorneys and the trial attorneys." (Tr. 7/9/2021 at 28). The Court then expressed its concerns as to the nature of the redactions made, following a public records request which the City responded to on November 5, 2020, and whether the redacted comments could candidly be equated to removal of personal statements such as "I like Kit-Kat candy bar[s]." (*Id*.). The Court stated that it believed it had been misled by the redacted transcript passages in the Joint Agreed Statement of Facts, and questioned whether the city's "in-house attorneys and the trial attorneys" had breached a duty of candor to the tribunal by submitting a stipulation that was factually "wrong" and by failing to inform the Court that the transcript was not a complete account of the texts between Ms. Rivera and Ms. Oliver Davila. (Tr. 7/9/2021 at 29). The Court concluded by stating: "And there is an obligation on counsel when they stipulate to things and there's an

obligation to inform the court when it is clear that the court's factual basis for its conclusions are, um, wrong, and I think there's duties here, and I'd like those briefed." (*Id.*).

This memorandum and the accompanying affidavits of Henry Luthin, Catherine Lizotte and Eugene O'Flaherty (collectively, with Shawn Williams, the "city attorneys") seek to address the Court's concerns with respect to the conduct of certain city-employed attorneys.  *See* Exhibits A, B, and C attached hereto. The City's outside counsel, Kay Hodge and John Simon of Stoneman, Chandler and Miller, will file a separate brief and affidavits. Attorney Shawn Williams, the Director of Public Records for the City of Boston, will file a separate brief responding to the concerns raised by the Court on July 9, 2021.  While there is nothing to indicate any factual conflicts, strategy disputes or adversarial interests between any of the City attorneys or outside counsel, their differing institutional affiliations and involvement in different pre-litigation and litigation decisions concerning disclosure of School Committee members' text messages recommend separate memoranda of law.

The Court's concerns are reasonable and serious and warrant candor and attention from the city attorneys. This Memorandum will provide them.

## STATEMENT OF RELEVANT FACTS

Recognizing that the Court has the benefit of the attached sworn statements from Henry Luthin, Catherine Lizotte and Eugene O'Flaherty, numerous referenced documents and a record that includes affidavits and documents submitted last month and during the litigation of this case, we will attempt to provide those facts, perceptions and explanations which most directly address the concerns raised by the Court on July 9, 2021.

(a)      **November 5, 2020 Public Record Request Response to the Boston Globe**

During a lengthy remote meeting beginning on October 21, 2020 and extending several hours into the following day, the Boston School Committee (the "School Committee") voted unanimously to adopt an interim plan governing admission to Boston's three "exam" schools for the 2021-2022 school year. On that very same day, October 22, 2020, the Boston Globe submitted a public records request to the Boston Public Schools ("BPS") seeking "all cellular telephone text messages and emails related to BPS issues that were sent or received by each Boston School Committee member during their meeting that began on October 21 and ended on October 22." (Lizotte Second Aff. at ¶ 6).

As with most public records requests made to BPS, this request was forwarded to Catherine Lizotte, a member of the City's Law Department serving as Legal Advisor to the Boston Public Schools, who soon requested of each member that they provide her with potentially responsive messages. (Lizotte Second Aff. at ¶ 7).   Upon receiving potentially responsive messages from several members, Attorney Lizotte conducted an initial review as to whether the messages were responsive, to include whether messages or portions of messages were made in the School Committee Members' public or private capacity.[2] (*Id*.).  School Committee members Jeri Robinson, Michael O'Neill, Lorna Rivera and Alexandra Oliver-Dávila

---

[2] In assessing judgments made in a public records response to the Globe, the City asks this Court to recognize that the "documents" involved were personal asides during a Zoom meeting, which the School Committee Members understood to be private reflections, rather than statements in their official capacities during a School Committee meeting. The City further asks the Court to recognize that the transcript of Members' texts at issue was delivered to the Globe months before this case was filed, at a time when city attorneys could not have foreseen the texts' potential relevance in future litigation.  Also, the accompanying M.G.L. c. 66 response explicitly notified the Globe that material had been redacted because it was not "related to BPS issues." Whether or not the Court agrees with the redactions, they occurred in a statutory process set forth in M.G.L. c. 66, not in the litigation pending in this Court. Ch. 66 prescribes its own process for appeals, court challenges and remedies, and any dispute with a public records response to the Globe on November 5, 2020 should be taken up in the ways prescribed by c. 66.

provided their messages.  Dr. Hardin Coleman confirmed that he did not have responsive

messages.  Quoc Tran and Michael LoConto did not provide messages. (*Id*.).

Attorney Lizotte sought and received review from then Corporation Counsel Eugene

O'Flaherty, then First Assistant Corporation Counsel for Government Services Henry C. Luthin,

and the Director of Public Records Shawn A. Williams. (Lizotte Second Aff. at ¶ 9).   All agreed

as to what messages were made in a member's official capacity or concerned matters under the

committee's purview and should be disclosed and what messages, or portions of messages,

should not be provided because they were private, non-responsive and not related to BPS issues.

(*Id*.)  All further agreed that, because of difficulties in the readability of some screenshots, a

transcript should be produced containing all of the responsive messages with private messages or

portions omitted. (Lizotte Second Aff. at ¶ 10-11)

On November 5, 2020, Attorney Lizotte responded to the Globe's request. (Lizotte

Second Aff. at ¶ 14)  The response consisted of eight (8) typewritten pages of transcribed text

messages.  (Lizotte Second Aff. at ¶ 28). 1The transcription was accompanied by a cover letter

which stated in part:  "[w]hile no portions of texts were redacted based on statutory exemptions

to the public records law, **BPS did omit portions not related to BPS issues.**" (emphasis added)

(Lizotte Second Aff. at ¶ 12). The letter advised the Globe it could appeal under the public

records laws if it wanted further information on members' texts.  No appeal was taken, and the

Globe did not seek further information on School Committee Members' communications with

each other during the October 21-22 meeting.  (Lizotte Second Aff. at ¶ 15).

Other than their participation in the November 5, 2020 response to the Globe, then

Corporation Counsel Eugene O'Flaherty, then First Assistant Corporation Counsel for

Government Services Henry C. Luthin, and Director of Public Records Shawn A. Williams had

no involvement, nor were they consulted, in connection with any other public records request in this matter prior to the filing of the Joint Agreed Statement of Facts. None of these three attorneys were involved in or consulted in connection with the process by which an agreed upon statement of facts was produced, or any other aspect of the litigation. (Luthin Aff. at ¶ 5; O'Flaherty Aff. at ¶ 12; Williams Aff. at ¶ 40).

        **(b)**       **Additional Public Records Requests**

In the almost four months between its response to the Globe and the commencement of litigation, BPS received from the plaintiff and a Boston resident named Darragh Murphy a large number of public records requests concerning the exam schools admissions process and the studies and discussions leading up to the School Committee's vote. (Lizotte Second Aff. at ¶ 16-28).   These requests, many of them detailed and requiring much time and attention for response, fell to Attorney Lizotte. (Lizotte Second Aff. at ¶ 7).

For example, on November 20, 2020, BPS made a request for certain datasets. (Lizotte Second Aff. at ¶ 18). On February 12, 2021, BPCAE requested transcripts of the October 20, 2020 School Committee meeting as well as for applicant information.

On November 19, 2020, Darragh Murphy made six records requests for a broad range of school, student and Exam School Working Group information, including grade-point averages of admitted and non-admitted exam school students; ISEE exam scores of admitted and non-admitted students; copies of all electronic communications concerning the exam school working group; all formulas, algorithms, calculations and other information used by BPS to standardize GPAs for applicants to the exam schools; and copies of data sets, spreadsheets, formulas, algorithms and guidelines used by BPS personnel to identify the number of school aged children by ZIP Code. (Lizotte Second Aff. at ¶ 16).   She followed up these voluminous requests with a

request on February 12, 2021 for applicant pool information and on February 23, 2021 with five more requests. (Lizotte Second Aff. at ¶21, 23).

One of the February 23, 2021 requests by Darragh Murphy specifically requested text messages from School Committee members during their October 21, 2020 meeting.  (Lizotte Second Aff. at ¶ 23 and Attachments L-N).  The City responded to the February 23 request on March 9, 2021.  (Lizotte Second Aff. at ¶ 28) and Exh. 9 (attachment to Stein email).  The City responded by providing a link to the same eight pages of transcribed text messages that were provided to the Globe on November 5, but inadvertently did not provide a link to the November 5 letter to the Globe that explained that certain portions of the Members' text messages were omitted. (Lizotte Second Aff. at ¶ 28). Neither this nor any of the other records requests by Darragh Murphy identified her as being associated with BPCAE, and in fact, BPS was unaware of an affiliation between Darragh Murphy and BPCAE until Attorney Stein revealed it on June 16, 2021. (Lizotte Second Aff. at ¶ 46).  This fact is offered solely to clarify that decisions on responses to Darragh Murphy's requests were not influenced by any pending or ongoing litigation.

**(c)    The Litigation and the Process to Produce Agreed-Upon Facts**

On February 26, 2021, the plaintiff filed this action. (Lizotte Second Aff. at ¶ 25). The Court placed the case on an accelerated track, and at a preliminary hearing on March 3, 2021, the Court decided that the plaintiff's request for a preliminary injunction would be collapsed into the hearing on the merits. (Lizotte Second Aff. at ¶ 27).  The Court ordered that no discovery occur until the next hearing.  (*Id.*) The Court also ordered the parties to file an agreed statement of facts as the trial record on March 15, 2021 and to prepare for a short trial date to be set by the Court on that date.  (Hodge Aff. at ¶ 7) and Exh. 2 (ECF No. 27).

The parties immediately began the process of identifying facts on which they could agree. Attorney Lizotte began assisting Attorney Hodge by connecting her with BPS staff and compiling data and other information to include in the City's draft Statement of Agreed Facts. (Lizotte Second Aff. at ¶ 27). On Wednesday, March 10, 2021, Attorney Stein sent Attorney Hodge a draft Agreed Statement of Facts ("Agreed Statement"). The draft did not include or reference text messages. (Lizotte Second Aff. at ¶ 30).

On March 12, 2021, the plaintiff's counsel sent an email to Attorney Hodge attaching three additional documents that the plaintiff wished to incorporate into the Agreed Statement of Facts, as well as a revised version of the plaintiff's Agreed Statement. (Lizotte Second Aff. at ¶ 31). Attorney Hodge forwarded the email and attachments to Attorney Lizotte on the morning of March 13, 2021. (Lizotte Second Aff. at ¶ 32). Attorney Lizotte recognized two of the attachments as excerpts from what she assumed was the transcript which the city had sent to the Globe on November 5, 2020 and she informed Attorney Hodge of this. (Lizotte Second Aff. at ¶ 33, 37). Attorney Lizotte did not remember that the same eight-page production made to the Globe had been provided several days earlier to Darragh Murphy, who was not then known to be associated with this action. (Lizotte Second Aff. at ¶ 34).

Attorney Lizotte also did not remember that portions of the text messages between School Committee members had been omitted from the transcript sent to the Globe. (Lizotte Second Aff. at ¶ 38). Neither seeing snippets of the text messages nor reading Attorney Stein's labeling of the snippets as "A true and accurate transcription of text messages between Boston School Committee Members, Vice Chairperson Alexandra Oliver Davila and Lorna Rivera during the October 21, 2020 Boston School Committee meeting is attached …" prompted her to recall the omission of those text portions approximately four months earlier. (*Id.*) Had she

8

recalled those redactions, she would have immediately informed Attorney Hodge about them. (Lizotte Second Aff. at ¶ 40).

### (d) The June 7, 2021 Boston Globe Story

On June 7, 2021, Attorney Lizotte learned that text messages between Boston School Committee members Alexandra Oliver-Dàvila and Lorna Rivera had been disclosed to the press. (Lizotte Second Aff. at ¶ 41). Upon reading the disclosed comments, Attorney Lizotte recognized them to be the items omitted from the response to the Globe on November 5, 2020. Sometime over the next three days – probably on June 8 – Attorney Lizotte informed Attorney Hodge about the November 5, 2020 redactions made by the City. (Lizotte Second Aff. at ¶ 43).

After the Globe article, BPS and the City began receiving public records request for all of the text messages exchanged during the October 21, 2020 meeting, including those that had been omitted from the Boston Globe response. (Lizotte Second Aff. at ¶ 44). On June 10, the city reopened Darragh Murphy's public records request for the October 21, 2020 text messages. (Lizotte Second Aff. at ¶ 45). On June 18, 2021 the city provided the unredacted text messages to the press and to other individuals who had requested them. (Lizotte Second Aff. at ¶ 47).

### ARGUMENT

### (a) No Misconduct or Failure to Adhere to Ethical Obligations Can Reasonably be Found in the City Attorneys' November 5, 2020 Public Records Request Response to the Boston Globe

It is clear from the factual record, including the attached Affidavits (Exhibits A, B, and C), that in addressing the Boston Globe's October 22, 2021 public records request, the City Attorneys, including career government services practitioners with decades of experience in Massachusetts Public Records Law, made an informed judgment as to the content and manner of the response.

While, in the hindsight of a litigated action, the redacted items have taken on enhanced significance, the process in removing them was, at the time, the product of the Law Department's judgment that specific items were not responsive because they were private, not public, communications; they did not relate to BPS issues; and that a transcript omitting the non-responsive items was a reasonable and practical medium for the response.  The present action had not been filed, and the city attorneys involved in the November 5 response were bound only by the substantive obligations and specific review and appeal steps set out in the Public Records Law, M.G.L. c. 66. Their public records disclosures in November of 2020 cannot be judged by ethical obligations that only apply to filings in the United States District Court by attorneys participating in litigation that was not filed until nearly four months after the city attorneys completed their response to the Globe.

Aside from unfounded and non-factual allegations of ill-motive and impropriety, the plaintiff offers no evidence of misconduct by the City Attorneys in their November 5, 2020 response, nor can they, as the City Attorneys carried out their statutory duties in a professional and ethical manner.

The fact that others may disagree with the City's exercise of its judgment in its response does not implicate Rule 3.3 of the Massachusetts Rules of Professional Conduct, which states, in part, that: "[a] lawyer shall not knowingly: (1) make a false statement of fact …  to a tribunal or fail to correct a false statement of material fact …previously made to the tribunal by the lawyer; [or] (3)  offer evidence that the lawyer knows to be false, except as provided in Rule 3.3(e). If the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including if necessary, disclosure to the tribunal."  As pointed out above, the November 5 disclosures were in a ch. 66 response, not in filings presented to a tribunal; and judgments

concerning which private communications should be redacted from a public records response because they were not related to BPS business cannot constitute a "false statement of fact."

Nor do the ch. 66 decisions made by city attorneys in the November 5 response implicate Rule 8.4 of the Massachusetts Rules of Professional Conduct, which provides that a lawyer shall not "(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice; … or (h) engage in any other conduct that adversely reflects on his or her fitness to practice law."

The Court has raised the question as to whether city attorneys breached duties to the Court in the Coalition's lawsuit. That inquiry involves only conduct in the present litigation, specifically the communications that led to the Joint Agreed Statement of Facts. That inquiry cannot include the actions of city attorneys responding to a statutory public records request, at a time when they could not have foreseen the future use in federal litigation of excerpts from the transcript they prepared. The ethical obligations of attorneys practicing before this Court are prescribed by USDC Local Rule 83.6.1, which makes the Massachusetts Rules of Professional Conduct applicable to lawyers practicing in the U.S. District Court in Massachusetts.

USDC Local Rule 83.6.5(b) states that any "complaints of alleged attorney misconduct shall be screened in the first instance by the judicial officer who presided over the case," and "if the allegations of attorney misconduct are reasonably plausible and potentially serious, the matter should be referred for initial review to the presiding judge," who "shall not be the . . . judicial officer assigned to the case. . . ."

For the reasons stated above, Attorneys Lizotte and Luthin respectfully submit that the actions of the city attorneys in responding to the Boston Globe public records request on November 5, 2020, **which predated this litigation by months** (emphasis added), could not be

considered a breach of any duty. They further submit that there are no reasonably plausible and potentially serious allegations of attorney misconduct under L.R. 83.6.1 in the November 5, 2020 response to the Globe, and that, as to that response, the inquiry should end.

> **(b)**     **No Misconduct, Failure to Adhere to Ethical Obligations or Failure to Inform the Court Can Reasonably Be Found in the Subsequent Public Records Request Responses or Participation in the Process of Producing Agreed-Upon Facts**

As explained above, Corporation Counsel Henry Luthin, former Corporation Counsel Eugene O'Flaherty and Director of Records Shawn Williams were not involved in any public records responses concerning School Committee text messages between the disclosures to the Globe on November 5, 2020 and the entry of this Court's judgment April 15, 2021.  They were also not involved in or consulted in connection with the process by which an agreed upon statement of facts was created, or any other aspect of the litigation.  Attorney Lizotte, as Legal Advisor to the Boston Public Schools, had continuing involvement with subsequent public records responses and the Coalition lawsuit. Attorney Lizotte at all times acted ethically, in accordance with Rule 3.3 of the Massachusetts Rules of Professional Conduct and Rule 11 of the Federal Rules of Civil Procedure.

The Massachusetts Rules of Professional Conduct prohibit an attorney from knowingly making a false statement to a tribunal.  Mass. R. Prof. C. 3.3(a).  Attorney Lizotte did not violate her obligations under Rule 3.3 of the Massachusetts Rules of Professional Conduct. The Rule provides, in pertinent part, "A lawyer shall not knowingly ... make a false statement of material fact or law to a tribunal...." Mass. R. Prof. C. 3.3(a) (1). *See In re Angwafo*, 453 Mass. 28, 34 (2009) (considering whether attorney ***knowingly*** made a false statement in violation of Mass. R. Prof. C. 3.3) (emphasis added). While it is unfortunate that she did not recall the redactions from November 2020, and did not, as a result, bring them to the attention of Attorney Hodge, any

resulting misrepresentation was not done knowingly. At no time did Attorney Lizotte knowingly make a false statement. *See In re Hilson*, 448 Mass. 603, 610 (2007) (attorney violated Mass. R. Prof. C. 3.3(a)(1) by giving intentionally false testimony, or by testifying with reckless disregard for the truth or falsity of the facts).  Accordingly, Attorney Lizotte's actions do not rise to a violation of her ethical obligations under the Rule.

Nor did Attorney Lizotte violate Rule 11. Although not a Rule of Ethics, under the Rule, an attorney is required to "make reasonable inquiry to assure that all pleadings, motions and papers filed with the court are factually well-grounded, legally tenable and not interposed for any improper purpose." *Mariani v. Doctors Associates, Inc*., 983 F.2d 5, 7 (1st Cir. 1993). Whether an attorney breaches their duty under Rule 11 "depends on the objective reasonableness of the litigant's conduct under the totality of the circumstances." *CQ Int'l Co., Inc. v. Rochem Int'l USA*, 659 F.3d 53, 62 (1st Cir. 2011); *Lichtenstein v. Consol. Servs. Grp., Inc.*, 173 F.3d 17, 23 (1st Cir. 1999).  For the purposes of imposing sanctions under Rule 11, courts "should avoid using the wisdom of hindsight and instead evaluate an attorney's conduct based upon what was reasonable at the time the attorney acted." *Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir. 1990).

Attorney Lizotte understands that a review of the original documents would have been helpful and prompted her to recall the redactions so as to inform the trial team. However, she did not reasonably discern such an obligation based on the request received by defendants from plaintiff, which indicated to Attorney Lizotte that she was agreeing to the compilation of documents proffered by the plaintiff's counsel.  This was a reasonable, if erroneous, understanding of the facts and circumstances surrounding the expedited process in producing the Agreed Statement of Facts and was not due to any carelessness on her part. *See Young v. Providence ex rel. Napolitano*, 404 F.3d 33, 39 (1st Cir. 2005) (Under Rule 11, an attorney "who

makes an inaccurate factual representation must, at the very least, be culpably careless to commit a violation.").

Further, it is important to note that at no time did Attorney Lizotte intend to deprive the plaintiff of the redacted comments. Because Attorney Lizotte did not recall making the redactions, it did not occur to her that the redactions were relevant to the process of compiling documents and coming to agreements with the plaintiff, or to the litigation itself.  At no time did Attorney Lizotte act with an intent to deceive. *See Young v. Providence ex rel. Napolitano*, 404 F.3d 33, 41 (1st Cir. 2005) (reversing finding that attorneys violated Rule 11, where, among other factors, the attorneys did not act with an intent to deceive).


## CONCLUSION

Through a confluence of miscommunication, failure of memory and confusion over roles and responsibilities, the plaintiff and the Court were deprived of information that each could have had.  There was no nefarious conduct or intent on the part of city attorneys to deprive the plaintiff or the court of redacted messages or of any other information.  As they do every day, city attorneys, including Attorneys Lizotte and Luthin, made a professional and ethical judgment under Massachusetts Public Records Law that certain comments between School Committee Members were private and not related to BPS business. Attorney Lizotte then moved on to many other assignments and tasks, including responding to numerous detailed and challenging public records requests in this same case.  Her failure to recall the redactions made more than four months earlier is regrettable, but also innocent and understandable.  We respectfully submit that there was no misconduct or violation of professional obligations by the city attorneys.

14

CATHERINE A. LIZOTTE, ESQ.,
By her attorneys,


_/s/  William F. Sinnott_
William F. Sinnott (BBO#547423)
HINCKLEY ALLEN & SNYDER LLP
28 State Street
Boston, MA 02109
Telephone: (617) 378-4159
wsinnott@hinckleyallen.com


Dated: August 9, 2021

## CERTIFICATE OF SERVICE

I hereby certify that this Notice of Appearance was filed electronically on August 9, 2021 and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing ("NEF").

_/s/  William F. Sinnott_
William F. Sinnott